**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            slitteral@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY BALISTRERI and TONY MICHEL, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>McCORMICK & COMPANY, INC.,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Kelly Balistreri and Tony Michel (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendant McCormick & Company, Inc. ("McCormick" or "Defendant") on information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.     This action seeks to recover damages and remedy Defendant's continuing failure to warn individuals that certain McCormick & Company, Inc. herbs and spices sold under the brand name "McCormick," including McCormick's Culinary Ground Basil, Ground Ginger, Ground Oregano, Paprika, Ground Thyme, and Ground Turmeric (collectively, the "Products") expose consumers to heightened levels of toxic heavy metals, including lead, arsenic, and cadmium.

2.     A November 2021 report by Consumer Reports reveals that certain brands of herbs and spices, including Defendant's Products, are tainted with significant levels of toxic heavy metals.

3.     Heightened levels of toxic heavy metals in foods can cause cancer and serious and often irreversible damage to brain development as well as other serious health problems.  Although this action does not allege a claim under California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), the amount of toxic heavy metals found in the Products violates that statute too.

4.     As described more fully below, consumers who purchase the Products are injured by Defendant's acts and omissions concerning the presence of heightened levels of toxic heavy metals. No reasonable consumer would know, or have reason to know, that the Products contain heightened levels of heavy metals.  Worse, as companies across the industry have adopted methods to limit heavy metals in their herbs and spices, Defendant has stood idly by with a reckless disregard for its consumers' health and well-being.  As such, Plaintiffs seek relief in this action individually and as a class action on behalf of all purchasers of the Products.

///

///

///

**PARTIES**

5.      Plaintiff Kelly Balistreri is a resident of Carmel, California and a citizen of the State of California.  Ms. Balistreri purchased Defendant's Paprika in approximately the spring of 2019 from a Safeway located in Carmel, California.  Had Defendant disclosed on the label that the Product contained unsafe levels of toxic heavy metals, Ms. Balistreri would have been aware of that fact and would not have purchased the Product.  After learning of the high levels of toxic heavy metals, Ms. Balistreri stopped purchasing the Product.  However, Ms. Balistreri regularly visits stores where Defendant's products are sold and remains interested in purchasing healthy, safe herbs and spices for her and her family.  She remains very much interested in purchasing Defendant's herbs and spices.

6.      Plaintiff Tony Michel is a resident of San Jose, California and a citizen of the State of California.  Mr. Michel purchased several of the Products numerous times during the Class Period, including Culinary Ground Basil, Ground Oregano, Ground Thyme, and Paprika from a Walmart and Safeway retail store located in San Jose, California as recently as approximately October 2021. Had Defendant disclosed on the label that the Products contained unsafe levels of toxic heavy metals, Mr. Michel would have been aware of that fact and would not have purchased the Products.  After learning of the high levels of toxic heavy metals, Mr. Michel stopped purchasing the Products. However, Mr. Michel regularly visits stores where Defendant's products are sold and remains interested in purchasing healthy, safe herbs and spices for he and his family.  He remains very much interested in purchasing Defendant's herbs and spices.

7.      Defendant McCormick is a foreign corporation with its headquarters in Baltimore, Maryland.  Defendant manufactures, markets, and sells herbs and spices throughout California and the United States.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a)

there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, Plaintiffs reside within this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### I.     Lead And Arsenic Are Toxic

10.     Lead, arsenic, and cadmium are heavy metals.  The harmful effects of heavy metals are well-documented, particularly on children.  Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  Because the average person comes into contact with heavy metals many times and from many sources, it is important to limit exposure.

11.     "No amount of lead is known to be safe."[1]  Exposure to lead may cause anemia, weakness, and kidney and brain damage.[2]  Lead can affect almost every organ and system in the body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.  Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where

---

[1] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed Jan. 17, 2022).
[2] Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*,
https://www.cdc.gov/niosh/topics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20baby's%20nervous%20system. (last accessed Jan. 17, 2022).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

it is stored.  Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[3]

12.     Arsenic is also dangerous to humans.  "Arsenic is ranked first among toxicants posing a significant potential threat to human health based on known or suspected toxicity."[4]  Long term exposure is linked to cardiovascular disease.  Arsenic can also cause bladder, lung, liver, and skin cancer, and strokes and diabetes.  Recent studies have suggested that arsenic may cause IQ deficits in children and may be harmful to fetal development as "even low concentrations of arsenic impair neurological function[.]"[5]  There is "essentially no safe level" of arsenic.[6]

13.     Cadmium is similarly harmful.  "[A]ny cadmium exposure should be avoided."[7]  Exposure to cadmium may lead to damage to kidneys, lungs, and bones.[8]  "Even relatively low chronic exposure can cause irreversible renal tubule damage, potentially progressing to glomerular damage and kidney failure" and "bone loss often is seen in concert with these effects."[9]  This metal is also known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems.[10]

14.     The People of the State of California declared by initiative under Proposition 65 their right "[t]o be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm."  Proposition 65, § 1(b).  To effectuate this goal, California's Proposition 65,

---

[3] State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed Jan. 17, 2022).
[4] Christina R. Tyler and Andrea M. Allan, "The Effects of Arsenic Exposure on Neurological and Cognitive Dysfunction in Human and Rodent Studies: A Review," *Curr Environ Health Rep*. 2014; 1(2): 132-147, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4026128/ (last accessed Jan. 17, 2022).
[5] *Id.*
[6] *See* https://publicintegrity.org/environment/what-to-do-if-your-drinking-water-contains-arsenic/ (last accessed Jan. 17, 2022).
[7] M. Nathaniel Mead, "Cadmium Confusion: Do Consumers Need Protection," *Environ Health Perspect*. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed Jan. 17, 2022).
[8] *See* Agency for Toxic Substances and Disease Registry, "ToxFAQs for Cadmium," Toxic Substances Portal, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15 (last accessed Jan. 17, 2022).
[9] Mead, *supra* note 9.
[10] *See* Occupational Safety & Health, "Cadmium," https://www.osha.gov/cadmium (last accessed Jan. 17, 2022).

---

Health & Safety Code § 25249.5, *et seq*., prohibits exposing people to chemicals listed by the State of California as known to cause cancer, birth defects or other reproductive harm above certain levels without a "clear and reasonable warning," unless the business responsible for the exposure can prove that it fits within a statutory exemption.

15.    Lead and lead compounds are subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  Specifically, a Proposition 65 warning is required where a total daily intake of lead exceeds .5 mcg.

16.    Arsenic and arsenic compounds are also subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  Specifically, a Proposition 65 warning is required where a total daily intake of arsenic exceeds 0.5 mcg.

17.    Cadmium and cadmium compounds are likewise subject to the clear and reasonable warning requirement regarding carcinogens under Proposition 65.  Specifically, a Proposition 65 warning is required where a total daily intake of cadmium exceeds 0.5 mcg.

18.    This Complaint does not allege a violation of Proposition 65.  Proposition 65 is relevant, however, to the extent it provides information concerning the material omissions in violation of California's Consumer Protection laws, and guidance as to a reasonable consumer's purchasing decisions.  Reasonable consumers purchased the Products believing, among other things, that they complied with all applicable California regulations and were safe according to California regulatory thresholds.  Reasonable consumers would not have purchased the Products if they had known that they contained heightened levels of lead, arsenic, and cadmium or they would have purchased them on different terms.  Because the presence of lead, arsenic, and cadmium pertain to safety, Defendant had a duty to disclose that its products contained heightened levels of lead, arsenic, and cadmium independent of any duty imposed by Proposition 65.

## II.    McCormick's Herbs & Spices Contain Heightened Levels Of Arsenic, Lead, and Cadmium

19.    In November of 2021, Consumer Reports published a report titled "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead."  Employing the Analysis for Arsenic, Cadmium, Lead, and Mercury by Triple Quadruple Inductively Coupled Plasma Mass Spectrometry

(IC-QQQ-MS), With Collision Cell, Consumer Reports determined that each of the Products contain sufficient levels of toxic metals as to render them unsafe for human consumption.   Consumer Reports' samples were prepared and analyzed in accordance with the Association of Official Analytical Chemists (AOAC) Method 2015.01.

20.     Consumer Reports analyzed "126 individual products from national and private-label brands, such as Great Value (Walmart), La Flor, McCormick, Penzeys, Spice Islands, and Trader Joe's."[11]

21.     Consumer Reports determined that "[r]oughly one-third of the tested products, 40 in total, had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical serving sizes.  Most raised concern for adults, too."[12]

22.     The authors cautioned that "just one serving—3/4 teaspoons or more—per day leaves little room for heavy metal exposure from other sources" including in "fruit juice, baby food, and rice[.]"[13]  These latter food categories have also tested high for heavy metals and have been the subject of numerous lawsuits.

23.     With regards to the results, James E. Rogers, PhD, director of food safety and testing at Consumer Reports remarked that "[w]hen people think about heavy metals in their diet, if they do at all, it's probably the lead in their drinking water or arsenic in their children's fruit juices or cereals . . . But our tests show that dried herbs and spices can be a surprising, and worrisome, source for children and adults."[14]

24.     Concerning the source of the heavy metals in herbs and spices, Consumer Reports stated that heavy metals may get into food, "including herbs and spices, during manufacturing—from processing equipment or packaging[.]"[15]

---

[11] Lisa L. Gill, "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead," *Consumer Reports* (Nov. 9, 2021), https://www.consumerreports.org/food-safety/your-herbs-and-spices-might-contain-arsenic-cadmium-and-lead/ (last accessed Dec. 21, 2021).
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

25.     Along these lines, Consumer Reports determined that "it is possible for herb and spice companies to limit heavy metals in their products" as "[a]bout two-thirds of the spices [Consumer Reports] tested did not have concerning levels of heavy metals."[16]

26.     Yet, Defendant fails to test for heavy metals.  This is despite the fact that other companies such as Bolner's Fiesta and Wadi Al Akhdar do perform such tests.

27.     Accordingly, provided this industry standard, Defendant would have had the knowledge that it could test for heavy metals, but it did not, and that it could safely remove these metals from its herbs and spices, but, again, did not.

28.     Instead, Defendant chose to ignore the health of the consuming public in pursuit of profit.

### III.     The High Presence of Toxic Heavy Metals In McCormick's Herbs And Spices Far Exceeds Consumer Expectations

29.     According to Global Market Insights, "[t]he demand for spices and seasonings has increased in recent years owing to their varied nutritional benefits."[17]  Indeed, "[m]ore Americans are considering the use of spices and herbs for medicinal and therapeutic/remedy use, especially for various chronic conditions" as "[t]here is now ample evidence that spices and herbs possess antioxidant, anti-inflammatory, antitumorigenic, anticarcinogenic, and glucose-and cholesterol -lowering activities as well as properties that affect cognition and mood."[18]  As such, the safety of herbs and spices that can be easily purchased to season such food, amongst others, is a material fact to consumers (such as Plaintiffs and the Class members).

30.     More specifically, given the negative effects of toxic heavy metals (such as arsenic, lead, and cadmium) on child development and adult health, the presence of these substances in food is a material fact to consumers (such as Plaintiffs and members of the Class).  Indeed, consumers—

---

[16] *Id.*

[17] Global Market Insights, "North America Seasonings Market to Exceed $5bn by 2027," *Press Releases* (Oct. 22, 2021), https://www.gminsights.com/pressrelease/north-america-seasonings-market?utm_source=globenewswire.com&utm_medium=referral&utm_campaign=Paid_globenewswire (last accessed Jan. 17, 2022).

[18] T Alan Jiang, "Health Benefits of Culinary Herbs and Spices," *J AOAC Int*. 2019 Mar 1; 102(2): 395-411, 10.5740/jaoacint.18-0418 (last accessed Jan. 17, 2022).

such as Plaintiffs and members of the Class—are unwilling to purchase foods that contains elevated levels of toxic heavy metals.

31.     Defendant knows that the safety of its herbs and spices (as a general matter) is a material fact to consumers.

32.     Defendant also knows that consumers (such as Plaintiffs and members of the Class) are unwilling to purchase their respective brands of herbs and spices that contain elevated levels of toxic heavy metals.

33.     As such, Defendant also knows that the presence of toxic heavy metals in its herbs and spices is a material fact to consumers (such as Plaintiffs and the Class members).

34.     Herbs and spices manufacturers (such as Defendant) hold a special position of public trust. Consumers believe that they would not sell products that are unsafe.

35.     Defendant knew that if the elevated levels of toxic heavy metals in its herbs and spices was disclosed to Plaintiffs and the Class members, then Plaintiffs and the Class members would be unwilling to purchase them.

36.     In light of Defendant's respective knowledge that Plaintiffs and the Class members would be unwilling to purchase the Products if they knew that those brands of herbs and spices contained elevated levels of toxic heavy metals, Defendant intentionally and knowingly concealed this fact from Plaintiffs and the Class members and did not disclose the presence of these toxic heavy metals on the labels of the Products.

37.     Defendant knew that Plaintiffs and the Class members would rely upon the representations and omissions contained on the packages of the Products and intended for them to do so.

38.     Defendant knew that in relying upon the representations and omissions contained on the packages of the Products (respectively), Plaintiffs and the Class members would view those products as being safe for consumption, given their represented lack of certain deleterious substances (*e.g.*, BPA, GMOs), and Defendant's concealment of the fact that those brands of herbs and spices contained elevated levels of toxic heavy metals.

39.     Prior to purchasing the Products, Plaintiffs and the Class members were exposed to, saw, read, and understood Defendant's representations and omissions regarding the safety of their herbs and spices, and relied upon them.

40.     As a result of Defendant's respective representations regarding the safety of their herbs and spices, and Defendant's concealment of the fact that its herbs and spices contained elevated levels of toxic heavy metals, Plaintiffs and the Class members reasonably believed that Defendant's Products were free from substances that would negatively affect children's development as well as their own health.

41.     In reliance upon Defendant's respective representations and omissions, Plaintiffs and the Class members purchased Defendant's Products.

42.     Had Plaintiffs and the Class members known the truth—*i.e.*, that Defendant's respective brands of herbs and spices contained elevated levels of toxic heavy metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them at all.

43.     Therefore, as a direct and proximate result of Defendant's misrepresentations and omissions concerning their respective brands of herbs and spices, Plaintiffs and the Class members purchased the Products.

44.     Plaintiffs and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth.  Since the presence of elevated levels of toxic heavy metals in herbs and spices renders them unsafe for human consumption, the Products that Plaintiffs and the Class members purchased are worthless.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.  Plaintiffs reserve the right amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

46.     Plaintiffs also seek to represent a Subclass of all Class Members who purchased the Products in California (the "Subclass").

47.     At this time, Plaintiffs do not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.

48.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class members include:

a.   whether the Products contain toxic heavy metals;

b.   whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

c.   whether the amount of toxic heavy metals in the Products is material to a reasonable consumer;

d.   whether Defendant had a duty to disclose that its Products had heightened levels of toxic heavy metals;

e.   whether Plaintiffs and members of the Class are entitled to injunctive and other equitable relief;

f.   whether Defendant failed to disclose material facts concerning the Products;

g.   whether Defendant's conduct was unfair and/or deceptive;

h.   whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class members;

i.   whether Defendant breached implied warranties to Plaintiffs and the Class members;

j.   whether Plaintiffs and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

49.     Plaintiffs' claims are typical of those of the Class members because Plaintiffs, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiffs sustained damages from Defendant's wrongful conduct.

50.     Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions.   Plaintiffs have no interests which conflict with those of the Class or the Subclass.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making appropriate equitable relief with respect to the Class and the Subclass as a whole.

53.     The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.   Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class members are not parties to such actions.

## CAUSES OF ACTION

### FIRST COUNT
**(Violation of California Business & Professions Code § 17200 *et seq.*,
Based on Fraudulent Acts and Practices)**

54.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

55.     Plaintiffs bring this claim individually and on behalf of the Subclass members.

56.     Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

57.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public.   This conduct includes, but is not limited to, failing to disclose that the Products contain heightened levels of toxic heavy metals.

58.     After reviewing the packaging for the Product, Plaintiffs purchased the Products in reliance on Defendant's omissions.  Plaintiffs would not have purchased the Products at all if they had known of Defendant's material omission that the Products contain heightened levels of toxic heavy metals. Plaintiffs and the Subclass members have all paid money for the Products.  However, Plaintiffs and the Subclass members did not obtain the full value or any value of the advertised products due to Defendant's omissions regarding the heightened levels of toxic heavy metals. Accordingly, Plaintiffs and the Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's material omissions.

59.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

60.     In accordance with California Business & Professions Code §17203, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

61.     As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive under California Business & Professions Code §17203.

### SECOND COUNT
**(Violations of California Business & Professions Code §17200, *et seq.*,**
**Based on Commission of Unlawful Acts)**

62.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

63.     Plaintiffs bring this claim individually and on behalf of the Subclass members.

64.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

65.     Defendant has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200 et seq., California Health & Safety Code §110660, 21 U.S.C. §321, and by

violating the common law.   Proposition 65 is not a predicate violation for the claim under the unlawful prong of the UCL.

66.   By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

67.   Plaintiffs purchased the Products in reliance on Defendant's representations that the Products were fit for consumption and based on the omissions as to the amount of toxic heavy metals contained therein.   Plaintiffs would not have purchased the Products at all had they known of Defendant's omissions.   Plaintiffs and the Subclass members paid money for the Products.   However, Plaintiffs and the Subclass members did not obtain the full value, or any value, of the advertised products due to Defendant's omissions regarding the Products.   Accordingly, Plaintiffs and the Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's material omissions.

68.   In accordance with California Business & Professions Code §17203, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

69.   As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

### THIRD COUNT
**(Violations of California Business & Professions Code §17200, *et seq.*,
Based on Unfair Acts and Practices)**

70.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

71.   Plaintiffs bring this claim individually and on behalf of the Subclass members.

72.   Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

73.     Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes failing to disclose that the Products contain heightened levels of toxic heavy metals.

74.     Defendant has engaged, and continue to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) California Health & Safety Code §110660 and 21 U.S.C. §321 against misbranding food. Proposition 65 is not a predicate violation for the claim under the unfair prong of the UCL.  Defendant gained an unfair advantage over its competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

75.     Defendant's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products at all but for Defendant's omissions regarding the levels of toxic heavy metals contained in the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's representations, and thus also their omissions, and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

76.     By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

77.     Plaintiffs purchased the Products believing them to be fit for consumption due to its omissions regarding the heightened levels of toxic heavy metals in the Products.  Plaintiffs would not have purchased the Products at all but for Defendant failing to disclose that they contained toxic

heavy metals.  Plaintiffs and the Subclass members paid money for the Products.  However, Plaintiffs and the Subclass members did not obtain the full value of the advertised products due to Defendant's omissions regarding the nature of said Products.  Accordingly, Plaintiffs and the Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's material omissions.

78.     In accordance with California Business & Professions Code §17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through its fraudulent conduct and further seeks an order requiring Defendant to conduct a corrective advertising campaign.

79.     As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

## FOURTH COUNT
### (Violations of the California Consumer Legal Remedies Act)

80.     Plaintiffs incorporate by reference the foregoing paragraphs of Complaint as if fully stated herein.

81.     Plaintiffs bring this claim individually and on behalf of the Subclass members.

82.     Plaintiffs purchased Defendant's Products for household use.

83.     The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the Subclass members as described herein, and have resulted, and will result, in damages to Plaintiffs and members of the Subclass.  These actions violated, and continue to violate, the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

    a.   In violation of California Civil Code §1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations or omissions deceiving that the Products have characteristics, uses, and/or benefits, which they do not;

    b.   in violation of California Civil Code §1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Products are of a particular quality, which they are not; and

c.   in violation of California Civil Code §1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

84.   By committing the acts alleged above, Defendant has violated the CLRA.

85.   Plaintiffs and the Subclass members suffered injuries caused by Defendant's misrepresentations and/or omissions because they were induced to purchase the Products they would not have otherwise purchased if they had known that they contained heightened levels of toxic heavy metals.

86.   In compliance with the provisions of California Civil Code §1782, Plaintiffs sent written notice to Defendant on December 17, 2021, informing Defendant of their intention to seek damages under California Civil Code §1750, *et seq*.  The letter expressly stated that it was sent on behalf of Plaintiffs and "all other persons similarly situated."  Accordingly, Plaintiffs seek damage from Defendant for its violations of the CLRA.

87.   Plaintiffs and the Subclass members are also entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of Defendant, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

## FIFTH COUNT
### (Breach of Implied Warranty of Merchantability)

88.   Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

89.   Plaintiffs bring this claim individually and on behalf of the members of the Class and the proposed California Subclass against Defendant.

90.   Under California Commercial Code § 2314, every sale of goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable as defined by that Act.

91.    The Products at issue here are "goods" within the meaning of California Commercial Code § 2105.

92.     Plaintiffs and the Class members who purchased one or more of the Products are "buyer[s]" within the meaning of California Commercial Code § 2103.

93.     Defendant is "a person who deals in goods of the kind" and "otherwise . . . holds [itself] out as having knowledge or skill peculiar to the practices or goods in the transaction" and, therefore, is a "merchant" within the meaning of California Commercial Code § 2104.

94.     Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe and defective.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

95.     Plaintiffs and the Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

96.     The Products were not altered by Plaintiffs or the Class members.

97.     The Products were defective at the time of sale when they left the exclusive control of Defendant.  The defect described in this complaint was latent in the Products and not discoverable at the time of sale.

98.     Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and the Class members.

99.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they contained high levels of toxic heavy metals.

///

///

///

1

2

<u>SIXTH COUNT</u>
**(Breach of Implied Warranty Under the Song-Berly Act,
Cal. Civ. Code § 1790 *et seq.*)**

3

4

100.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

5

6

101.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

7

8

9

10

11

12

13

102.    Under the Song-Berly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

14

15

103.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

16

17

104.    Plaintiffs and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

18

19

20

105.    Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

21

22

23

24

25

26

27

106.    Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe and defective.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

28

107.    Plaintiffs and the Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

108.    The Products were not altered by Plaintiffs or the Class members.

109.    The Products were defective at the time of sale when they left the exclusive control of Defendant.  The defect described in this complaint was latent in the Products and not discoverable at the time of sale.

110.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiffs and the Class members.

111.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they contained high levels of toxic heavy metals.

**SEVENTH COUNT**
**Unjust Enrichment**

112.    Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

113.    Plaintiffs bring this claim individually and on behalf of the members of the Class and the proposed California Subclass against Defendant either together or in the alternative to the legal claims asserted above.

114.    Plaintiffs and the Class and California Subclass members conferred a benefit on Defendants in the form of the gross revenues Defendant derived from the money they paid to Defendant.

115.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiffs and the Class and Subclass members.

116.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Class and Subclass members.

117.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

118.    Plaintiffs and the Class and Subclass members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class and Subclass members have suffered in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed classes the following relief against Defendant:

a.   That the Court certify the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the members of the Class and Subclass;

b.   That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.   That the Court preliminarily and permanently enjoin Defendant's from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.   That the Court order preliminary and injunctive relief requiring Defendant to disclose that its products contain heightened levels of toxic heavy metals;

e.   That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f.   That the Court order Defendant to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action to give such individuals and businesses an opportunity to obtain restitution from Defendant;

g.   That the Court grant Plaintiffs' reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

h.   That the Court grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


Dated: January 18, 2022                              Respectfully submitted,

                                                     **BURSOR & FISHER, P.A.**

                                                     By:  ___/s/ L. Timothy Fisher_____
                                                              L. Timothy Fisher

                                                     L. Timothy Fisher (State Bar No. 191626)
                                                     Sean L. Litteral (State Bar No. 331985)
                                                     1990 North California Blvd., Suite 940
                                                     Walnut Creek, CA  94596
                                                     Telephone: (925) 300-4455
                                                     Facsimile:  (925) 407-2700
                                                     Email:  ltfisher@bursor.com
                                                                 slitteral@bursor.com

                                                     *Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Kelly Balistreri and Tony Michel in this action.  Ms. Balistreri is a resident of Carmel, California.   Mr. Michel is a resident of San Jose, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 18th day of January 2021.


          */s/ L. Timothy Fisher*
          L. Timothy Fisher