**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

  Haihang Wang (Bar No. 339727)
  haihangwang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

*Attorneys for Defendant*
McCORMICK & COMPANY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE COURTHOUSE

| In re: McCORMICK & COMPANY LITIGATION | MASTER FILE NO. 5:22-CV-00349-EJD |
|---|---|
| | **DEFENDANT McCORMICK & COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | The Hon. Edward J. Davila |
| | Date: October 20, 2022<br>Time: 9 AM<br>Courtroom 4, 5th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on October 20, 2022, at 9 AM PT, or as soon thereafter as the matter may be heard, in Courtroom 4, 5th Floor, of the United States District Court for the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, defendant McCormick & Company will and hereby does move the Court for an order dismissing the Consolidated Amended Class Action Complaint with prejudice.  This motion is made pursuant to Fed. R. Civ. P. 8, 12(b)(1), and 12(b)(6), and is based on the following grounds:

    1.    Plaintiffs lack Article III standing to pursue their claims and to seek injunctive relief;

    2.    Plaintiffs' state law claims are barred by the doctrine of conflict preemption;

    3.    The Court should dismiss/stay this case in deference to FDA's primary jurisdiction;

    4.    Plaintiffs do not plausibly allege that they were, or that reasonable consumers would be, deceived by the challenged statements and omissions in the manner alleged;

    5.    Plaintiffs' fraud-based claims fail to satisfy Rule 9(b);

    6.    Plaintiffs cannot pursue equitable claims in federal court;

    7.    Plaintiffs' claims for breach of implied warranty fail for the additional reason that plaintiffs cannot allege that the challenged products were not fit for their ordinary purpose; and

    8.    The Court must dismiss the unjust enrichment claims; and

    9.    Plaintiffs' negligent failure to warn claims must be dismissed.

    The motion is supported by this notice, the attached memorandum of points and authorities, the concurrently filed declaration of Shon Morgan, the request for judicial notice, pleadings and documents on file in this case, and on such other written and oral argument as may be presented to the Court on this motion.

1  DATED:  May 20, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By _____ /s/ Shon Morgan _____
Shon Morgan
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT .................................................................................................................... 4

    I.     Plaintiffs Lack Standing to Pursue Their Claims ..................................................... 4

          A.     Plaintiffs Fail to Allege a Cognizable Injury in Fact ................................ 4

          B.     Plaintiffs Lack Standing to Seek Injunctive Relief ................................... 7

    II.    Plaintiffs' Claims Are Preempted ........................................................................ 9

    III.   Plaintiffs' Claims Fall Under FDA's Primary Jurisdiction .................................. 12

    IV.   Plaintiffs Fail to Plausibly Allege Deception ....................................................... 16

    V.    Plaintiffs' Affirmative Misrepresentation Claims Should Be Dismissed .............. 17

    VI.   Plaintiffs Cannot Pursue Equitable Claims in Federal Court ................................ 18

    VII.  Plaintiffs' Breach of Implied Warranty Claims Fail............................................. 19

    VIII. The Court Should Dismiss the Unjust Enrichment Claims.................................... 20

    IX.   Plaintiffs' Negligent Failure to Warn Claim Must Be Dismissed ........................ 21

CONCLUSION ............................................................................................................... 22

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Adams v. Cole Haan, LLC,*
 No. 20-CV-913-JVS-DFM, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ....................... 19

*All. for Bio-Integrity v. Shalala,*
 116 F. Supp. 2d 166 (D.D.C. 2000) ............................................................................. 2 n.2

*Allen v. Hyland's Inc.,*
 300 F.R.D. 643 (C.D. Cal. 2014) .......................................................................................... 6

*Altman v. HO Sports Co.,*
 No. 09-CV-1000-AWI-SMS, 2009 WL 4163512 (E.D. Cal. Nov. 23, 2009) ................... 22

*Arent v. Shalala,*
 70 F.3d 610 (D.C. Cir. 1995) ...................................................................................... 2 n.2

*Arizona v. United States,*
 567 U.S. 387 (2012) ............................................................................................................. 9

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................................................. 4

*Astiana v. Hain Celestial Grp., Inc.,*
 783 F.3d 753 (9th Cir. 2015) ....................................................................................... 12–13

*Audrey Heredia v. Sunrise Senior Living LLC,*
 No. 18-CV-1974-JLS-JDE, 2021 WL 819159 (Feb. 10, 2021)................................... 18–19

*Axon v. Citrus World, Inc.,*
 354 F. Supp. 3d 170 (E.D.N.Y. 2018)........................................................................... 16–17

*Axon v. Fla's Nat. Growers, Inc.,*
 813 F. App'x 701 (2d Cir. 2020) ...................................................................................... 16

*Backus v. Nestle USA, Inc.,*
 167 F. Supp. 3d 1068 (N.D. Cal. 2016)............................................................................. 10

*Backus v. Gen. Mills, Inc.*,
    122 F. Supp. 3d 909 (N.D. Cal. 2015)................................................. 12, 13 n.4, 14–15

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ................................................................................ 4

*Barreto v. Westbrae Nat.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021) ............................................................ 19–20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 4

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ............................................................................. 20

*Blassingame v. B&G Foods, Inc.*,
    No. 22-CV-640-BLF (N.D. Cal.) ....................................................................... 15

*Bohac v. Gen. Mills, Inc.*,
    No. 12-CV-5280-WHO, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ........................... 20

*Boysen v. Walgreen Co.*,
    No. C 11–06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .................................... 6

*Brazil v. Dole Packaged Foods LLC*,
    660 F. App'x 531 (9th Cir. 2016) ....................................................................... 6

*Carlin v. Super. Ct.*,
    920 P.2d 1347 (Cal. 1996)................................................................................ 22

*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021)................................................................. 8

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................. 7

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ..................................................................... 13, 15

*Cohen v. Apple, Inc.*,
    497 F. Supp. 3d 769 (N.D. Cal. 2020)......................................................... 9 & n.3

*Colette v. CV Scis., Inc.*,
    No. 19-CV-10227-VAP-JEM, 2020 WL 2739861 (C.D. Cal. May 22, 2020)............. 13 n.4

*Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ......................................................................................... 18

*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) ......................................................................... 6

*Daigle v. Ford Motor Co.*,
    713 F. Supp. 2d 822 (D. Minn. 2010) ............................................................................ 20

*Dardarian v. La Flor Products Co., Inc.*,
    No. 22-CV-547-KAM-AYS (E.D.N.Y.) .......................................................................... 15

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................................................... 7

*Dennis v. Whirlpool Corp.*,
    2007 WL 9701826 (S.D. Fla. Mar. 13, 2007)................................................................. 20

*Doss v. Gen. Mills, Inc.*,
    816 F. App'x 312 (11th Cir. 2020)................................................................................... 7

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013)........................................................................... 18

*Farina v. Nokia Inc.*,
    625 F.3d 97 (3d Cir. 2010) ............................................................................................ 11

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141,  (1982) .............................................................................................. 9 n.3

*Fischer v. Bos. Sci. Corp.*,
    No. 19-CV-2106-JVS-DFM, 2020 WL 2300138 (C.D. Cal. Mar. 25, 2020).................... 22

*G.P v. Sears Roebuck & Co.*,
    No. 14-CV-1256-SVW-JC, 2014 WL 12966429 (C.D. Cal. Oct. 8, 2014)....................... 22

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) ................................................................................................. 9 n.3

*Gibson v. Jaguar Land Rover N. Am., LLC*,
       No. 20-CV-769-CJC-GJS, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)................... 18–19

*Gibson v. Quaker Oats Co.*,
       No. 16-CV-4853, 2017 WL 3508724 (N.D. Ill. Aug. 14, 2017) ...................................... 17

*Glass v. Glob. Widget, LLC*,
       No. 19-CV-1906-MCE-KJN, 2020 WL 3174688 (E.D. Cal. June 15, 2020) ............. 13 n.4

*Green v. PepsiCo, Inc.*,
       No. 18-CV-62011-RNS, 2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ............................. 7

*Hauter v. Zogarts*,
       534 P.2d 377 (Cal. 1975)................................................................................................ 19

*Hawkins v. Advancepierre Foods, Inc.*,
       No. 15-CV-2309-JAH-BLM, 2016 WL 6611099 (S.D. Cal. Nov. 8, 2016) ..................... 14

*Herrington v. Johnson & Johnson Consumer Cos.*,
       No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .............................. 5, 16

*Hill v. Badia Spices, Inc.*,
       No. 22-CV-20258-BB (S.D. Fla.) ................................................................................... 15

*In re ConAgra Foods, Inc.*,
       908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) ............................................................... 20

*In re Gen. Mills Glyphosate Litig.*,
       2017 WL 2983877 (D. Minn. July 12, 2017) ................................................................ 16

*In re KIND LLC "Healthy & All Nat." Litig.*,
       209 F. Supp. 3d 689 (S.D.N.Y. 2016) ....................................................................... 14, 16

*In re Pom Wonderful LLC*,
       No. ML 10-02199 DDP (RZgx), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)................ 6

*In re Porsche Cars N. Am., Inc.*,
       880 F. Supp. 2d 801 (S.D. Ohio 2012)....................................................................... 20–21

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
       758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..................................................................... 17–18

*In re Tobacco Cases II*,
     240 Cal. App. 4th 779 (Cal. Ct. App. 2015) .......................................................... 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prod. Liab. Litig.*,
     754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................. 20

*Jackson v. Gen. Mills, Inc.*,
     No. 18-CV-2634-LAB-BGS, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ..................... 8

*Joslin v. Clif Bar & Co.*,
     No. 4:18-CV-4941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .......................... 8

*Kane v. Chobani, LLC*,
     645 F. App'x 593 (9th Cir. 2016) ............................................................... 13 n.4

*Kent v. Hewlett-Packard Co.*,
     No. 09-5341-JF-PVT, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ................................ 17

*Kommer v. Ford Motor Co.*,
     No. 17-CV-296-LEK-DJS, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ....................... 18

*Koronthaly v. L'Oreal USA, Inc.*,
     No. 07-CV-5588-DMC, 2008 WL 2938045 (D.N.J. July 29, 2008) ............................. 6–7

*Lanovaz v. Twinings N. Am., Inc.*,
     726 F. App'x 590 (9th Cir. 2018) ................................................................... 8

*Marsikian v. Mercedes Benz USA, LLC*,
     No. 8-CV-4876-AHM-JTL, 2009 WL 8379784 (C.D. Cal. May 4, 2009) ....................... 21

*Maryland v. Louisiana*,
     451 U.S. 725 (1981) ....................................................................................... 9

*Matthews v. Morton & Bassett Spices*,
     No. 22-CV-497-JD (N.D. Cal.) ...................................................................... 15

*Mazza v. Am. Honda Motor Co., Inc.*,
     666 F.3d 581 (9th Cir. 2012) ................................................................... 20 n.5

*McGee v. S-L Snacks Nat'l*,
     982 F.3d 700 (9th Cir. 2020) ................................................................... 5, 7

*Merrill v. Navegar, Inc.*,
    28 P.3d 116 (Cal. 2001) ................................................................................................ 21

*Moreno v. Vi-Jon, Inc.*,
    No. 20-CV-1446-JM-BGS, 2021 WL 807683 (S.D. Cal. Mar. 3, 2021) ......................... 7

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cty.*,
    462 P.3d 461 (Cal. 2020) .............................................................................................. 19

*Nguyen v. Nissan N. Am., Inc.*,
    No. 16-CV-5591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) .......................... 19

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................................... 17

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2020) .......................................................................... 16

*Parks v. Ainsworth Pet Nutrition, LLC*,
    No. 18-CV-6936-LLS, 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) ............................ 16

*Pelayo v. Hyundai Motor Am., Inc.*,
    Case No. 20-CV-01503-JLS-ADS, 2021 WL 1808628 (C.D. Cal. May 5, 2021)............. 19

*Rahman v. Mott's LLP*,
    No. 13-CV-3482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018)................................ 9

*Reese v. Odwalla, Inc.*,
    30 F. Supp. 3d 935 (N.D. Cal. 2014) ....................................................................... 13–14

*Resnick v. Hyundai Motor Am., Inc.*,
    No. 16-CV-593-BRO-PJW, 2017 WL 6549931 (C.D. Cal. Aug. 21, 2017)................... 17

*Rodriguez v. Just Brands USA, Inc.*,
    No. 20-CV-4829-ODW-PLA, 2021 WL 1985031 (C.D. Cal. May 18, 2021) ................... 8

*Rosillo v. Annie's Homegrown Inc.*,
    No. 17-cv-2474-JSW, 2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)............................. 14

*Salmon Spawning & Recovery All. v. Guiterrez*,
    545 F.3d 1220 (9th Cir. 2008) ........................................................................................ 5

*Sauceda v. Amazon.com, Inc.*,
  22-CV-338-JCC (W.D. Wash.) .......................................................................... 15

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
  No. 11-CV-1197-CJC-AN, 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ...................... 19

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................................ 18

*Sportmart, Inc. v. Spirit Mfg.*,
  No. 97 C 7120, 1999 WL 350662 (N.D. Ill. May 17, 1999) ............................................ 20

*Stearns v. Select Comfort Retail Corp.*,
  No. 08–2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ....................................... 20

*Stover v. Experian Holdings, Inc.*,
  978 F.3d 1082 (9th Cir. 2020) ....................................................................... 7

*Syntek Semiconductor Co. v. Microchip Tech.*,
  307 F.3d 775 (9th Cir. 2002) ........................................................................ 13

*Takeda Pharms. U.S.A., Inc. v. Burwell*,
  691 F. App'x 634 (D.C. Cir. 2016) ........................................................... 2 n.1

*Thomas v. Costco Wholesale Corp.*,
  No. 12-CV-2908-BLF, 2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ........................... 20

*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ....................................................................... 9

*Tran v. Sioux Honey Ass'n*,
  2020 WL 3989444 (C.D. Cal. July 13, 2020) ............................................. 15, 17

*Tran v. Sioux Honey Ass'n, Coop.*,
  No. 17-CV-110-JLS-JCG, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) .................. 13 n.4

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................. 20

*Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*,
  No. C14-10 RAJ, 2014 WL 2154381 (W.D. Wash. May 22, 2014) ................................ 21

*Wright v. Stang Mfg. Co.*,
    54 Cal. App. 4th 1218 (Cal. Ct. App. 1997) ....................................................... 22

*Young v. Young*,
    191 P.3d 1258 (Wash. 2008) ............................................................................... 21

*Yu v. Dr Pepper Snapple Grp.*,
    No. 18-CV-6664-BLF, 2019 WL 2515919 (N.D. Cal. June 18, 2019) .............................. 17

**STATUTES**

21 U.S.C. § 331(a) ........................................................................................................... 2

21 U.S.C. § 341 ............................................................................................................. 14

21 U.S.C. § 342 ........................................................................................................ 2, 11

21 U.S.C. § 342(a)(1) ....................................................................................................... 2

21 U.S.C. § 346 ................................................................................................... 2, 11, 14

21 U.S.C. § 350l ............................................................................................................... 2

21 U.S.C. § 371 ............................................................................................................... 2

21 U.S.C. § 393(b)(2)(A) ................................................................................................. 2

**RULES**

21 C.F.R. § 10.30 ...................................................................................................... 2 n.1

21 C.F.R. § 165.110 ...................................................................................................... 10

21 C.F.R. §§ 7.1–7.87 ..................................................................................................... 2

Fed. R. Civ. P. 8, 12(b)(1) ............................................................................................... i

Fed. R. of Civ. P. 12(b)(6) ......................................................................................... i, 4

**PRELIMINARY STATEMENT**

Plaintiffs' complaint is one of several against household manufacturers of spices or herbs based on a dubious report by Consumer Reports that found *some* spice and herb products *may* contain *some* heavy metals, which the article concedes are ubiquitous and likely unavoidable.  Notably, plaintiffs do not contend the products they bought contain *any* trace amounts of heavy metals, much less at levels deleterious to health or that require disclosure under Proposition 65 or comparable laws.

Nevertheless, plaintiffs assert various misrepresentation and warranty claims, contending McCormick had a duty to disclose the presence and levels of such metals.  They further contend McCormick committed *fraud* by innocuously stating—after being in business more than 125 years—that its products were "The Taste You Trust."

The claims fail at the threshold because the FDA has been delegated authority to regulate the safety of food products, including spices and herbs.  The FDA is evaluating levels of heavy metals in food products and will, if necessary, issue appropriate regulations.  Consistent with its mandate, the FDA will ensure any such action will be supported by scientific evidence.  Claims in private litigation that seek to impose remedies that might differ from the FDA's considered judgment—on a piecemeal case-by-case, company-by-company, product-by-product basis, no less—are barred by conflict preemption.  Separately, where the FDA continues to review these issues and will determine whether rulemaking is warranted, lawsuits overlapping with the FDA's work should be dismissed (or, at a minimum, stayed) in deference to the FDA's primary jurisdiction.

Consistent with claims based on conjecture, plaintiffs also cannot articulate a viable liability theory.  Without concrete explanation of how these plaintiffs were, or could have been, *actually injured*, they have not alleged Article III standing.  Nor can they identify an actionable affirmative misrepresentation, a duty to disclose, or a breach of implied warranty.

For these reasons, as explained more fully below, the complaint should be dismissed.

**BACKGROUND**

**The FDA Regulates Food Safety, Including Heavy Metals.**  The Food Drug & Cosmetic Act ("FDCA") requires the FDA to (1) ensure foods are safe, wholesome, sanitary, and properly labeled,

1   (2) promulgate regulations to enforce the FDCA, and (3) enforce its regulations through

2   administrative proceedings.  *See* 21 U.S.C. §§ 371, 393(b)(2)(A); 21 C.F.R. §§ 7.1–7.87.

3       The FDCA prohibits "[t]he introduction or delivery for introduction into interstate commerce

4   of any food . . . that is adulterated."  21 U.S.C. § 331(a).  Food is deemed to be adulterated when it

5   fails to meet certain standards, including when it is harmful to human health.  *See id.* § 342.  Relevant

6   here, a food is not deemed to be adulterated because of the presence of unavoidable heavy metals or

7   any other substance "*if the quantity of such substance in such food does not ordinarily render it*

8   *injurious to health.*"  *Id.* § 342(a)(1) (emphasis added).  Further, federal law requires that when such a

9   substance cannot be avoided in food and may be present at levels that could be harmful, the FDA sets

10  action levels that may not be exceeded.  *See id.* § 346.  The action levels reflect considered scientific

11  judgment and decision-making about when food may be rendered unsafe by the presence of poisonous

12  or deleterious substances.

13      All of this means that when a food contains harmful substances such that it is deemed

14  adulterated and unsafe to consume, the food is prohibited to be sold in interstate commerce.  For

15  decades, the FDA has been well aware of heavy metals in the U.S. food supply and has been taking

16  action it deems warranted and declining to take action where action is unnecessary or unwarranted.[1]

17      Where an allegedly poisonous or deleterious substance in food cannot be avoided entirely, the

18  FDA sets limits for the contaminant.  The FDA has not found it warranted to set a limit for most heavy

19  metals in spices and herbs.  The FDA also has the authority to order a recall of any adulterated or

20  unsafe food.  *See* 21 U.S.C. § 350l.  The FDA confirmed in its February 16, 2021 Constituent Update

21  that, if the FDA finds that products violate the law, including not being safe, "the agency takes steps to

22  stop the product from being imported, takes court action to stop its sale or recalls it if it is in the

23  domestic market."  Morgan Decl., Ex. 1 at 2.

24  _____

25  [1]  If plaintiffs contend the FDA is not following the law or meeting its obligations (and the complaint
    contains no allegations to that effect), such a challenge is properly brought in a citizen's petition or a

26  lawsuit directed at the agency itself.  *See* 21 C.F.R. § 10.30; *Takeda Pharms. U.S.A., Inc. v. Burwell*,
    691 F. App'x 634, 636 (D.C. Cir. 2016); *Arent v. Shalala*, 70 F.3d 610, 612 (D.C. Cir. 1995); *All. for*

27  *Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166, 170 (D.D.C. 2000).  Permitting plaintiffs to use the
    consumer class action device to raise grievances that should be directed to the FDA threatens the

28  uniformity of national standards for food regulation.

**The Consumer Reports Article That Prompted This Suit.**  The sole driver of the complaint allegations is a 2021 article by Consumer Reports that identified purported heavy metal levels of *potential* "concern" in certain tested spices and herbs.  The results were based on limited sampling of spice and herb products, and the article itself acknowledges the spot checks it performed "cannot be used to draw definitive conclusions about brands."  Morgan Decl., Ex. 2 at 17.[2]

Moreover, the methodologies disclosed by Consumer Reports reveal the study's own limitations and vulnerabilities.  To provide two significant examples that undermine the entire study, Consumer Reports assumed individuals "regularly consum[e] 3/4 teaspoon or more daily of a product" (Morgan Decl., Ex. 2 at 17) without explanation for using a figure that far exceeds common experience.  Even the article conceded any risk was low, because "spices make up less than 0.1 percent of dietary lead exposure in children ages 1 to 6.  And even for adults, . . . the [American Spice Trade Association] believes the risk is low 'in large part because spices are a very small component of the diet.'" *Id.* at 8.

Consumer Reports also classified levels of "concern" in spices and herbs by using a "combined" or "average" level of a variety heavy metals tested.  *See id.* at 4.  But Consumer Reports never explains why its use of the "combined average" of various heavy metals is reliable or sound.  This approach is not used by the FDA to assess dietary exposure to different contaminants in the diet.  Rather, the methodology utilized by Consumer Reports appears to be based on the EPA's Risk Assessment Guidance for Superfund. However, the EPA has stated such an approach should only be employed when the mechanisms of action is the same among the chemicals being added.  *See* Morgan Decl., Ex. 4 at p. 9 ("Dose addition for dissimilar effects does not have strong scientific support, and, if done, should be justified on a case-by-case basis in terms of biological plausibility.").

The Consumer Reports article also acknowledged heavy metals in spices and herbs are "unavoidable" because they occur naturally in "the environments where [the spices and herbs] are

_____

[2] In particular, the Consumer Reports article relies on testing that was performed on "two or three samples from different lots of each product" (*id.*), on spices purchased between October 2020 and January 2021 from stores online and from "New York, New Jersey, and Connecticut" (Morgan Decl., Ex. 3 at 1).  Given the limited sampling, the authors cautioned that the results could not be relied upon for general conclusions about the heavy metals present in any particular spice brand.  *Id.*

1   grown," such that levels of heavy metals may even "differ[] from plant to plant."  Morgan Decl., Ex. 2 at

2   7–8.  It noted, "[t]here was no single predictor of which products contained higher levels of heavy

3   metals—for example, brand name didn't matter, and neither did 'organic' or 'packed in USA' claims."

4   *Id.* at 5.

5        **Plaintiffs' Allegations**.  This action is brought by seven plaintiffs who purchased various

6   spices and herbs manufactured by McCormick.  Their allegations are nearly identical.  Each plaintiff

7   claims to have bought one of the following spices or herbs:  Culinary Ground Basil, Ground

8   Oregano, Ground Thyme, Paprika, Ground Ginger, or Ground Turmeric.  ECF No. 28 (Consolidated

9   Amended Class Action Complaint) ¶¶ 5, 7, 9, 11, 13, 15, 17.  None of the plaintiffs allege the

10  particular spices or herbs they purchased contained heavy metals, nor do they allege physical injuries,

11  sickness, or other ill effects as a result of their purchases.  *Id.* ¶¶ 5–16.  Instead, plaintiffs simply

12  allege in conclusory fashion that they "desire" to continue buying the product but are unable to

13  determine it is safe.  *Id.* ¶¶ 6, 8, 10, 12, 14, 16, 18.

14  **LEGAL STANDARD**

15       Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint for failure to

16  state a claim due either to "the lack of a cognizable legal theory or the absence of sufficient facts

17  alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

18  Cir. 1990).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

19  accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

20  678 (2009) (internal quotation marks and citations omitted).  "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged." *Id.*  Further, "courts are not bound to accept as true a

23  legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

24  (2007) (internal quotation marks and citations omitted).

25  **ARGUMENT**

26  **I.**   **PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS**

27      **A.**   **Plaintiffs Fail to Allege a Cognizable Injury in Fact**

28

1   Plaintiffs fail to allege that they have suffered an injury in fact and therefore lack Article III

2   standing.  To establish Article III standing, a plaintiff must show "(1) he or she has suffered an injury

3   in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to

4   the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."

5   *Salmon Spawning & Recovery All. v. Guiterrez*, 545 F.3d 1220, 1225 (9th Cir. 2008); *see also McGee*

6   *v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020).

7   The complaint is completely devoid of any allegations of actual injury suffered by the

8   plaintiffs.  Plaintiffs do not contend the products they bought even contained heavy metals, let alone at

9   unsafe levels, and do not allege any physical injury as a result of defendant's products.  Instead,

10   plaintiffs claim they would not have purchased the defendant's products if they had been aware of the

11   *risk* of heavy metals in the products.  ECF No. 28 ¶¶ 6, 8, 10, 12, 14, 16, 18.  These allegations of

12   hypothetical economic harm do not constitute a legally cognizable injury that confers standing where,

13   as here, plaintiffs do not contend the products were worthless or failed of their purposes to enhance

14   flavor.

15   For example, in *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010

16   WL 3448531 (N.D. Cal. Sept. 1, 2010), the plaintiffs argued that they pleaded an injury sufficient to

17   confer standing because "they unknowingly purchased products containing potential carcinogens and

18   that 'they would have never purchased these products had they known of the presence of these

19   contaminants.'"  *Id.* at *4.  The court rejected the theory, reasoning that the plaintiffs failed to plead "a

20   distinct risk of harm from a defect in Defendants' products that would make such an economic injury

21   cognizable."  *Id.*  Specifically, they failed to plead that the challenged products were unfit for use or

22   defective, and no palpable risk was articulated merely by alleging that carcinogens had been detected

23   in the bath products, that scientists believed there is no safe level of exposure to a carcinogen, and that

24   children are generally more vulnerable to toxic exposure than adults.  *See id.* at *3 ("[plaintiffs] only

25   allege that 1,4–dioxane and formaldehyde *may* be carcinogenic for humans, that there *could* be no safe

26   levels for exposure to carcinogens and that Defendants' products contain some amount of these

27   substances.").

28

1    Plaintiffs' allegations here are no better than those rejected in *Herrington*.  Plaintiffs do not

2   allege any spice or herb product they purchased contained any heavy metals, much less at levels that

3   rendered them unsafe to consume and arguably worthless.  That conclusion renders plaintiffs' claims

4   unviable.  *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 n.25 (C.D. Cal. 2014) (food products have

5   inherent nutritional value and, thus, are not worthless); *Brazil v. Dole Packaged Foods LLC,* 660 F.

6   App'x 531, 534 (9th Cir. 2016) (full refund model inappropriate because some benefits were

7   conferred); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (Cal. Ct. App. 2015) (full refund

8   damages only proper where product confers no benefit on consumers); *In re Pom Wonderful LLC*, No.

9   ML 10-02199 DDP (RZx), 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (because plaintiffs

10   received some benefit from the product (regardless of the benefits they sought) a full refund was

11   inappropriate).

12    Nor can plaintiffs plausibly allege that they did not receive the benefit of their bargain.  Courts

13   in California and elsewhere have routinely rejected the claim that trace amounts of substances

14   (including heavy metals) in consumer products negate the value of the consumer's purchase.  In

15   *Boysen v. Walgreen Co.*, No. C 11–06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012), the court

16   found that plaintiffs lacked standing to sue a company for failure to disclose that its juice products

17   contained lead and arsenic.  *See id.* at *1, *7.  The plaintiffs admitted the levels of lead and arsenic in

18   the juices were below FDA limits and that no plaintiff alleged physical harm.  *See id.* at *1–2.

19   Instead, the plaintiffs argued they "would not have purchased the juices had they known the products

20   contained lead and arsenic."  *Id.* at 1.  The court rejected this theory of injury because, without any

21   allegation that the juices tended to cause actual physical harm, plaintiffs had received the benefit of

22   the bargain and thus had not alleged how purchasing the juices had injured them.  *See id.* at *7; *see

23   also Cousineau v. Microsoft Corp*., 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012) (dismissing WCPA

24   claim where complaint asserted without support that defendant's actions "diminished the value" or that

25   plaintiffs "actually sustained injury"); *Koronthaly v. L'Oreal USA, Inc.*, No. 07–CV–5588-DMC, 2008

26   WL 2938045, at *5 (D.N.J. July 29, 2008), *aff'd,* 374 F. App'x 257 (3d Cir. 2010) ("Plaintiff bought

27   lipstick and used the lipstick, only complaining that the lipstick's levels of lead are unsatisfactory to

28   her.  The FDA, moreover, does not provide limitations on lead levels in lipstick.  The FDA does not

otherwise regulate lipstick.  Plaintiff cannot seek a remedy for a harm that she has not actually or allegedly suffered."); *Moreno v. Vi-Jon, Inc.*, No. 20-CV-1446-JM-BGS, 2021 WL 807683, at *4 (S.D. Cal. Mar. 3, 2021) (dismissing case because plaintiffs did not allege that they purchased or used hand sanitizer to prevent any of the diseases or viruses the hand sanitizer purportedly failed to protect against, or that they contracted any of those diseases or viruses); *Doss v. Gen. Mills, Inc*., 816 F. App'x 312, 314 (11th Cir. 2020) (dismissing case because while "plaintiff has alleged that 'ultra-low levels of glyphosate' . . . 'may be harmful to human health,' [she] has not alleged that she purchased any boxes of Cheerios that contained any glyphosate, much less a level of glyphosate that is so harmful the Cheerios are 'presumptively unsafe' and therefore worthless'"); *Green v. PepsiCo, Inc.*, No. 18-CV-62011-RNS, 2019 WL 8810364, at *1, *3 (S.D. Fla. Apr. 12, 2019) (dismissing case because plaintiff failed to allege an injury in fact based on her purchase of Quaker Oats that allegedly contained trace amounts of residual glyphosate); *see also McGee*, 982 F.3d at 706 (noting plaintiff's assumption that food product containing trans fat contained only safe and healthy ingredients was not part of the bargain).

Nor can plaintiffs allege that they satisfy Article III based on a theory that they paid a price premium given that all spice products potentially contain trace amounts of heavy metals, making the presence of heavy metals irrelevant to pricing. The FDA confirms the alleged contaminants are omnipresent in the environment and inescapable, and even the dubious Consumer Reports concludes that the levels of heavy metals in McCormick's spices amount to nothing more than "some concern." Morgan Decl., Ex. 2.  There is no reason, therefore, to assume any price premium was paid since most of the competing products received the same—or worse—ratings by Consumer Reports.

**B.     Plaintiffs Lack Standing to Seek Injunctive Relief**

Plaintiffs also lack Article III standing to pursue injunctive relief because they do not allege "actual and imminent" and "certainly impending" threatened or future injury.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018); *see also Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1087 (9th Cir. 2020) (noting that *Davidson* requires a plaintiff to plausibly allege a desire to purchase the product in the future).  Plaintiffs must demonstrate "a sufficient likelihood that [they]

will *again* be wronged in a *similar* way," but they fail to make those allegations.  *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added).

The complaint acknowledges that plaintiffs are now fully aware that heavy metals are ubiquitous in the environment and cannot be removed entirely from the food supply, including specifically in packaged spices and herbs.  ECF No. 28 ¶¶ 26–34  *see also id.* ¶ 32 (stating companies can "limit", as opposed to eliminate, presence of heavy metals).  Nevertheless, plaintiffs contend they would be willing to purchase the products again in the future if they could be certain that they do not contain heavy metals.  *Id.* ¶¶ 6, 8, 10, 12, 14, 16, 18.  Those allegations are inherently contradictory, and cannot support a request for injunctive relief.  "[W]here a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff." *Jackson v. Gen. Mills, Inc.*, No. 18-CV-2634-LAB-BGS, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

Moreover, plaintiffs' assertion that they "may" purchase the products again in the future if they could be certain that they do not contain heavy metals is too vague and uncertain to establish a likelihood of imminent harm.  *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the plaintiffs "would 'consider buying'" allegations insufficient because profession of a "some day" intention does not support a finding of actual or imminent injury); *Joslin v. Clif Bar & Co.*, No. 4:18-CV-4941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) (holding no actual or imminent injury where plaintiffs alleged defendant's product did not contain real white chocolate and they "do not want products that do not contain real white chocolate"); *Rodriguez v. Just Brands USA, Inc.*, No. 20-CV-4829-ODW-PLA, 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021) ("Where, as here, a plaintiff vaguely alleges that he 'may' purchase the product in the future, the Ninth Circuit and district courts have found this 'some day intention' insufficient to satisfy Article III standing." (quoting *Lanovaz*, 726 F. App'x at 591)).

Accordingly, plaintiffs cannot establish a likelihood of future harm sufficient to confer standing to sue for injunctive relief because the requested disclaimer of the potential presence of heavy metals in food would serve no purpose for them.  *See Cimoli v. Alacer Corp.*, 546 F. Supp. 3d

897, 906–07 (N.D. Cal. 2021); *Rahman v. Mott's LLP*, No. 13-CV-3482-SI, 2018 WL 4585024, at \*4 (N.D. Cal. Sept. 25, 2018).

## II.  PLAINTIFFS' CLAIMS ARE PREEMPTED

Plaintiffs' claims are preempted because they impinge on the FDA's considered judgment about the safety and labeling of spices and herbs.  Plaintiffs' claims—and the underlying relief sought (*e.g.*, enjoining McCormick from conducting business; forcing McCormick to alter its labeling practice; mandatory disclosures; mandatory notice)—directly conflict with the FDA's role under federal law to establish a uniform, national policy for food safety, including regulation of heavy metals in the food supply.  Under the Supremacy Clause, conflicts between state and federal law must be resolved in favor of federal law.  *See* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land"); *Maryland v. Louisiana*, 451 U.S. 725, 746–47 (1981). Conflict preemption applies where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (citation omitted).  Obstacle preemption applies when the Court can "infer that Congress made 'a considered judgment' or 'a deliberate choice' to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation."  *Cohen v. Apple, Inc.*, 497 F. Supp. 3d 769, 780 (N.D. Cal. 2020) (citing *Arizona v. United States*, 567 U.S. 387, 405 (2012).

Significantly, where a federal regulatory agency such as the FDA has regulated in an area of its expertise pursuant to a legal mandate, state law may not be used to bar conduct the agency has chosen to not prohibit.  Otherwise, the threat of civil liability would interfere with administration of the comprehensive and carefully calibrated federal regulatory program.[3]  Attempts to commandeer the

---

[3]   *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881–82 (2000) (holding that federal law that required a percentage of new cars to employ passive-restraint systems impliedly preempted state tort claims that would have had effect of requiring auto manufacturers to install air bags in all new cars); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 156 (1982) (noting conflict preemption where state law limited availability of an option that federal agency thought appropriate to ensure its overall regulatory objectives); *Cohen*, 497 F. Supp. at 785–86 (noting conflict preemption where state law claims could establish testing requirements and standards that conflicted with the uniform standards and testing established by the FCC).

1   FDA's role to regulate food safety and food labeling under the guise of state consumer protection law,

2   as plaintiffs attempt here, are preempted because they conflict with federal law and supremacy.

3         Judge Chesney's decision in *Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068 (N.D. Cal.

4   2016), is instructive.  There, the Court found preempted claims challenging the presence of partially

5   hydrogenated oil ("PHO") where the FDA had determined that products containing PHO could

6   continue to be sold for a certain time period even though PHO was no longer considered by the FDA

7   to be "generally recognized as safe" ("GRAS") in food.  *Id.* at 1071.  The Court ruled that plaintiff,

8   under state law, could not make "immediately unlawful" that which FDA determined could continue

9   to be sold, even though PHO had been determined by FDA to be non-GRAS.  *Id.* at 1072.

10         Conflict preemption applies here for the same reasons.  The FDA pervasively regulates food

11   safety under a grant from Congress.  The FDA—singularly positioned to solicit expert opinions,

12   analyze the scientific data and consider all stakeholder interests—has looked at and continues to study

13   heavy metals in foods and to regulate their presence in the food supply.  Contrary to plaintiffs'

14   demand in this lawsuit, the FDA—as part of its historical study of heavy metals—has not banned their

15   presence in food entirely.  Nor, as part of its renewed look at these same issues, has the FDA provided

16   any indication that action levels for heavy metals, if adopted at all, will be set at zero, and it has not

17   required any heavy metals labeling.  Instead, when it has chosen to act, the FDA has set "action

18   levels" for heavy metals in specific food products, such as setting levels for inorganic arsenic in rice

19   cereal for infants, allowable levels of inorganic substances in bottled water, and action levels for lead

20   in juice, rather than banning it completely.  *See* Morgan Decl., Ex. 5, 6; 21 C.F.R. § 165.110

21         In a more recent but analogous example, the FDA rejected a petition from 23 state attorneys

22   general to (1) set heavy metal limits for baby foods based on a "best performer" standard; (2) set an

23   action level for arsenic in infant rice cereal that is lower than the existing action level of 100 ppb; and

24   (3) issue guidance that testing for heavy metals is a preventive control that should be performed by

25   baby food manufacturers.  *See* Morgan Decl., Ex. 7 at 1.  In relevant sections, the FDA explained that

26   "[t]he Petition does not explain the basis for concluding that a food may be regarded as adulterated

27   within the meaning of section 402(a)(1) of the [FDCA] merely because it contains a level of a

28

particular toxic element above the amount present in what [is] refer[red] to as the 'best performer' in that food category." *Id.* at 3.  Additionally, the FDA noted that:

> When a baby food manufacturer identifies this as a hazard that requires a supply-chain applied control, the manufacturer would develop supply-chain controls to ensure that the hazard is being controlled.  For example, the manufacturer could verify that suppliers source raw agricultural commodities from regions without high levels of heavy metal contamination in soil and have specifications that heavy metals in raw materials and other ingredients will be within permitted levels.  ***Alternatively, manufacturers can specify their own targets that provide safety, especially where there are no regulatory limits.***  For chemical hazards controlled by the supplier, sampling and testing is the most common supplier verification measure.

*Id.* at 7 (emphasis added).  This suggests that when the FDA does not set regulatory limits on the heavy metals in spices and herbs, manufacturers such as McCormick can specify their own targets that provide safety.  This approach is precisely what McCormick has been doing.

The same is true with plaintiffs' request for label warnings or disclosures regarding the presence of heavy metals.  The FDA is well aware of ubiquitous heavy metals and has studied their impact on food safety.  The presence of heavy metals (and other unavoidable substances in food) was specifically contemplated by the FDCA, which empowers the FDA to set action levels and to regulate adulterants to ensure food safety.  21 U.S.C. §§ 342, 346.  Both Congress through the FDCA, and the FDA "in their deliberate judgment" and per their "deliberate choice" have not required warning labels or disclosures about the presence of ubiquitous heavy metals on any food, including spices and herbs.  In fact, in other contexts where it was suggested that the FDA require warnings to declare the presence of certain ingredients and substances, the FDA has stated it is "unwilling to require a warning statement in the absence of clear evidence of a hazard.  If the agency were to require warnings for ingredients that only cause mild idiosyncratic responses, it is concerned that it would overexpose consumers to warnings.  As a result, consumers may ignore, and become inattentive to, all such statements."  Morgan Decl., Ex. 8 at 29.  That concern applies here because many food products would need to disclose the potential presence of heavy metals, providing no true benefit to consumers.

Permitting plaintiffs and their counsel, through the courts, to set their own requirements and ban trace amounts (or the risk) of contaminants altogether or to find, retroactively, that McCormick products should not have been sold or should have a mandatory warning label, would "disrupt the expert balancing underlying the federal scheme." *Farina v. Nokia Inc.*, 625 F.3d 97, 126 (3d Cir.

2010).  Determining any mandated requirements and the action levels, if any, that should be set, is reserved to the FDA.  Otherwise, a myriad of potentially contradicting court orders would render compliance impossible.  Accordingly, the conflict preemption doctrine requires dismissal of the Complaint.

## III.  PLAINTIFFS' CLAIMS FALL UNDER FDA'S PRIMARY JURISDICTION

Even if this Court harbors any doubts as to whether the FDA has engaged in the type of formal and deliberative process for conflict preemption to apply, this lawsuit should not proceed until the FDA concludes its inquiry under the separate but related doctrine of primary jurisdiction. The FDA is currently investigating whether to implement regulations (potentially including, but not limited to, establishing action levels for enforcement) regarding the presence of heavy metals and other contaminants in the U.S. food supply.  *See* Morgan Decl., Ex. 12 at 17 (FDA requesting budget increase to address toxic elements in food products affecting maternal and infant health).  This case should be dismissed because its subject matter—the regulation of heavy metals and other contaminants in the U.S. supply of spices and herbs—is to be left to the consideration, judgment, and determinations of the FDA, the federal agency with jurisdiction over these issues, with the expertise and resources to handle them properly.

Significantly, plaintiffs' claims raise numerous food regulatory issues that require resolution by the FDA, including safety of spices and herbs, permitted action levels of heavy metals, what testing and manufacturing process should be required by manufacturers, and the proper labeling of spices and herbs.  *See Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 933–35 (N.D. Cal. 2015).  Plaintiffs specifically ask the Court to enjoin McCormick from selling spices and herbs that contains any level of heavy metals and/or unless full disclosure of the presence of heavy metals appears on the label or are made to any potential customers.  These issues require a carefully calibrated national approach to food safety and labeling based on science and after input from all stakeholders and should not be decided in the first instance by the courts.

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the

-12-

judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citation omitted).  "The primary jurisdiction doctrine allows courts . . . to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  The doctrine applies where, as here, "if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency" and when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 940 (N.D. Cal. 2014) (citations omitted).

Courts consider four factors in assessing primary jurisdiction:  "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Syntek Semiconductor Co. v. Microchip Tech.*, 307 F.3d 775, 781 (9th Cir. 2002) (amended); *accord* Astiana, 783 F.3d at 760.  Numerous courts have dismissed (or stayed) false advertising cases where the underlying theory is incompatible with the FDA's primary jurisdiction.[4]

Here, the *Syntek* factors are met because Congress has placed regulation of heavy metals in food within the jurisdiction of FDA and because establishment of standards for food safety and labeling require uniformity in administration.

*First*, issues concerning the safety of spices and herbs, permitted action levels of heavy metals, what testing and manufacturing processes should be required, and the proper labeling of spices and herbs fall squarely within the heart of the FDA's jurisdiction and mission.  The FDA is working to promulgate regulations and/or formal guidance resolving the FDA's view on these issues, which will be dispositive of the issues raised in the Complaint.  Indeed, if plaintiffs seek to impose additional or different requirements on McCormick, their claims will almost assuredly be expressly preempted.  *See*

---

[4] *See, e.g.*, *Backus*, 122 F. Supp. 3d at 933–35; *Glass v. Glob. Widget, LLC*, No. 19-CV-1906-MCE-KJN, 2020 WL 3174688, at *2 (E.D. Cal. June 15, 2020); *Colette v. CV Scis., Inc.*, No. 19-CV-10227-VAP-JEM, 2020 WL 2739861, at *1 (C.D. Cal. May 22, 2020); *Tran v. Sioux Honey Ass'n, Coop.*, No. 17-CV-110-JLS-JCG, 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017); *Kane v. Chobani, LLC*, 645 F. App'x 593, 594–95 (9th Cir. 2016).

21 U.S.C. § 343-1.  At the very least, the FDA's rulemaking and/or final guidance will be highly

relevant to McCormick's compliance with law.  *See, e.g.*, *Rosillo v. Annie's Homegrown Inc.*, No. 17-

cv-2474-JSW, 2017 WL 5256345, at *3 (N.D. Cal. Oct. 17, 2017) (FDA guidance regarding the term

"natural" is relevant to a question of how a reasonable consumer would understand that term); *In re*

*KIND LLC "Healthy & All Nat." Litig.*, 209 F. Supp. 3d 689, 696 (S.D.N.Y. 2016) (similar).

     **Second**, there is no question that "the FDCA subjects the food industry to comprehensive

regulation."  *Backus*, 122 F. Supp. 3d at 934.  "Specifically, the FDCA requires the FDA to (i) ensure

that 'foods are safe, wholesome, sanitary, and properly labeled,' (ii) promulgate regulations to enforce

the provisions of the FDCA, and (iii) enforce its regulations through administrative proceedings."

*Hawkins v. Advancepierre Foods, Inc.*, No. 15-CV-2309-JAH-BLM, 2016 WL 6611099, at *3 (S.D.

Cal. Nov. 8, 2016) (citations omitted), *aff'd*, 733 F. App'x 906 (9th Cir. 2018).  This mandate includes

vesting the FDA with authority to promulgate standards of food quality, and to address the issues

raised by this case, including setting action levels for poisonous substances in food. 21 U.S.C. §§ 341,

346.  Moreover, as this Court recognized in *Reese*, food labeling is an issue over which Congress

vested the FDA with comprehensive regulatory authority.  30 F. Supp. 3d at 941.

     **Finally**, the FDA is formally and currently working to determine how best to address trace

amounts of heavy metals in food products and to set additional action levels, as needed.  *Reese*, 30 F.

Supp. 3d at 941 ("This determination is a matter that is not only within the expertise and authority of

the agency, it is before the agency at this moment.").  Unless and until the FDA completes its work,

the Court will not have a clear indication as to how the FDA views safety and labeling of spices and

herbs, and what other factors the FDA will set for industry compliance, such as compliance periods or

safe harbors.

     It is particularly important to permit the FDA to apply its expertise in the first instance because

"the process of reducing levels of toxic elements in foods is complicated and multifaceted."  Morgan

Decl., Ex. 9 at 3.  As the FDA has made clear in the context of regulations of heavy metals in baby

food, "[i]t is crucial to ensure that measures to limit toxic elements in foods do not have unintended

consequences—like eliminating foods with significant nutritional benefits or reducing the presence of

one toxic element while increasing another."  *Id.*  The FDA is uniquely positioned of taking into

consideration food safety, the adequacy of the food supply, and the fact that alleged contaminants are omnipresent in the environment, and reducing all of that to feasible and achievable regulations and/or formal guidance.   Where, as here, the issues posed by a case implicate technical and policy considerations that should be addressed by the FDA in the first instance, courts should defer to the FDA's primary jurisdiction.   *See Clark*, 523 F.3d at 1114 (applying primary jurisdiction doctrine where plaintiff's claim "implicat[ed] technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch").   Courts thus recognize that "[w]hether a body of evidence sufficiently demonstrates that a particular amount of a chemical substance poses a serious public health risk is precisely the kind of expert question that agencies are better suited to answer than courts or juries."   *Backus*, 122 F. Supp. 3d at 934; *see also Tran v. Sioux Honey Ass'n*, 2020 WL 3989444, at *2 (C.D. Cal. July 13, 2020) ("These assertions indicate that Tran's contention that she was misled depends on the harmful nature of glyphosate.   Moreover, it is undisputed that no tolerance level has been set for glyphosate in honey and no labeling requirement exists with respect to glyphosate in honey either.   The Court is thus unable to conclude whether the 'Pure' and '100% Pure' labeling was misleading without guidance from the FDA on glyphosate's toxicity.").

Permitting courts to act before the FDA completes its work would not only disrupt the regulatory process and invade the FDA's jurisdiction, but it would also destroy national uniformity. Decisions issuing in the separate class action suits pending against manufacturers of spices or herbs in districts across the country will inevitably result in an unworkable patchwork of determinations regarding food safety and labeling requirements that vary by manufacturer and product.   McCormick, for example, could be subjected to different requirements by various courts brought against other manufacturers or retailers of spices or herbs.   *See, e.g.*, *Blassingame v. B&G Foods, Inc.*, No. 22-CV-640-BLF (N.D. Cal.); *Dardarian v. La Flor Products Co., Inc.*, No. 22-CV-547-KAM-AYS (E.D.N.Y.); *Hill v. Badia Spices, Inc.*, No. 22-CV-20258-BB (S.D. Fla.); *Matthews v. Morton & Bassett Spices*, No. 22-CV-497-JD (N.D. Cal.); *Sauceda v. Amazon.com, Inc.*, 22-CV-338-JCC (W.D. Wash.).   That outcome could result in different labeling standards among spice and herb products. Thus, dismissing or "staying this action until the FDA offers guidance at the federal level would

-15-

almost certainly help harmonize court rulings—an important consideration in view of the fact that 'Congress [did] not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide" to avoid the need for '[m]anufacturers . . . to print 50 different labels.'" *In re KIND*, 209 F. Supp. 3d at 696 (alterations in original) (citation omitted).

## IV.    **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE DECEPTION**

"Heavy metals are naturally occurring in soil and water," and so "[f]ood crops uptake these metals naturally." Morgan Decl., Ex. 10 at 2.  The levels of these elements in foods depend on many factors, including the levels in the air, water, and soil used to grow the crops, and the type of crop and how much uptake there is from the environment. *See id.* at 1–2.  As the FDA has acknowledged, "[b]ecause these elements occur in the environment, currently they cannot be completely avoided in the fruits, vegetables, or grains that are the basis" for many food products.  Morgan Decl., Ex. 11 at 2.

The foundation for plaintiffs' complaint is the allegation that McCormick "misleadingly" failed to disclose that heavy metals, perchlorate, and other toxins or contaminants might be present. ECF No. 28 ¶¶ 5–18.  Plaintiffs contend they would not have bought McCormick's products if they had known that heavy metals were present or potentially present.  *Id.*

Because courts routinely find trace contaminants are ubiquitous in the food supply, the mere possibility of their presence does not state a claim because it "is not likely to affect consumers' decisions in purchasing the product and is thus not material." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020); *see also Parks v. Ainsworth Pet Nutrition, LLC*, No. 18-CV-6936-LLS, 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020) ("The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice . . . ."); *Herrington*, 2010 WL 3448531, at *8 (dismissing omission claims regarding trace amounts of formaldehyde and dioxane for failure to allege facts showing that omissions were material to reasonable consumers); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) (considering it not plausible that a reasonable consumer would be deceived by trace glyphosate in food product); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Fla's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ("Given the widespread use of herbicides, the court

finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (alteration in original) (citation omitted) (affirming district court's grant of a motion to dismiss); *Tran*, 2020 WL 3989444, at *4–5 (no evidence reasonable consumers are deceived by the presence of trace amounts of glyphosate); *Gibson v. Quaker Oats Co.*, No. 16-CV-4853, 2017 WL 3508724, at *4 (N.D. Ill. Aug. 14, 2017) (dismissing claims based on the alleged presence of glyphosate as preempted); *Yu v. Dr Pepper Snapple Grp.*, No. 18-CV-6664-BLF, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (reasonable consumer would not understand "Natural" to mean the utter absence of residual pesticides, which are well below allowable tolerances).

## V.   PLAINTIFFS' AFFIRMATIVE MISREPRESENTATION CLAIMS SHOULD BE DISMISSED

Plaintiffs' consumer protection and fraud claims are premised on allegations that defendants made "misrepresentations and omissions."   ECF No. 28 ¶¶ 92, 100, 108, 117, 125, 156, 173. Accordingly, plaintiffs' consumer protection claims sound in fraud and are subject to the heightened pleading requirements of Rule 9(b).  *See Kent v. Hewlett-Packard Co.*, No. 09-5341-JF-PVT, 2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010) ("Allegations of active concealment sound in fraud, and thus must meet the heightened pleading requirements of [Rule] 9(b)."); *see also Resnick v. Hyundai Motor Am., Inc.*, No. 16-CV-593-BRO-PJW, 2017 WL 6549931, at *12 n.6 (C.D. Cal. Aug. 21, 2017) (holding that UCL and CLRA are claims rooted in fraud and must satisfy Rule 9(b)); *Hernandez*, 2021 WL 320612, at *5 (noting that "claims under WCPA are 'grounded in fraud'" and must satisfy Rule 9(b)).

Plaintiffs, however, fail to identify a single, actionable affirmative misrepresentation.  The only purported misrepresentation is "The Taste You Trust," ECF No. 28 ¶ 156(a), which is nothing more than non-actionable puffery.  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (internal quotation marks and citations omitted).  "Vague or highly subjective claims about product superiority amount to non-actionable puffery; only 'misdescriptions of specific or

absolute characteristics of a product are actionable.'" *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (citation omitted).  "[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by *specific* rather than general assertions." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) (emphasis added) (quoting *Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990)).  Thus, "generalized and vague statements of product superiority such as 'superb, uncompromising quality' . . . are non-actionable puffery."  *Sony*, 758 F. Supp. 2d at 1089 (omissions in original) (citation omitted).

Here, the "Taste you Trust" slogan is at most a "generalized and vague statement[] of product superiority."  *Id.*  General statements regarding quality and excellence are not affirmative, actionable representations.  *See Kommer v. Ford Motor Co.*, No. 17-CV-296-LEK-DJS, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (dismissing "Built Ford Tough" as mere puffery).  The other statements identified in the complaint—which plaintiffs do not even allege form the basis for their consumer protection claims—similarly constitute non-actionable puffery.  *See* ECF No. 28 ¶¶ 54–65.

## VI.   PLAINTIFFS CANNOT PURSUE EQUITABLE CLAIMS IN FEDERAL COURT

Where monetary relief is sufficient, a plaintiff is foreclosed from obtaining equitable relief under state law.  *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-CV-769-CJC-GJS, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020).  Because that is the case here, plaintiffs' CLRA, WCPA, UCL, and unjust enrichment claims seeking equitable relief must be dismissed.

The Ninth Circuit has recently clarified that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution" under state consumer protection laws.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020).  "According to the [Supreme] Court, even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law." *Id.* at 841 (affirming dismissal of UCL and CLRA claims where damages remedy available).  Accordingly, plaintiffs must establish, at the pleading stage that they lack an adequate remedy at law before securing equitable relief. *See id.* at

844; *Gibson*, 2020 WL 5492990, at *3; *Audrey Heredia v. Sunrise Senior Living LLC*, No. 18-CV-1974-JLS-JDE, 2021 WL 819159, at *4 (Feb. 10, 2021) ("[A] plaintiff's failure to plead inadequate remedies at law dooms the claim for equitable relief at any stage."); *Pelayo v. Hyundai Motor Am., Inc.*, Case No. 20-CV-01503-JLS-ADS, 2021 WL 1808628, at *9 (C.D. Cal. May 5, 2021) (dismissing claims for equitable relief because complaint did not contain any "factual allegations demonstrating the inadequacy of legal remedies").

Here, plaintiffs admit they have an adequate legal remedy, which necessitates dismissal of any claims for equitable relief. *See* ECF No. 28 ¶ 37 (seeking compensatory damages, punitive damages, and actual and treble damages). Their only alleged injuries are monetary damages. ECF No. 28 ¶¶ 5–18. Because plaintiffs' allegations demonstrate their injuries are nothing more than "lost money," monetary damages are adequate, and they cannot seek equitable relief. *See Adams v. Cole Haan, LLC*, No. 20-CV-913-JVS-DFM, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (finding "lost money" to be "a form of harm for which legal damages does seem to be an adequate remedy"); *Gibson*, 2020 WL 5492990, at *3 (dismissing claim because "there is nothing in the [complaint] to suggest that monetary damages would not make Plaintiff or the putative class whole"). Therefore, because the UCL and unjust enrichment claims only provide for equitable relief, and the CLRA and WCPA allow for equitable relief and damages (*id.* at *2; *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. 11-CV-1197-CJC-AN, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012); *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cty.*, 462 P.3d 461, 470 (Cal. 2020)), the Court should dismiss plaintiffs' UCL and unjust enrichment claims in their entirety, and plaintiffs' CLRA and WCPA claims to the extent they seek equitable relief, with prejudice. *See Gibson*, 2020 WL 5492990, at *3–4 (dismissing UCL claim in full and CLRA claim for equitable relief because damages remedy available); *Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-5591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (collecting cases).

## VII.   **PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS FAIL**

A breach of the implied warranty of merchantability requires that the challenged product is defective or not fit for the ordinary purpose for which the product is used. *See, e.g.*, *Hauter v. Zogarts*, 534 P.2d 377, 385 (Cal. 1975); *Barreto v. Westbrae Nat.*, 518 F. Supp. 3d 795, 806–07

(S.D.N.Y. 2021); *Sportmart, Inc. v. Spirit Mfg.*, No. 97 C 7120, 1999 WL 350662, at *3 (N.D. Ill. May 17, 1999) ("Under the implied warranty of merchantability, goods must be 'fit for the ordinary purposes for which such goods are used.'" (citation omitted)); *Dennis v. Whirlpool Corp.*, 2007 WL 9701826, at *6 (S.D. Fla. Mar. 13, 2007) (similar); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 826 (D. Minn. 2010) (similar). The implied warranty does not impose a general requirement that goods precisely fulfill the expectation of the buyer. *See Stearns v. Select Comfort Retail Corp.*, No. 08–2746 JF, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009). "[T]here must be a fundamental defect that renders the product unfit for its ordinary purpose." *Id.* A food product is fit for its ordinary purpose if it is fit for consumption. *See, e.g., Thomas v. Costco Wholesale Corp.*, No. 12-CV-2908-BLF, 2014 WL 5872808, at * 3 (N.D. Cal. Nov. 12, 2014) (noting that, for food, an implied warranty claim requires that the product was unsafe to consume); *Barreto*, 518 F. Supp. 3d at 806–07.[5]

Plaintiffs have not alleged that the products they purchased contained heavy metals in amounts that render them unsafe for human consumption. The claims should therefore be dismissed. *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013); *Bohac v. Gen. Mills, Inc.*, No. 12-CV-5280-WHO, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014).[6]

## VIII.   THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIMS

Several courts have held that "unjust enrichment" is not an independent claim for relief under California law. *See, e.g.*, *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010). "Where a plaintiff seeks restitution under statutory claims for

---

[5] The complaint pleads a nationwide class, but the only specific state laws identified are California's and Washington's, with no choice of law discussion. Although defendant accepts the claims as pleaded for purposes of this motion, an appropriate choice-of-law analysis likely will require application of all fifty states' laws, and thus raises the question whether this case could ever be certified due to variations in state law. *See, e.g.*, *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012) (vacating certification order and holding that California's consumer protection laws could not be applied to a nationwide class).

[6] Because plaintiffs' implied warranty claims fail, the Court must also dismiss the Beverly-Song claims. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) ("Both parties agree that the plaintiffs' claims under California's Song–Beverly [Act] and the federal Magnuson–Moss Warranty Act require the plaintiffs to plead successfully a breach of state warranty law." (citations omitted)).

relief, an attempt to plead a separate claim for unjust enrichment 'adds nothing to the complaint'" and should be dismissed. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 832 (S.D. Ohio 2012); *see also Marsikian v. Mercedes Benz USA, LLC*, No. 8-CV-4876-AHM-JTL, 2009 WL 8379784, at *8 (C.D. Cal. May 4, 2009) (dismissing a plaintiff's unjust enrichment claim because "including such a claim would not enlarge the range of remedies Plaintiffs may otherwise seek"). Here, plaintiffs seek restitution in their statutory claims for relief. ECF No. 28 ¶¶ 96, 104, 114, 121, 178. Thus, their unjust enrichment claim "does not enlarge the range of remedies" and "adds nothing to the complaint," warranting dismissal. *See Porsche*, 880 F. Supp. 2d at 832; *Marsikian*, 2009 WL 8379784, at *8.

Although unjust enrichment is a viable claim on its own in Washington, plaintiffs have failed to allege facts sufficient to satisfy the second or third prong in *Young*. Under Washington law, the elements of an unjust enrichment claim include: "[(1)] a benefit conferred upon the defendant by the plaintiff; [(2)] an appreciation or knowledge by the defendant of the benefit; and [(3)] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Under the second prong, courts have held that the mere receiving of payment does not demonstrate an appreciation or knowledge of any benefit conferred. *See Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*, No. C14-10 RAJ, 2014 WL 2154381, at *2 (W.D. Wash. May 22, 2014) (allegations that defendant received revenue from the sale of its products not sufficient to allege unjust enrichment). Plaintiffs have failed to allege the requisite appreciation or knowledge on behalf of defendant. Nor have the plaintiffs, under the third prong in *Young*, alleged facts sufficient to show that it is *inequitable* for McCormick to retain the payment. As such, the unjust enrichment claim under Washington law should be dismissed.

## IX.   PLAINTIFFS' NEGLIGENT FAILURE TO WARN CLAIM MUST BE DISMISSED

As a general rule, to prevail on a negligence claim, "plaintiffs must show that [McCormick] owed them a legal duty, that it breached that duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc.*, 28 P.3d 116 (Cal. 2001). To recover under a negligence

1  theory, a plaintiff must prove both that a defect caused the injury and "that the defect in the product

2  was due to negligence of the defendant."  *Id.*

3      Plaintiffs have failed to plead sufficient facts to show that McCormick owes a ***legal*** duty to

4  warn.  They merely claim that McCormick knew or had reason to know of the risk of injury and the

5  resultant harm that its products posed to plaintiffs.  However, that is not enough.  Negligence law in a

6  failure-to-warn case requires a plaintiff to show that "a manufacturer . . . did not warn of a particular

7  risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent

8  manufacturer would have known and warned about."  *Carlin v. Super. Ct.*, 920 P.2d 1347, 1351 (Cal.

9  1996).  Indeed, "a manufacturer is not required to warn against every conceivable risk associated with

10  the use of its product, and it is necessary to weigh the degree of danger involved when determining

11  whether a warning defect exists."  *Altman v. HO Sports Co.*, No. 09-CV-1000-AWI-SMS, 2009 WL

12  4163512, at *7 (E.D. Cal. Nov. 23, 2009) (quoting *Wright v. Stang Mfg. Co.*, 54 Cal. App. 4th 1218,

13  1230 (Cal. Ct. App. 1997)) (internal quotation marks omitted).  Plaintiffs have failed to allege any

14  facts that show how McCormick has deviated from industry standard in terms of warning of the risks

15  of heavy metals in spices and herbs.  *See G.P v. Sears Roebuck & Co.*, No. 14-CV-1256-SVW-JC,

16  2014 WL 12966429, at *2 (C.D. Cal. Oct. 8, 2014) (dismissing the negligent failure-to-warn claim

17  partially because the plaintiff "fails to allege any reason why [d]efendants' failure to warn of this risk

18  fell below the acceptable standard of care").

19      Moreover, plaintiffs also fail to allege *specific* facts concerning the danger of the product *to

20  each individual plaintiff.*  *Fischer v. Bos. Sci. Corp.*, No. 19-CV-2106-JVS-DFM, 2020 WL 2300138,

21  at *3 (C.D. Cal. Mar. 25, 2020) ("However, Fischer has not pled any facts to support her claim.  While

22  Fischer points to a list of generalized allegations concerning the dangers of the product, *these

23  allegations are devoid of details specific to her.*" (emphasis added) (citation omitted))); *see also G.P*,

24  2014 WL 12966429, at *2 ("This generic allegation that the lawnmower was hazardous and could

25  cause serious injury when touched does not identify a *particular* risk.").

26                  **<u>CONCLUSION</u>**

27      For the reasons stated above, the Court should dismiss plaintiffs' complaint in its entirety.

28

1   DATED:  May 20, 2022           QUINN EMANUEL URQUHART &
2                                SULLIVAN, LLP

By    */s/ Shon Morgan*

Shon Morgan
*Attorneys for Defendant* McCORMICK &
COMPANY, INC.

-23-