**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          slitteral@buror.com

*Attorneys for Plaintiffs and the Proposed Classes*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: MCCORMICK & COMPANY LITIGATION | Case No. 5:22-CV-00349-EJD |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Date:   October 20, 2022 |
| | Time:   9:00 AM |
| | Dept.:  Courtroom 4, 5th Floor |
| | Judge:  Honorable Edward J. Davila |

**TABLE OF CONTENTS**

PAGE(S)

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT ............................................................................................................2

    A.   Plaintiffs Have Standing To Pursue Their Claims ......................................2

    B.   Plaintiffs Have Standing to Seek Injunctive Relief ....................................8

    C.   Plaintiffs' Claims Are Not Preempted .........................................................9

    D.   Plaintiffs' Claims Are Not Subject to Primary Jurisdiction .....................13

    E.   Plaintiffs Plausibly Allege Deception .......................................................18

    F.   Plaintiffs' Claims of Affirmative Misrepresentation Are Sufficiently Pleaded .....................................................................................................19

    G.   Plaintiffs Can Pursue Their Equitable Claims In Federal Court .............21

    H.   Plaintiffs Have Sufficiently Pleaded Their Claims For Breach Of Implied Warranty ......................................................................................23

    I.   Plaintiffs Have Sufficiently Pleaded Their Claims For Unjust Enrichment ................................................................................................24

III. CONCLUSION ........................................................................................................25

**CASES**

*Anderson v. Ghaly,*
  2020 WL 225343 (N.D. Cal. Jan. 15, 2020) ........................................................ 18

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F. 3d 753 (9th Cir. 2015) ...................................................................... 14, 16

*Backus v. General Mills,*
  122 F. Supp. 3d 909 (N.D. Cal. 2015) ................................................................ 17

*Berke v. Whole Foods Mkt., Inc.,*
  2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) .............................................. 3, 4, 5

*Boysen v. Walgreen Company,*
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ........................................................ 6

*Brown v. Natures Path Foods, Inc.,*
  2022 WL 717816 (N.D. Cal. Mar. 10, 2022) .................................................... 21, 23

*Brown v. Van's Int'l Foods, Inc.,*
  2022 WL 1471454 (N.D. Cal. May 10, 2022) ........................................................ 8

*Bruton v. Gerber Products Co.,*
  703 F. App'x 468 (9th Cir. 2017) .................................................................... 24

*Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby,*
  958 F.2d 941 (9th Cir. 1992) ........................................................................ 10

*Cimoli v. Alacer Corp.,*
  546 F. Supp. 3d 897 (N.D. Cal. 2021) ................................................................. 9

*Clancy v. The Bromley Tea Company,*
  308 F.R.D. 564 (N.D. Cal. 2013) .................................................................... 21

*Clark v. Time Warner,*
  523 F. 3d. 1110 (9th Cir. 2008) ................................................................. 17, 18

*Coffelt v. Kroger Co.,*
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ........................................................ 5

*Cohen v. Apple Inc.,*
  497 F. Supp. 3d 769 (N.D. Cal. 2020) ................................................................ 13

*Cohen v. ConAgra Brands, Inc.,*
  16 F. 4th 1283 (9th Cir. 2021) ................................................................... 12, 14

*Corbett v. Pharmacare U.S., Inc.*,
  2021 WL 4866124 (S.D. Cal. Oct. 19, 2021) ................................................... 10

*Cortina v. Goya Foods, Inc.*,
  94 F. Supp. 3d 1174 (S.D. Cal. 2015) ...................................................... 10, 13

*Cousineau v. Microsoft Corporation*,
  992 F. Supp. 2d 1116 (W.D. Wash. 2012) ...................................................... 6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ............................................................... 8, 9

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................... 20

*Doss v. General Mills, Incorporated*,
  816 F. App'x 312 (11th Cir. 2020) .......................................................... 7

*Elgindy v. AGA Serv. Co.*,
  2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ...................................... 8, 21, 22

*Farina v. Nokia Inc.*,
  625 F.3d 97 (3d Cir. 2010) ................................................................. 13

*Fine v. ConAgra Foods, Inc.*,
  2010 WL 11595914 (C.D. Cal. June 29, 2010) ................................................ 3

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
  373 U.S. 132 (1963) ........................................................................ 12

*Freedline v. O Organics LLC*,
  445 F. Supp. 3d 85 (N.D. Cal. 2020) ........................................................ 16

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) ........................................................................ 13

*Green v. PepsiCo, Inc.*,
  2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) .................................................. 7

*Grossman v. Schell & Kampeter, Inc.*,
  2019 WL 1298997 (E.D. Cal. Mar. 21, 2019) ................................................. 21

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................................... 3, 4

*Hough v. Big Heart Pet Brands, Inc.*,
  2020 WL 7227198 (N.D. Cal. Dec. 8, 2020) ................................................... 3

*Hunter v. Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) .............................................................. 10

*In re Bang Energy Drink Mktg. Litig.*,
  2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ............................................................. 8

*In re Big Heart Pet Brands Litig.*,
  2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ......................................................... 20, 21

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
  2020 WL 7418006 (D.N.J. Dec. 18, 2020) ............................................................. 12

*Ingalls v. Spotify USA, Inc.*,
  2017 WL 3021037 (N.D. Cal. July 17, 2017) ....................................................... 8, 9

*Jackson v. General Mills, Inc.*,
  2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ......................................................... 9

*Johnson v. Trumpet Behav. Health, LLC*,
  2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ............................................................. 22

*Joslin v. Clif Bar & Co.*,
  2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ....................................................... 9

*Junhan Jeong v. Nexo Financial LLC, et al.*,
  2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ......................................................... 22

*Keithly v. Intelius Inc.*,
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ........................................................... 25

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................ 18

*Kirchenberg v. Ainsworth*,
  2022 U.S. Dist. LEXIS 10171 (E.D. Cal. Jan. 18, 2022) ....................................... 23

*Koronthaly v. L'Oreal USA, Incorporated*,
  2008 WL 2938045 (D.N.J. July 29, 2008) ............................................................ 6

*Kosta v. Del Monte Corp.*,
  2013 WL 2147413 (N.D. Cal. May 15, 2013) ....................................................... 16

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ............................................................... 19

*Lanovaz v. Twinings N. Am, Inc.*,
  726 F. App'x 590 (9th Cir. 2018) ....................................................................... 9

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................................................. 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 2

*Maisel v. S.C. Johnson & Son, Inc.*,
   2021 WL 1788397 (N.D. Cal. May 5, 2021)...............................................................8

*Mancuso v. RFA Brands, LLC*,
   454 F. Supp. 3d 197 (W.D.N.Y. 2020)......................................................................3

*Marek v. Molson Coors Beverage Company*,
   2022 WL 1090261 (N.D. Cal. Jan.14, 2022).............................................................13

*Marsh v. Zaazoom Sols., LLC*,
   2012 WL 952226 (N.D. Cal. Mar. 20, 2012).............................................................11

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)..................................................................................6

*McGee v. S-L Snacks National*,
   982 F.3d 700 (9th Cir. 2020)....................................................................................7

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996).................................................................................................10

*Milan v. Clif Bar & Co.*,
   489 F. Supp. 3d 1004 (N.D. Cal. 2020)....................................................................8

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2021 WL 3524047 (N.D. Cal. Aug. 6, 2021).............................................................8

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020)..................................................................................21

*Moreno v. Vi-Jon, Incorporated*,
   2021 WL 807683 (S.D. Cal. Mar. 3, 2021)..............................................................7

*Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*,
   2016 U.S. Dist. LEXIS 186305 (D. Or. Dec. 8, 2016)............................................24

*Pac. Gas. & Elec. Co. v. State Energy Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983).................................................................................................11

*Pagendarm v. Life Ins. Co. of N. Am.*,
   2017 WL 6405617 (N.D. Cal. Dec. 15, 2017)..........................................................19

*Peacock v. Pabst Brewing Co., LLC*,
   491 F. Supp. 3d 713 (E.D. Cal. 2020)......................................................................21

*People of State of Cal. v. F.C.C.*,
   905 F.2d 1217 (9th Cir. 1990)..................................................................................11

*Prescott v. Bayer Healthcare LLC*,
   2020 WL 4430958 (N.D. Cal. July 31, 2020)..........................................................16

*Rahman v. Mott's LLP.*,
  2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) .................................................. 9

*Reese v. Odwalla, Inc.*,
  30 F. Supp. 3d 935 (N.D. Cal. 2014) .......................................................... 17

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ....................................................... 14, 15, 16

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .................................................. 2

*Robles v. Domino's Pizza, LLC*,
  913 F.3d 898 (9th Cir. 2019) .................................................................. 14

*Rodriguez v. Just Brands USA, Inc.*,
  2021 WL 1985031 (C.D. Cal. May 18, 2021) .................................................... 9

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ............................................................. 25

*Rosillo v. Annie's Homegrown Inc.*,
  2017 WL 5256345 (N.D. Cal. Oct. 17, 2017) .................................................. 17

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ............................................................... 18

*Sandoval v. Pharmacare US, Inc.*,
  145 F. Supp. 3d 986 (S.D. Cal. 2015) ........................................................ 12

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ........................................................ 10

*Sonner v. Premier Nutrition Corp.*,
  971 F. 3d 834 (9th Cir. 2020) ............................................................... 21

*Soo v. Lorex Corp.*,
  2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) .................................................. 24

*Souter v. Edgewell Pers. Care Co.*,
  2021 WL 3892670 (S.D. Cal. June 7, 2021) ................................................... 16

*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ............................................................... 13

*Tran v. Sioux Honey Association, Cooperative*,
  2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) .................................................. 17

*Trazo v. Nestle USA, Inc.*,
  113 F.Supp.3d 1047 (N.D. Cal. 2015) ......................................................... 24

*Turner v. Apple, Inc.*,
  2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ............................................ 23

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................... 24

*Vizcarra v. Unilever United States, Inc.*,
  2020 WL 4016810 (N.D. Cal. July 16, 2020) ............................................ 8

*Watson v. Solid Gold Pet, LLC*,
  2019 WL 3308766 (C.D. Cal. Feb. 22, 2019) ........................................... 19

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ............................................ 7

*Williams v. Gerber Prods.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................ 20

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ................................................................. 12, 13

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  2022 WL 844152 (N.D. Cal. Mar. 22, 2022) ............................................ 21

*Zarinebaf v. Champion Petfoods USA Inc., No. 18 C*,
  6951, 2022 WL 980832 (N.D. Ill. Mar. 31, 2022) ...................................... 21

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................ passim

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021) ................................................. 23

**STATUTES**

21 U.S.C. § 343-1 ................................................................. 10, 12

47 U.S.C. § 258 ....................................................................... 17

Pub. L. 101-535, section 6, 104 Stat. 2343 (1990) .................................... 10

**RULES**

Fed. R. Civ. P. 8 .................................................................... 25

Fed. R. Civ. P. 9(b) ................................................................. 25

# I. INTRODUCTION

Defendant sells herbs and spices, including Culinary Ground Basil, Ground Ginger, Ground Oregano, Paprika, Ground Thyme, and Ground Turmeric (collectively, the "Products"), that, according to independent testing conducted by Consumer Reports, were found to contain dangerous and toxic heavy metals: arsenic, lead, and cadmium (the "Heavy Metals").  Consolidated Amended Complaint ("CAC"), ¶¶ 1-2.  This is despite the fact that approximately 94% of consumers have indicated in a consumer survey that the presence or risk of even a small amount of heavy metals in the spices would either be important or very important to their purchasing decisions.  *Id.*, ¶ 39.  Nonetheless, and despite its knowledge of the existence of these Heavy Metals in its Products, Defendant fails to alert consumers that the Products contain (or risk containing) Heavy Metals and instead affirmatively misrepresents its Products with a prominent label directly on the front of the Products' packaging which reads "The Taste You Can Trust."  Defendant's misrepresentations and omissions are further placed in context by claims on Defendant's website such as "Consumers and customers rely on McCormick's procurement and processing standards . . . [and] this reputation [has] won us new business and helped us grow our sales."  *Id.*, ¶ 65.

Although Defendant makes these and other quality assurances, consumers of Defendant's Products are at risk owing to the presence of the Heavy Metals.  Specifically, "[n]o amount of lead is known to be safe," while "[a]rsenic is ranked first among toxicants posing a significant potential threat to human health based on known or suspected toxicity," and "[a]ny cadmium should be avoided."  *Id.*, ¶¶ 23-25.  The reason for these determinations is obvious: lead can affect almost every organ and system in the body, inhibiting neurological function and causing anemia, kidney damage, seizures, and in extreme cases, even death.  *Id.*, ¶ 23.  Arsenic is linked to cardiovascular disease and bladder, lung, liver, and skin cancer, and strokes and diabetes.  *Id.*, ¶ 24.  Cadmium may likewise lead to damage to kidneys, lungs, and bones.  *Id.*, ¶ 25.

Defendant's briefing, which largely coopts word-for-word the same argument rejected by Judge Yvonne Gonzalez-Rogers in *In re Plum Baby Food Litigation*, does little to undermine Plaintiffs' claims.  Case No. 4:21-CV-913-YGR (N.D. Cal. Jan. 12, 2022), Dkt. 125.  Instead, Defendant seeks to circumvent that holding by converting its motion to dismiss to one for summary

judgment, asking this Court to judicially notice facts that are well outside the bounds of Plaintiffs' CAC and are otherwise subject to reasonable dispute. All told, Defendant has not met its burden on this motion. Accordingly, the motion should be denied entirely.

## II. ARGUMENT

### A. Plaintiffs Have Standing To Pursue Their Claims

Defendant first argues that Plaintiffs lack standing because "[t]he complaint is completely devoid of any allegations of actual injury suffered by the plaintiffs" as "Plaintiffs do not contend the products they bought even contained heavy metals, let alone at unsafe levels, and do not allege any physical injury as a result of defendant's products." MTD at 5. That is wrong for five reasons.

***First***, Defendant's argument conflates the question of whether Plaintiffs have standing with the question of whether Plaintiffs' claims have merit and should thus be rejected. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) ("Defendants argue that plaintiffs cannot show any cognizable injury, because they cannot establish that defendants' Products contain unsafe amounts of arsenic, lead, or BPA. Defendant's arguments largely go to the merits of plaintiffs' claims, and not their standing to bring those claims."). In reality, the Northern District of California has already determined that plaintiffs who purchase food products suffer an injury requisite for Article III when those foods contain heavy metals. *See Kochar, et al. v. Walmart, Inc.*, No. 3:21-cv-02343-JD, ECF No. 51, p. 1 (N.D. Cal. Filed April 25, 2022) ("Named plaintiffs have Article III standing to sue because they plausibly alleged the economic injury of paying a premium for baby food advertised as healthy when it is said to have contained excessive levels of non-naturally occurring heavy metals.").

***Second***, Defendant's argument, which appears to suggest that Plaintiffs must have tested their own Products to have standing, has no support in the case law and has been roundly rejected. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Big Heart . . . argue[s] that plaintiffs are required to link the independent testing (that allegedly confirms that the representations on Nature's Recipe Food are false) to the Nature's Recipe Food products they purchased . . . . That argument is not persuasive . . . . In assessing standing on a motion to dismiss, the court must 'presume

that [] general allegations,' like the ones alleged here, 'embrace those specific facts that are necessary to support the claim.'"); *Hough v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at *2–3 (N.D. Cal. Dec. 8, 2020) (same); *Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020) ("Defendant argues that because there is no allegation as to how much arsenic was in the Starkey Water that Plaintiff *himself bought*, his alleged injury is speculative . . . . The Court disagrees."); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020) ("Defendant argues that because no testing was performed on plaintiff's own power bank and because plaintiff's claimed injury relied on speculative extrapolation of a single set of test results, plaintiff has failed to allege a plausible injury in fact . . . . At the pleading stage, however, more specific allegations are not necessary for Article III standing.").

Indeed, some courts have even determined that no testing at all is required either by the plaintiff or a third party to assert analogous claims. *See, e.g., Fine v. ConAgra Foods, Inc.*, 2010 WL 11595914, at *1 (C.D. Cal. June 29, 2010) ("While Plaintiff herself does not have direct knowledge of the presence of diacetyl in Defendant's products, Plaintiff relies on the work and statements of several health experts and alleges that '[k]nown substitutes for diacetyl still contain molecules of diacetyl.' At this stage of the litigation, the Court must view all material allegations in the Complaint as true and thus accepts Plaintiff's contention regarding the presence of diacetyl in Defendant's products.").

**Third**, Defendant's argument is based on a false premise, as its principal case on this question, *Herrington v. Johnson & Johnson Consumer Companies, Incorporated*, is facially distinguishable. *See* MTD at 5 (citing 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010)). There, the plaintiffs alleged that "1,4-dioxane and formaldehyde are *probable* human carcinogens" not that they "are in fact carcinogenic for humans." 2010 WL 3448531, at *3 (emphasis added). As the court determined, the thrust of the plaintiffs' allegations was merely that the "ingredients [had] not been shown to be safe." *Id.*, at *1. Here, by contrast, Plaintiffs support their allegations with experts from Consumer Reports who have determined that the Products "had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical serving sizes. Most raised concerns for adults, too." CAC, ¶ 2. Consumer Reports presented

its results, organizing each spice by type as well as by brand.  *See* Def's RJN, Ex. 2, 12-19.  Each of the Products Plaintiffs identify is included on that list.  *See id.*[1]  As Plaintiffs allege, these results are concerning because "[e]ven modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions."  CAC, ¶ 22.

Plaintiffs then cite to the Centers for Disease Control and Prevention, noting that "[e]xposure to lead may cause anemia, weakness, and kidney and brain damage."  *Id.*, ¶ 23.  Plaintiffs also cite to academic articles hosted by the National Institute of Health, showing that "[a]rsenic can . . . cause bladder, lung, liver, and skin cancer, and strokes and diabetes."  *Id.*, ¶ 24.  Plaintiffs further include material from the Occupational Safety & Health Administration which has determined that cadmium is "known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems."  *Id.*, ¶ 25.  Accordingly, it is not simply *probable* that these metals cause harm, or that they merely *have not been shown to be safe*.  Rather, the metals in Defendant's spices have definitively been proven by reputable sources to cause harm to human health.  *See id.*, ¶¶ 22-25.  Consequently, Plaintiffs allege that "[h]ad [they] known the truth—i.e., that the Products contained Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them."  *Id.*, ¶¶ 50, 5-18.

**Fourth**, Plaintiffs' allegations in this regard are well supported by the case law.  In *In re Plum Baby Food Litigation*, for example, the plaintiffs brought an action against "defendants Plum, PBC, and Plum, Inc. . . . alleging that Plum failed to disclose that its baby food products contain (or have a risk of containing) heavy metals (namely, arsenic, cadmium, lead, and mercury), and perchlorate."  Case No. 4:21-CV-913-YGR (N.D. Cal. Jan. 12, 2022), Dkt. 125, at 1.  Judge Gonzalez-Rogers determined that "plaintiffs have adequately alleged an injury in fact by alleging that they 'would not have paid [the purchase price or the price premium] had they known that the Baby Foods included

---

[1] Other courts have permitted Plaintiffs to succeed based on similar allegations supported by testing conducted by Consumer Reports.  *See, e.g.*, *Berke v. Whole Foods Market, Inc.*, 2020 WL 5802370, (C.D. Cal. Sept. 18, 2020).

levels of Heavy Metals, perchlorate, and/or undesirable toxins and contaminants." *Id.* (alteration in original).

Likewise, in *Zeiger*, the plaintiffs alleged that "[t]he Products contain[ed] 'material and significant levels of arsenic and lead,' 'known dangerous toxins for both humans and animals including dogs.'" 304 F. Supp. 3d at 842. The plaintiffs further alleged "the defendant knew or should have known of the presence of these contaminants, but the Products d[id] not contain any warning label or disclose the presence of these contaminants." *Id.* Judge Tigar determined that the plaintiffs had alleged a "quintessential injury-in-fact" because "Plaintiffs' claims are premised on their allegations that were it not for defendant's labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products." *Id.* at 846.

Indeed, numerous courts have held similarly when presented with analogous facts. *See Berke*, 2020 WL 5802370, at *6 (finding an injury in fact where plaintiff alleged that "he purchased and paid a premium for Starkey Water and had he known the truth [that the water contained arsenic] he would not have purchased Starkey Water or paid a premium for it."); *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *5 (finding an injury in fact where "Plaintiff parted with money to purchase the subject vegetables" that "turned out to be adulterated and not fit for sale or human consumption" and where the plaintiff "suffered an economic loss that he would not have otherwise suffered had Kroger's representations on the packaging accurately reflected the risks associated with consuming their contents."); *In re Morning Song Bird Food Litigation*, Case No. 3:12-cv-01592-JAH-AGS (S.D. Cal. Sept. 30, 2013), Dkt. 44, p. 6 (determining that "[t]he Court finds Plaintiffs sufficiently allege an injury in fact to support standing" where "Plaintiffs allege they . . . spent money to purchase the bird food which was worthless because it was [contaminated with pesticides and] was not fit for consumption by birds.").

In the face of this precedent, Defendant's unsupported argument that Plaintiffs do not adequately allege Article III standing based on a price premium should be rejected. *See* MTD at 7. Indeed, Defendant argues disingenuously that "all spice products potentially contain trace amounts of heavy metals, making the presence of heavy metals irrelevant to pricing." MTD at 7. However,

this statement is at odds with its public statements on the matter: "Defendant informed Consumer Reports that it specifically tests products in its manufacturing plants for heavy metals and that its goal is for levels of same to be as close to zero as possible." CAC, ¶ 33. In fact, as Plaintiffs allege, quoting Consumer Reports, "'it is possible for herbs and spice companies to limit heavy metals in their products' as '[a]bout two-thirds of the spices tested did not have any concerning levels of heavy metals.'" *Id.*, ¶ 32. It just so happens that Defendant's Products were a part of the one-third that did have concern.

**Fifth**, Defendant's citations do not compel a different result. *Boysen v. Walgreen Company*, for example, has no applicability as the levels of lead and arsenic alleged there fell "within the FDA advisory guidelines for [the] fruit juices" at issue. 2012 WL 2953069, at *5 (N.D. Cal. July 19, 2012); *see* MTD at 6. Here, by contrast, as Defendant admits in its briefing, the FDA has not set guidelines for metals in herbs and spices. *See* MTD at 2. Thus, this case is more analogous to *Zeiger* which distinguished *Boysen* on the same basis. 304 F. Supp. 3d at 846 ("This case is distinguishable for the simple reason that the FDA has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in dog foods."). Similarly, *Cousineau v. Microsoft Corporation*, does not support Defendant's position on standing because in that case the court determined the plaintiff had standing, and its discussion of the Washington Consumer Protection Act ("WCPA") had nothing to do with standing. *See* 992 F. Supp. 2d 1116, 1121 (W.D. Wash. 2012) ("The Court focuses its review on Cousineau's standing to bring claims under the [SCA]. At this point, the Court need not reach her standing to bring claims under the . . . [WCPA] . . . because, as discussed later on, she has not stated a claim entitling her to relief[.]").

*Koronthaly v. L'Oreal USA, Incorporated* is also distinguishable because there the plaintiffs did not, for example, allege, as Plaintiffs do here, that they overpaid for the products at the time of purchase. *Compare* 2008 WL 2938045, at *1 (D.N.J. July 29, 2008) *with* CAC, ¶¶ 5-18, 42, 50. Besides, *Koronthaly* does not accurately reflect the law of this Circuit, as addressed above. *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (determining that "Plaintiffs claim that they paid more for their homes than they were worth *at the time of sale*" was sufficient to confer Article III standing) (emphasis in original). *Moreno v. Vi-Jon, Incorporated* is also inapposite

because there the plaintiffs' claims rested on a logical fallacy. 2021 WL 807683, at *4 (S.D. Cal. Mar. 3, 2021). As the court determined, "Plaintiff has done nothing more than 'mathematically' calculate that the percentage of serious disease bearing 'germs' must, logically, exceed 0.01% of the universe of germs, and therefore, cannot 'kill' all of the most serious germs." *Id.* Plaintiffs' allegations here do not suffer from this deficiency. *Doss v. General Mills, Incorporated* is also not applicable because the plaintiff "had not alleged that glyphosate is wholly unsafe to consume." 816 F. App'x 312, 314 (11th Cir. 2020).

By contrast, Plaintiffs here allege, for example, that "[n]o amount of lead is known to be safe." CAC, ¶ 22. *Green v. PepsiCo, Inc.*, 2019 WL 8810364, at *1, *3 (S.D. Fla. Apr. 12, 2019) also a case based on glyphosate, and which denied the application of the benefit of the bargain theory of standing, is inapplicable because that case does not reflect the law of this Circuit as demonstrated by Defendant's citation to *McGee v. S-L Snacks National* where the court determined that "[w]e agree with McGee that, '[u]nder the benefit of the bargain theory, a plaintiff might successfully plead an economic injury alleging that she bargained for a product worth a given value but received a product worth less than that value.'" 982 F.3d 700 (9th Cir. 2020). And whereas the plaintiff in *McGee* "d[id] not allege that the defendant's popcorn labels were misleading," Plaintiffs do so here. *See, e.g.,* CAC, ¶ 49 ("In reliance upon Defendant's labels that contained material misrepresentations and omissions, Plaintiffs and the Class members purchased Defendant's Products.").

The remainder of Defendant's citations addressing damage models, MTD at 6, were all decided at class certification and are untethered to the immediate question of standing. *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014) (citations omitted) ("To satisfy the Rule 23(b)(3) predominance requirement, a plaintiff must present a damages model that is 'consistent with [his or her] liability case[.]"). Besides, Plaintiffs' damage models are alleged in the alternative. *See, e.g.,* CAC, ¶ 52 ("the Products that Plaintiffs and the Class members purchased are worthless or are worth less than Plaintiffs and the Class paid for them.").

All told, Plaintiffs have adequately alleged an injury in fact for standing purposes.

**B.     Plaintiffs Have Standing to Seek Injunctive Relief**

Defendant argues that "Plaintiffs also lack Article III standing to pursue injunctive relief because they do not allege 'actual and imminent' and 'certainly' impending threatened or future injury." MTD at 7 (citations omitted).  That is wrong.

Each of the Plaintiffs allege that they "continue to desire to purchase the Product[s] from Defendant.  However, [they] are unable to determine if the Product[s] [are] actually safe" and that "as long as Defendant continues to market its Product as safe, [they] will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Product[s] and competitor's products" and that they are "further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as [] quality and healthy spice[s] [are], in fact, [] quality and healthy spice[s]."  CAC, ¶¶ 6, 8, 10, 12, 14, 16, 18.

In this way, Plaintiffs' allegations for injunctive relief are supported by the case law in this District.  *See Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)) (finding the plaintiff had sufficiently alleged injunctive relief where "Plaintiff alleges that she continues to desire to purchase the Products if they were actually natural and would be unable to trust Defendant's label representations absent injunctive relief."); *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *11 (N.D. Cal. Feb. 6, 2020) (same); *Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) (same); *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *6 (N.D. Cal. May 5, 2021) (same); *Elgindy v. AGA Serv. Co.*, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) (same).

Still, Defendant argues that Plaintiffs' "aware[ness]" that the Products contain Heavy Metals defeats their claims for injunctive relief.  Not so.  *See Vizcarra v. Unilever United States, Inc.*, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) ("Unilever argues that Vizcarra lacks standing to seek injunctive relief because she is now aware of the true source of the vanilla flavoring . . . Unilever's argument fails in light of *Davidson*."); *Moore*, 2021 WL 3524047, at *6 (same); *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (same); *Ingalls v. Spotify USA, Inc.*, 2017 WL

3021037, at *6 (N.D. Cal. July 17, 2017) (Alsup, J.) (citations omitted) ("Such a rule would . . . in essence, give permission to defendants to continue their deceptive conduct 'because a plaintiff who had been injured would always be deemed to avoid the cause of injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

Defendant's citations do not compel a different result. *See* MTD at 8. In *Joslin v. Clif Bar & Co.*, for example, the plaintiffs "d[id] not allege they want to or intend to purchase the Products in the future." 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019). *Lanovaz v. Twinings N. Am, Inc.*, is distinguishable for the simple reason that "Lanovaz stated that she would not purchase Twinings products again[.]" 726 F. App'x 590, 591 (9th Cir. 2018). In *Rodriguez v. Just Brands USA, Inc.*, the plaintiff merely stated that "he 'may' purchase" the products in the future. 2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021). In *Jackson v. General Mills, Inc.*, the plaintiff failed to state a claim in the first instance, and otherwise does not reflect the law of this District following *Davidson*, as shown above. 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020). *Cimoli v. Alacer Corp.*, is inapposite because it involved "dosage representations" stated explicitly on the bottle, whereas Defendant here fails to make any disclosure of the Heavy Metals in its Products, and thus Plaintiffs here, unlike in *Cimoli*, cannot rely on Defendant's labels. 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) ("The complaint explicitly notes that "a customer must consume three [g]ummies to receive 750mg of Vitamin[.]"). The same is true of *Rahman v. Mott's LLP*. 2018 WL 4585024, at *4 (N.D. Cal. Sept. 25, 2018) ("Rahman is able to rely on the packaging now that he understands the 'No Sugar Added' label.").

Thus, Plaintiffs have Article III standing to sue for injunctive relief.

## C. Plaintiffs' Claims Are Not Preempted

Defendant argues that Plaintiffs' claims are preempted because they "directly conflict with the FDA's role" to regulate such matters and "impinge on the FDA's considered judgment about the safety and labeling of spices and herbs." MTD at 9. These arguments are wrong.

First, Defendant's section is nearly verbatim—word for word including case citations—as the defendant's arguments on preemption as asserted and rejected in *In re Plum*. *Compare* MTD 9-12 *with* Case No. 4:21-CV-913-YGR (N.D. Cal. Oct. 18, 2022), Dkt. 103, at 11-15. Accordingly,

given that Defendant asserts the same arguments in the face of analogous facts as in *In re Plum*, the same outcome should apply: "[T]he motion to dismiss on the basis of conflict preemption is DENIED. [Defendant] fails to articulate any specific federal law or regulation with which plaintiffs' state law claims purportedly conflict." *In re Plum*, Case No. 4:21-CV-913-YGR, Dkt. 125, at 2.

Second, Defendant disregards the language of the federal Food Drug and Cosmetic Act ("FDCA"), and the accompanying federal statutes governing its application. The Nutrition Labeling and Education Act ("NLEA") expressly exempts safety disclosures from preemption and Plaintiffs' claims are rooted in consumer protection statutes that are within the states' historic police powers and entitled to the presumption against preemption. *See, e.g., Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992) (historic police powers include "[l]aws regulating the proper marketing of food, including the prevention of deceptive sales practices.").

Section 6(c)(2) of the NLEA, which was not codified, states that section 403A of the FDCA, 21 U.S.C. § 343-1, "shall not be construed to apply to any requirement respecting a statement on the labeling of food that provides a warning concerning the safety of the food or a component of the food." Pub. L. 101-535, section 6, 104 Stat. 2343 (1990); *see Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015) ("Section 6(c)(2) saves from express preemption state laws such as Proposition 65 requiring food safety warnings."); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009) ("NLEA—including the savings clause (no preemption unless the law is expressly preempted)—shall not be construed to affect preemption of food safety laws."). The point was made even clearer in *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1188 (S.D. Cal. 2015), where the court sustained the plaintiffs' claims based on a theory of omission—that the defendant's products failed to disclose the presence of substances known to cause cancer.

Defendant, as the party seeking preemption, bears a heavy burden. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). The presumption against preemption is long standing. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Corbett v. Pharmacare U.S., Inc.*, 2021 WL 4866124, at *8 (S.D. Cal. Oct. 19, 2021). As in *In re Plum*, Defendant ignores or misconstrues prevailing authorities and relevant law. As a preliminary matter, federal law can preempt state law only under three circumstances: (1) an explicit federal statutory command

preempting state law; (2) a sufficiently comprehensive scheme of federal regulation supporting a reasonable inference that Congress left zero room for supplementary regulation; or (3) a demonstration that it is physically impossible to comply with both federal and state law. *Pac. Gas. & Elec. Co. v. State Energy Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983). As the Ninth Circuit has determined, preemption is not justified

> merely by showing that *some* of the preempted state regulation would [] frustrate [agency] regulatory goals. Rather, the [party supporting preemption] bears the burden of justifying its *entire* preemption order by demonstrating that the [regulatory] order is narrowly tailored to preempt *only* such state regulation as would negate valid . . . regulatory goals.

*People of State of Cal. v. F.C.C.*, 905 F.2d 1217, 1243 (9th Cir. 1990). As in *In re Plum*, Defendant only argues conflict preemption applies. *Compare* MTD 9-12 *with* Case No. 4:21-CV-913-YGR (N.D. Cal. Oct. 18, 2022), Dkt. 103, at 11-15. As Judge Gonzalez-Rogers has determined, "conflict preemption arises when 'compliance with both federal and state regulations is a physical impossibility' [and] . . . may also exist where 'state law' stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' [] Showing preemption by impossibility is a 'demanding defense.'" *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *6 (N.D. Cal. Mar. 20, 2012).

Like the defendant in *In re Plum*, Defendant has not met its heavy burden to demonstrate conflict preemption as Defendant's contentions suffer from identical deficiencies. Defendant has cited no relevant federal statute showing state statutory and common law claims concerning nondisclosure of the presence of heavy metals in herbs and spices would pose an obstacle to objectives of Congress. This is unsurprising since the NLEA expressly exempts these claims as discussed above. Moreover, Defendant cannot show that there is a comprehensive regulatory scheme that precludes all state obligations. In fact, Defendant acknowledges this in its briefing. *See* MTD at 2 ("The FDA has not found it warranted to set a limit for heavy metals in spices and herbs."). And Defendant cannot demonstrate it would be physically impossible to comply with both federal and state law.

In *Wyeth v. Levine*, the Supreme Court determined in the context of preemption and the FDCA that "[i]f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history." 555 U.S. 555, 574 (2009). Accordingly, the Supreme Court rejected the suggestion that a state's failure to warn claims would obstruct federal regulation of drug labeling. *Id.* at 573–81; *see also Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in the protection of (their) people against fraud and deception[.]"). As the *Wyeth* Court further noted, "[i]mpossibility pre-emption is a demanding defense, and a defendant's "argu[ment] that requiring it to comply with a state-law duty to provide a stronger warning . . . would obstruct the purposes of federal . . . labeling regulation" has no merit. *Wyeth*, 555 U.S. at 573. Following *Wyeth*, courts have rejected the suggestion that the FDCA preempts state law and consumer protection laws and noted that contrary rulings preempting such claims pre-date *Wyeth*. *See, e.g., In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2020 WL 7418006, at *7 (D.N.J. Dec. 18, 2020).

The Ninth Circuit's decision in *Cohen v. ConAgra Brands, Inc.*, 16 F. 4th 1283, 1287-88 (9th Cir. 2021), likewise supports that preemption is not proper here. There, the Court held that preemption would apply where a branch of the FDA had reviewed and approved the product label, but would not bar state law challenges to representations on the defendant's webpage because those statements had not been subject to agency review and approval. *Id.* at 1290-91. Since there has been no FDA review or approval of Defendant's packaging here, Plaintiffs' claims, including those under California's consumer protection laws, are not preempted.

Further, "District courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims [] are impliedly preempted." *Sandoval v. Pharmacare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015). Defendant's argument to the contrary is based on a misunderstanding of preemption and how the courts have narrowly applied it in the context of FDA and its powers under the FDCA, 21 U.S.C. § 343-1. Defendant's misguided analysis is underscored by its reliance on preemption decisions involving different agencies, such as the Department of Transportation regulating vehicle safety systems and the Federal Communications Commission

("FCC") regulating cell phones. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000); *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003); *Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010); *Cohen v. Apple Inc.*, 497 F. Supp. 3d 769 (N.D. Cal. 2020) ("*Apple*"). Indeed, the Supreme Court's subsequent decision in *Wyeth v. Levine*, specifically distinguished cases such as *Geier* as a situation where the agency had "conducted a formal rulemaking and then adopted a plan to phase in a mix of passive restrain devices" and declared that it would pay no deference to informal agency statements. *Wyeth*, 555 U.S. at 580–81 & n.14. No such formal rule making has been adopted here. *See Marek v. Molson Coors Beverage Company*, --- F. Supp. 3d ---, 2022 WL 1090261 at *8 (N.D. Cal. Jan.14, 2022) ("Absent evidence the FDA is actively engaged in *rulemaking* that could impact whether or not Vizzy is accurately viewed as a fortified product or whether the challenged statement can be seen as false or misleading, there are no efficiencies to be gained by dismissing or staying this case under the primary jurisdiction doctrine") (emphasis added).

Further, Defendant's reliance on *Farina* and *Apple* is misplaced. Both decisions involved the FCC's authority where the relevant statute conferred exclusive jurisdiction to the FCC. *See Farina*, 625 F.3d at 105-06; *Apple*, 497 F. Supp. 3d at 774 ("At the service's regulatory core is the Commission's sole jurisdiction over radio licensing pursuant to Section 301 of the 1934 Act."). Defendant also mischaracterizes Plaintiffs' central claim—that Defendant is liable as a matter of state statute or common law for failure to disclose the presence of Heavy Metals. Defendant cannot point to an explicit or implied preemption of all state law claims concerning the disclosure of such toxins and offers no statutory support for such preemption while completely ignoring the preemption carve out under NLEA. *See Cortina*, 94 F. Supp. 3d at 1187.

In short, Plaintiffs bring causes of action premised on state law claims that impose no greater requirements than the FDCA does. In the Ninth Circuit, this is no cause for preemption, and the FDA's silence on this matter is further evidence that preemption is inapplicable in this case.

## D. Plaintiffs' Claims Are Not Subject to Primary Jurisdiction

Defendant next argues that if this Court does not find Plaintiffs' claims preempted, "the lawsuit should not proceed" in light of the doctrine of primary jurisdiction because "the FDA is

currently investigating whether to implement regulations . . . regarding the presence of heavy metals and other contaminants in the U.S. food supply." MTD at 12. This is wrong for four reasons.

*First*, Defendant's section is, again, nearly verbatim—word for word including case citations—as the defendant's arguments on primary jurisdiction as asserted and rejected in *In re Plum*. *Compare* MTD 12-16 *with* Case No. 4:21-CV-913-YGR (N.D. Cal. Oct. 18, 2022), Dkt. 103, at 15-19. Accordingly, given that Defendant asserts the same arguments in the face of analogous facts as in *In re Plum*, the same outcome should apply: "[T]he motion to dismiss on primary jurisdiction grounds is DENIED. The Court need not rely on the FDA's expertise or its potential guidance on action levels to determine whether [Defendant's] alleged omissions are actionable given the allegations of the operative complaint." *In re Plum*, Case No. 4:21-CV-913-YGR, Dkt. 125, at 2.

*Second*, the Ninth Circuit has identified strict limitations for invoking primary jurisdiction that are not met here. In *Astiana v. Hain Celestial Grp., Inc.*, the Ninth Circuit determined that "the [primary jurisdiction] doctrine is reserved for a limited set of circumstances that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." 783 F. 3d 753, 760 (9th Cir. 2015); *see also Cohen*, 16 F. 4th at 1291 (finding the primary jurisdiction doctrine inapplicable in product label cases); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) (in rejecting the application of primary jurisdiction: "[t]he purpose of the doctrine is not to 'secure expert advice' from an agency 'every time a court is presented with an issue conceivably within the agency's ambit.").

Liability here turns on whether reasonable consumers were misled based on information omitted and materially misrepresented in the Product's packaging. As Defendant concedes, the FDA has studied heavy metals in various food groups, MTD at 12, and, thus, there are no issues of first impression triggering primary jurisdiction. Nor would it be efficient to dismiss or stay this action given that the FDA may or may not take further action that would impact the marketing of herbs and spices containing heavy metals, which Defendant acknowledges. *See* MTD at 1 ("The FDA is evaluating levels of heavy metals in food products and will, if necessary, issue appropriate regulations."); *see also Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015).

The relevant factors under the primary jurisdiction doctrine are: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Robles*, 913 F.3d at 910. "[T]he 'deciding factor' in determining whether the primary jurisdiction should apply is efficiency." *Reid*, 780 F.3d at 967. Defendant fails to satisfy its burden of meeting these stringent factors.

Defendant argues, relying primarily on the FDA's Constituent Update, MTD at 2, and the "FDA Letter to Industry on Chemical Hazards," MTD at 14, that the primary jurisdiction factors are met because "Congress has placed regulation of heavy metals in food within the jurisdiction of FDA and because establishment of standards for food safety and labeling require uniformity in administration." MTD at 13. However, that argument can be made as to all foods and food labels; it begins, rather than ends, the inquiry.

Defendant correctly notes that the FDA is reviewing the amounts of heavy metals in various food groups. *See* MTD at 2, 13. But that work does not discuss regulations that pertain to *disclosure* of heavy metals on product packaging. The Constituent Update Defendant cites, MTD at 2, relates to the FDA's analysis of how to reduce the levels of toxins in baby foods and in setting acceptable action levels of toxins—not the packaging of herbs and spices, as Defendant infers. Since the FDA activity in progress does not specifically relate to the packaging of herbs and spices, there is no basis to invoke primary jurisdiction on Plaintiffs' state law claims. Nor can one determine when or if the FDA will issue relevant guidelines or whether those guidelines will be mandatory.

Defendant points to nothing which suggests that the FDA is actively seeking to resolve questions about the levels of heavy metals in *herbs and spices* that may be relevant in this case. The FDA Letter, MTD at 14, is specific in nature and inapposite. It merely concerns "toxic elements in foods for babies and young children." *See* Exhibit 9 to the Morgan Declaration in Support of Motion, Dkt. No. 32-10). The Letter makes further mention that the FDA is "finalizing a comprehensive plan to further reduce levels of toxic elements in foods for babies and young children." *Id.* at 4. Thus, Defendant strains credulity to suggest that the FDA is actively addressing this issue. Indeed, as noted

above, in the face of the same arguments in *Plum*, which specifically related to heavy metals in baby food, the court denied primary jurisdiction. *See In re Plum*, Case No. 4:21-CV-913-YGR, Dkt. 125, at 2.

Moreover, this case does not involve "technical and policy considerations" or a particularly "complicated issue." *See* MTD at 12-13. It solely concerns deceptive packaging and whether reasonable consumers were misled by Defendant's concealment and misrepresentation of material facts under state law. And the Ninth Circuit has repeatedly held that courts are competent to weigh these questions, even if they arise in the context of parallel or potential regulatory activity that could be within the purview of the FDA's statutory mandate. *See Reid*, 780 F.3d at 967 (declining primary jurisdiction when "this case ultimately turns on [] whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *see also Freedline v. O Organics LLC,* 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020) (declining primary jurisdiction when "the product misrepresentation claims at the heart of this lawsuit are routinely handled by the courts, and are comfortably within the judicial domain.").

**Third**, courts have routinely denied identical primary jurisdiction arguments when faced with similar consumer deception claims. *See, e.g., Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *10 (N.D. Cal. May 15, 2013) ("[t]he FDA's expertise . . . is not necessary to determine whether the labels are misleading [and t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve"); *Souter v. Edgewell Pers. Care Co.*, 2021 WL 3892670, at *7 (S.D. Cal. June 7, 2021) (denying primary jurisdiction because whether "product labels are misleading, [] is not a technical area in which the FDA has greater technical experience than the courts"). Instead, "false advertising suits [] are squarely within the conventional experiences of judges and courts." *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *4 (N.D. Cal. July 31, 2020).

**Fourth**, Defendant's citations are unavailing. For example, in *Astiana*, 783 F.3d at 761, the FDA was actively determining "what chemical compounds may be advertised as natural on cosmetic product labels" and three other district courts had already invoked the FDA's primary jurisdiction on the question. Such factors are not present here since the FDA is not determining packaging mandates

with respect to heavy metals in herbs and spices  Likewise, in *Rosillo v. Annie's Homegrown Inc.*— which also concerned the use of "natural"—the court opted to stay the case pending completion of the FDA's regulatory process, as noted above, which is not present here.  2017 WL 5256345, *2-3 (N.D. Cal. Oct. 17, 2017).  In *Tran v. Sioux Honey Association, Cooperative*, a claim that "100% Pure" was deceptive due to the presence of glyphosate was stayed based on a concurrent Environmental Protection Agency review of the chemical and its health risks.  2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017).  In *Backus v. General Mills*, primary jurisdiction was invoked in a class action where "the case ultimately turn[ed] on the safety of the ingredient, not whether a reasonable consumer would be misled."  122 F. Supp. 3d 909, 935 (N.D. Cal. 2015).  And there, the challenged partially hydrogenated oils had previously been deemed by the FDA and food manufacturers as Generally Regarded As Safe ("GRAS").  *Id.* at 916-17.  Here, the question is whether a reasonable consumer was misled by the omissions and misrepresentations concerning the Heavy Metals at issue, and otherwise are not considered GRAS.

Similarly, in *Reese v. Odwalla, Inc.*, the claims turned on whether the classification of ingredients within a food product were "misleading" and prohibited under the FDCA, "not on whether the labels are misleading in a general legal sense."  30 F. Supp. 3d 935, 941-42 (N.D. Cal. 2014).  As the court there determined, "the issue of proper declaration of ingredients on food labels is one as to which Congress vested the FDA with comprehensive regulatory authority."  *Id.* at 941.  Since the determination of whether the label was misleading was governed entirely by compliance with federal regulations, invoking primary jurisdiction was proper.  *Id.* at 941-42.  In short, the plaintiffs were only seeking to enforce law that already existed at the time.  Here, there is no challenge to any federally governed ingredient and no such federal law exists regarding disclosure or non-disclosure of heavy metals in herbs and spices.

In *Clark v. Time Warner*, the Ninth Circuit determined that the FCC had primary jurisdiction over the question of whether a VoIP provider qualified as a "telecommunications carrier" under the Telecommunications Act of 1996.  523 F. 3d 1110, 1113-14 (9th Cir. 2008).  Notably, Congress had specifically delegated responsibility to the FCC under 47 U.S.C. § 258 and the FCC had already

developed a detailed and comprehensive regulatory scheme in response to the statute's instructions. *See id.* at 1115. No such situation exists here.

Accordingly, this Court should not invoke the primary jurisdiction doctrine.

### E. Plaintiffs Plausibly Allege Deception

Defendant argues that "Plaintiffs fail to plausibly allege deception" because "[h]eavy metals are naturally occurring in soil and water," "food crops uptake these metals naturally," and as a result, "their presence . . . 'is not likely to affect consumers' decisions in purchasing the product[.]" MTD at 16 (citations omitted). Defendant's argument, however, is impermissibly premised on a statement that is not judicially noticeable and is otherwise taken out of context from an article even further removed from the facts of this case.

First, Defendant cites to an article, Exhibit 10, concerning baby food, not herbs and spices, that is not properly subject to judicial notice, as Plaintiffs do not rely on the article and it contains facts that are reasonably disputed. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) (determining that the doctrine of incorporation by reference only applies on a Rule 12(b)(6) motion if the contents are actually alleged in the complaint); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court cannot take judicial notice of disputed facts contained in such public records."); *Anderson v. Ghaly*, 2020 WL 225343, at *1 (N.D. Cal. Jan. 15, 2020) ("Further, 'just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

Second, Defendant's argument rests on the fallacy of division as it assumes that because heavy metals may occur naturally in foods and water, especially those contaminated by pesticides and industrial operations, that the source of its herbs and spices must also be naturally contaminated. However, absent discovery, there is no way to make this determination. In fact, even the article Defendant cites underlines this point: "Parents Can Make Five Safer Baby Food Choices For 80 Percent Less Toxic Metal Residue." Ex. 10, at 6. And Defendant's argument is further undermined by the fact that Consumer Reports determined "'it is possible for herbs and spice companies to limit

heavy metals in their products' as '[a]bout two-thirds of the spices tested did not have any concerning levels of heavy metals.'" CAC, ¶ 32.

Third, even if it were true that (1) heavy metals are "ubiquitous" and (2) that consumers are aware of such a fact, this mere fact does not render Plaintiffs' claims any less plausible. *See, e.g., Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (allegedly "widely known" risk of overconsuming sugar did not render misrepresentation claims implausible). Indeed, that notion is belied by Plaintiffs' consumer survey, which determined that 94% of approximately 500 consumers answered that the presence or risk of even a small amount of Heavy Metals in the spices would be either important or very important to their purchasing decisions. CAC, ¶ 39. Defendant's argument is also belied by several other of Plaintiffs' allegations. *See id.*, ¶ 4 ("No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals); ¶ 42 ("Plaintiffs and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals."). These allegations must be accepted as true. *See Pagendarm v. Life Ins. Co. of N. Am.*, 2017 WL 6405617, at *1 (N.D. Cal. Dec. 15, 2017) (Davila, J.) ("All well-pleaded facts in the complaint are accepted as true for purposes of adjudicating [a motion to dismiss].").

As in *Zeiger*, which involved heavy metals in dog food, "Plaintiffs have provided an actionable theory why the Products are unsafe and why the labels are misleading." 304 F. Supp. at 852; *see also Watson v. Solid Gold Pet, LLC*, 2019 WL 3308766, at *5 (C.D. Cal. Feb. 22, 2019) (allegations "that the presence of Heavy Metals [] is a material fact for a reasonable consumer when purchasing the products, that she would not have purchased the products or paid a premium if she had known about the contaminants, and that she had no way of acquiring this information on her own" were sufficient). This is all that Rule 12(b)(6) requires.

Thus, Defendant's argument should be rejected.

**F.      Plaintiffs' Claims of Affirmative Misrepresentation Are Sufficiently Pleaded**

Defendant next contends that "Plaintiffs . . . fail to identify a single, actionable affirmative misrepresentation" instead opting for "non-actionable puffery." MTD at 17. That is wrong.

To determine whether representations are puffery or not, the Court must consider the representations of the defendant in the context of the plaintiffs' theory of the case. *See In re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at *18 (N.D. Cal. Oct. 4, 2019) ("'where the plaintiffs were proceeding on a theory that the defendant's [] food contained unsafe levels of lead, arsenic, and BPA, certain health representations could not be considered puffery.'"); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1077 (N.D. Cal. 2014) (Koh, J.) (quoting *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008)) (determining that "even puffery may 'contribute[] . . . to the deceptive context . . . as a whole."). Here, Defendant's marketing tagline on the front label of the Products of "The Taste You Trust" is materially deceptive, false and misleading in light of the presence (or risk) of Heavy Metals in the Products. Reasonable consumers would not "trust" a product that contains (or risks containing) toxic Heavy Metals, a fact nowhere disclosed on the label. CAC, ¶ 66. This is not puffery but instead a material actionable misstatement.

Indeed, Plaintiffs allege that Defendant knows that such a statement is material. "Defendant's label misrepresentations and omissions at issue in this Complaint are put in context by its website, where Defendant prominently touts the safety and quality of its Products." CAC, ¶ 53. For example, Defendant claims that "Consumers and customers rely on McCormick's procurement and processing standards . . . this reputation [has] won us new business and helped us grow our sales." *Id.* ¶ 63. Defendant further claims that "[t]o ensure the integrity of our products, we have developed and deployed a long-standing Quality Assurance Program to manage and control our global supply chain" and that "[w]e conduct millions of product analyses each year by testing for contaminants . . . and more to ensure the safety and quality of our products." *Id.*, ¶ 56. Defendant also claims that "The Taste You Trust" is a part of its "[r]elentless focus on quality from source to table" and its "[u]nmatched track record in safety and integrity." Id., ¶ 58. In fact, "so important is Defendant's tagline . . . to Defendant's business, that is has gone as far as to trademark that phrase." *Id.*, ¶ 59.

In this way, Plaintiffs' allegations mirror those involving similar representations in analogous cases. In *Grossman v. Schell & Kampeter, Inc.*, for example, which also involved affirmative misrepresentations related to foods tainted by Heavy Metals, the court held that the defendant's claims that its products were "nutritious" and "safe" were misstatements sufficient to support claims

sounding in fraud.  2019 WL 1298997, at *4 (E.D. Cal. Mar. 21, 2019).  In *Big Heart*, the court similarly determined that the phrase "100% Complete and Balanced Nutrition" was actionable in light of the presence of heavy metals.  2019 WL 8266869, at *18.  In *Zeiger*, the court likewise determined that "undoubtedly safe," "safe" and "pure" were actionable because these pertained to matters of "safety and quality assurance."  304 F. Supp. 3d at 851; *see also Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 980832, at *5 (N.D. Ill. Mar. 31, 2022) ("biologically appropriate" is actionable in heavy metals case).  Accordingly, Defendant's argument should be rejected.[2]

### G.     Plaintiffs Can Pursue Their Equitable Claims In Federal Court

Defendant next argues that "[w]here monetary relief is sufficient, a plaintiff is foreclosed from obtaining equitable relief under state law."  MTD at 18.  Defendant's argument, which relies principally on *Sonner v. Premier Nutrition Corp.*, is overstated.  *See id.* (citing 971 F.3d 834, 844 (9th Cir. 2020)).

As Judge Gilliam recently determined, "[t]he Court is unpersuaded that *Sonner* compels dismissal of Plaintiffs' equitable claims at the pleading stage.  Putting aside *Sonner*'s unique procedural posture, the case did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories."  *Brown v. Natures Path Foods, Inc.*, 2022 WL 717816, at *6 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (citing *Elgindy v AGA Serv. Co.*, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021)).  Indeed, this determination is consistent with a number of Courts in this District that have recently considered the question.  *See Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2022 WL 844152, at *7 (N.D. Cal. Mar. 22, 2022)

---

[2] Aside from quoting the standard for Rule 9(b), MTD at 17, Defendant never actually argues that Plaintiffs failed to meet this standard.  But Plaintiffs do meet the standard.  *See* CAC, ¶¶ 71-76 (outlining who, what, when, where, how, why).  Nothing more is required.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1009 (9th Cir. 2020) (outlining the standard); *Clancy v. The Bromley Tea Company*, 308 F.R.D. 564, 575 (N.D. Cal. 2013) (applying the standard); *Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713, 722 (E.D. Cal. 2020) (applying the standard).

("Previously, the Court held that a Plaintiff must sufficiently allege an inadequate remedy at law to state a claim under the UCL and that failure to do so as the pleading stage could warrant dismissal. But, in its most recent examination of the issue in *Nacarino v. Chobani, LLC*, the Court joined courts that have held that *Sonner* does not preclude plaintiffs from pleading equitable remedies in the alternative[.]") (citations omitted); *Junhan Jeong v. Nexo Financial LLC, et al.*, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) (same).

Accordingly, if the Court determines that Plaintiffs have inadequately pled an alternative theory for their claims for equitable relief, Plaintiffs respectfully request leave to amend to do so. *See, e.g., Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("If, later in the case, the plaintiffs conclude that they do lack adequate remedies at law, they should move for leave to amend to re-plead the UCL claim. For the reasons explained above, it would not be surprising for a more developed record to reveal the inadequacy of legal remedies that is less apparent today. I would be inclined to grant leave to amend if the plaintiffs can make this allegation[.]").

Here, legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Moreover, damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Further, damages and restitution are not in the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. *See Elgindy*, 2021 WL 1176535 (enumerating differences between law and equity); *Anderson v. Apple, Inc.*, No. 3:20-cv-02328-WHO (N.D. Cal. Dec. 16, 2020), ECF No. 54, ¶¶ 459, 480.

With regards to Plaintiffs' claims for injunctive relief, Plaintiffs have pleaded these claims in line with this Court's precedent. In *Turner v. Apple, Inc.*, for example, this Court determined that "Plaintiff must show that monetary damages for the past harm caused . . . are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at . . . . An

injunction would remedy this risk by ensuring that consumers, including Plaintiff, could rely on Defendant's future representations[.]" 2022 WL 445755, at *3 (N.D. Cal. Feb. 14, 2022).

Here, Plaintiffs allege that they "desire to purchase the Product from Defendant. However, [they are] unable to determine if the Product[s are] actually safe. [They] understand[] that the composition of the Product[s] may change over time. But as long as Defendant continues to market the Product[s] as safe, [they] will be unable to make informed decisions about whether to purchase Defendant's Product[s] and will be unable to evaluate the different prices between Defendant's Product[s] and competitor's Products. [Plaintiffs are] further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product[s] marketed, labeled, packaged and sold as [] quality and healthy spice[s] [are], in fact, [] safe and healthy spice[s]." CAC, ¶¶ 6, 8, 10, 12, 14, 16.

These allegations are also consistent with the decisions of other courts in this District. *See Zeiger*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("An injunction would ensure that [the plaintiff] (and other consumers) can rely on WellPet's representations in the future."); *Brown v. Natures Path Foods, Inc.*, 2022 WL 717816, at *5 (N.D. Cal. Mar. 10, 2022) ("Plaintiffs allege that, absent an injunction prohibiting Nature's Path from mislabeling, they will be 'unable to rely on Defendant's labels when shopping for protein products in the future.' With these allegations, Plaintiffs have plausibly pled a threat of future harm by alleging that they will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Products although they would like to."). Therefore, Defendant's argument should be rejected.

### H. Plaintiffs Have Sufficiently Pleaded Their Claims For Breach Of Implied Warranty

Defendant next argues that Plaintiffs have failed to sufficiently plead breach of the implied warranty of merchantability because they do not allege that "the challenged product is defective or not fit for the ordinary purpose for which the product is used." MTD at 19-20 (citations omitted). But this argument ignores well-settled law that permits implied warranty claims where plaintiffs allege that products are unsafe for consumption and/or contaminated with harmful substances. *See, e.g., Kirchenberg v. Ainsworth*, 2022 U.S. Dist. LEXIS 10171, at *14-15 (E.D. Cal. Jan. 18, 2022)

("In cases involving human food . . . a party can plead that a product violates the implied warranty of merchantability by alleging that the product was unsafe for consumption, contaminated, or contained foreign objects.") (citations omitted); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (contamination is a basis for implied warranty claim).

Consistent with this precedent, Plaintiffs have alleged that the Products, by nature of "contain[ing] (or risk[ing] containing) toxic Heavy Metals," Compl., ¶ 136, have been thereby "rendered . . . unsafe for human consumption." *Id.*, ¶ 52. *See also, e.g., id.*, ¶¶ 23-25 (alleging any level of consumption of lead, arsenic and cadmium is unsafe); *id.*, ¶¶ 26-34 (discussing Consumer Reports' analyses of Heavy Metals in spice products, including Defendant's). The Complaint is also replete with allegations that Defendant's Products include undisclosed contaminant Heavy Metals that are unfit for human consumption based on the health risks. *See generally id.* Thus, the Complaint adequately alleges that Defendant's Products are unfit for their ordinary use. *See Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*, 2016 U.S. Dist. LEXIS 186305, at *24 (D. Or. Dec. 8, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 64615 (D. Or. Apr. 26, 2017) ("a reasonable jury could find that ginseng's ordinary purposes is to be purchased for consumption … and that DDE contamination therefore rendered the product unfit for this purpose.").

## I. Plaintiffs Have Sufficiently Pleaded Their Claims For Unjust Enrichment

Defendant next argues that "'unjust enrichment' is not an independent claim for relief under California law." MTD at 20. Defendant relies on out of circuit and out of date caselaw from 2012 and prior for this assertion. Since that time, however, the Ninth Circuit has noted that "the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment." *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also Trazo v. Nestle USA, Inc.*, 113 F.Supp.3d 1047, 1049 (N.D. Cal. 2015) ("To the extent the district courts concluded that the [claim] was nonsensical because it was duplicative or superfluous to [Plaintiffs'] other claims, this [was] not grounds for dismissal."). Thus, "[u]nder California law, a cause of action for unjust enrichment may be pled as an independent claim" so long as there is "an actionable wrong to furnish a basis for relief." *Soo v. Lorex Corp.*, 2020 WL 5408117, at *8 (N.D. Cal. Sept. 9, 2020); see also *Kochar, et al. v. Walmart, Inc.*, No. 3:21-cv-02343-JD, ECF No. 51, p. 1 (N.D. Cal. Filed April 25,

2022) ("The factual allegations in the complaint amply satisfy Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure. This is true for the unjust enrichment and quasi-contract claim, which the Court declines to dismiss at the pleading stage.").

To that end, Plaintiffs have sufficiently alleged claims for unjust enrichment and money had and received. Plaintiffs allege that "Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the proposed Class members' purchase of the Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant made misrepresentations and omitted that the Products contained (or risked containing) toxic Heavy Metals. This caused injuries to Plaintiffs and members of the proposed Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known." CAC, ¶ 165. Plaintiffs further allege that Defendant "accepted and retained" these benefits and it would be "unjust for Defendant to retain the benefit." *Id.*, ¶¶ 166-67. Accordingly, Plaintiffs have stated a claim for unjust enrichment consistent with California law.

Still, Defendant argues that Plaintiffs' unjust enrichment claim under Washington law fails because Plaintiffs allege appreciation or knowledge by Defendant and do not allege facts showing that it is inequitable for Defendant to retain payment. MTD at 21. However, as the previous paragraph demonstrates, that argument is wrong. At this stage of the litigation, Plaintiffs have alleged sufficient facts to support their unjust enrichment claim. *See Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271 (W.D. Wash. 2011) (finding unjust enrichment claim adequately plead where "Plaintiffs allege that [Defendant] has obtained significant revenues, … that in all fairness should be returned to plaintiffs.").

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. However, if the Court determines that the pleadings are deficient, Plaintiffs request leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).[3]

---

[3] Plaintiffs concede their claims for negligent failure to warn.

Dated: June 30, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___/s/ *Sean L. Litteral*___
Sean L. Litteral

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Jonathan Shub (SBN 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Gary E. Mason*
Danielle L. Perry (State Bar No. 292120)
**MASON LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@masonllp.com
dperry@masonllp.com

Lori G. Feldman*
**GEORGE GESTEN MCDONALD PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Tel: 917-983-9321
lfeldman@4-justice.com
eservice@4-justice.com

David J. George*
Brittany L. Brown*
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Tel: (561) 232-6002
Fax: (888) 421-4173
dgeorge@4-justice.com
bbrown@4-justice.com
eservice@4-justice.com

Michael Liskow (State Bar No. 243899)

**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Tel: 212-899-1765
Fax: 332-206-2073
mliskow@calcaterrapollack.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Proposed Classes*