**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

  Haihang Wang (Bar No. 339727)
  haihangwang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

*Attorneys for Defendant*
McCORMICK & COMPANY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE COURTHOUSE

| | |
|---|---|
| In re: McCORMICK & COMPANY LITIGATION | MASTER FILE NO. 5:22-CV-00349-EJD<br><br>**DEFENDANT McCORMICK & COMPANY'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>The Hon. Edward J. Davila<br><br>Date: October 20, 2022<br>Time: 9:00 a.m.<br>Courtroom 4, 5th Floor |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................1

    I.      Plaintiffs Lack Standing to Pursue Their Claims ...........................................1

          A.      Plaintiffs Lack Article III Standing Because They Allege No Injury in Fact ..............................................................................................1

          B.      Plaintiffs Lack Standing to Seek Injunctive Relief ........................................3

    II.     Plaintiffs' Claims Are Preempted ................................................................5

    III.    Plaintiffs' Claims Fall Under the FDA's Primary Jurisdiction ...................7

    IV.    Plaintiffs Do Not Plausibly Allege Deception .........................................10

    V.     The Affirmative Misrepresentation Claims Should Be Dismissed ...........10

    VI.    Plaintiffs Cannot Pursue Equitable Claims in Federal Court ..................11

    VII.   Plaintiffs' Breach of Implied Warranty Claims Fail ...............................13

    VIII.  The Court Should Dismiss Plaintiffs' Unjust Enrichment Claims...........14

    IX.    Plaintiffs Concede Dismissal of Their Failure to Warn Claim ...............15

CONCLUSION ......................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*A.J. Fistes Corp. v. GDL Best Contractors, Inc.*,
 38 Cal. App. 5th 677 (2019) ................................................................................. 18

*Abuelhawa v. Santa Clara University*,
 529 F. Supp. 3d 1059 (N.D. Cal. 2021) ........................................................... 18, 19

*In re Bang Energy Drink Mktg. Litig.*,
 No. 18-CV-05758-JST, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ......................... 5

*Bank of New York Mellon v. Citibank, N.A.*,
 8 Cal. App. 5th 935 (2017) .................................................................................. 19

*Barnes v. Unilever United States Inc.*,
 No. 1:21-cv-06191, Dkt. No. 58 (N.D. Ill. July 4, 2022) ........................................ 2

*In re Big Heart Pet Brands Litig.*,
 No. 18-CV-00861-JSW, 2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ....................... 13

*Brown v. Van's Int'l Foods, Inc.*,
 No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022) ..................... 5

*Bruton v. Gerber Products Co.*,
 703 F. App'x 468 (9th Cir. 2017) ......................................................................... 17

*Charmes Wines Ltd. v. Sabate USA, Inc.*,
 No. C-01-4203 MMC, 2005 WL 1528703 (N.D. Cal. June 29, 2005) ....................... 16

*Cimoli v. Alacer Corp.*,
 546 F. Supp. 3d 897 (N.D. Cal. 2021) .................................................................... 6

*Coffelt v. Kroger Co.*,
 No. ED-CV-161471-JGB(KKX), 2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ............. 3

*Davidson v. Kimberly-Clark Corp.*,
 889 F.3d 956 (9th Cir. 2018) ......................................................................... 3, 4, 6

*De Havilland v. FX Networks, LLC*,
 21 Cal. App. 5th 845 (2018) ................................................................................. 19

*Doe v. SuccessfulMatch.com*,
 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ................................................................... 13

*Elgindy v. AGA Serv. Co.*,
 No. 20-CV-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ....................... 5

*Ferrari v. Nat. Partners, Inc.*,
 No. 15-CV-04787-LHK, 2016 WL 4440242 (N.D. Cal. Aug. 23, 2016) ..................... 17

*In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-cv-00269-MSN-JFA, Dkt. No. 133 at 14 (E.D. Va. July 8, 2022) ...................... 7

*Grossman v. Schell & Kampeter, Inc.*,
No. 2:18-CV-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019) .......... 13, 14

*Grundstrom v. Wilco Life Ins. Co.*,
No. 20-CV-03445-MMC, 2022 WL 2390992 (N.D. Cal. July 1, 2022) ........................... 15

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) ................................................................................ 7, 18, 19

*Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*,
61 Cal. 4th 988 (2015) ............................................................................................................ 18

*Herrington v. Johnson & Johnson Consumer Cos.*,
No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................. 2, 3

*Hooked Media Grp., Inc. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ................................................................................................. 19

*Howe v. Cnty. of Mendocino*,
No. 21-cv-00935-RMI, 2021 WL 4061663 (N.D. Cal. Sept. 7, 2021) ............................... 4

*Ingalls v. Spotify USA, Inc.*,
No. C 16-03533 WHA, 2017 WL 3021037 (N.D. Cal. July 17, 2017) ............................... 6

*Jackson v. General Mills, Inc.*,
No. 18-cv-2634-LAB(BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ..................... 6

*John Muir Health v. Glob. Excel Mgmt.*,
No. C-14-04226 DMR, 2014 WL 6657656 (N.D. Cal. Nov. 21, 2014) ............................. 9

*Keithly v. Intelius Inc.*,
764 F. Supp. 2d 1257 (W.D. Wash. 2011) ......................................................................... 19

*Khasin v. R.C. Bigelow, Inc.*,
No. 12-cv-02204-WHO, 2015 WL 5569161 (N.D. Cal. Sept. 21, 2015) ........................ 18

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*,
No. 2:20-CV-00690-KJM-DMC, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022) ............... 16

*Kochar v. Walmart, Inc.*,
No. 3:21-cv-02343-JD, ECF No. 51 at 1 (N.D. Cal. Apr. 25, 2022) .................................. 2

*Kosta v. Del Monte Corp.*,
No. 12-CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ........................ 11

*Krommenhock v. Post Foods, LLC*,
255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................................................ 12

*In re MacBook Keyboard Litig.*,
No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................. 14, 15

-iii-

*Maisel v. S.C. Johnson & Son, Inc.*,
    No. 21-CV-00413-TSH, 2021 WL 1788397 (N.D. Cal. May 5, 2021) ............................. 5

*Medeiros v. Coca-Cola Bottling Co. of Turlock*,
    57 Cal. App. 2d 707 (1943) ........................................................................................ 16

*Milan v. Clif Bar & Co.*,
    489 F. Supp. 3d 1004 (N.D. Cal. 2020) ........................................................................ 5

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ............................. 5

*Newcal Indus., Inc. v. IKON Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .................................................................................. 14

*Ocampo v. Apple Inc.*,
    No. 5:20-CV-05857-EJD, 2022 WL 767614 (N.D. Cal. Mar. 14, 2022) ......................... 17

*Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*,
    No. 1:15-CV-00407-CL, 2016 WL 11187249 (D. Or. Dec. 8, 2016) ............................. 17

*In re Plum Baby Food Litig.*,
    No. 21-CV-913-YGR, Dkt. No. 125 at 2 (N.D. Cal. Jan. 12, 2022) ............................. 6, 7

*Prescott v. Bayer HealthCare LLC*,
    No. 20-CV-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020) ....................... 11, 12

*Rahman v. Mott's LLP*,
    No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ............................. 6, 9

*Shaw v. Delta Air Lines Inc.*,
    463 U.S. 85 (1983) ...................................................................................................... 8

*Sonner v. Premier Nutrition*,
    971 F.3d 834 (9th Cir. 2020) .............................................................................. 14, 15

*Souter v. Edgewell Pers. Care Co.*,
    542 F. Supp. 3d 1083 (S.D. Cal. 2021) ........................................................................ 11

*Syntek Semiconductor Co. v. Microchip Tech.*,
    307 F.3d 775 (9th Cir. 2002) ................................................................................... 9, 10

*Tran v. Sioux Honey Ass'n, Coop.*,
    No. 8:17-cv-110-JLS-JCGx, 2017 WL 5587276 (C.D. Cal. Oct. 11, 2017) ..................... 10

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
    No. 17-CV-6788-FPG, 2018 WL 4681799 (W.D.N.Y. Sept. 28, 2018) ........................... 19

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) .......................................................................... 16

*Vizcarra v. Unilever United States, Inc.*,
    No. 4:20-CV-02777-YGR, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ......................... 5

-iv-

*Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*,
   No. C14-10 RAJ, 2014 WL 2154381 (W.D. Wash. May 22, 2014) ........................... 19, 20

*Williams v. Amazon.com Servs. LLC*,
   No. 22-CV-01892-VC, 2022 WL 1769124 (N.D. Cal. June 1, 2022) ............................. 15

*Zarinebaf v. Champion Petfoods USA Inc.*,
   No. 18 C 6951, 2022 WL 980832 (N.D. Ill. Mar. 31, 2022)........................................... 14

*Zeiger v.WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) .................................................................................. 1

**STATUTORY AUTHORITIES**

21 U.S.C. § 342 ........................................................................................................................... 6

21 U.S.C. § 346 ........................................................................................................................... 6

21 U.S.C. § 350l .......................................................................................................................... 6

**RULES AND REGULATIONS**

21 C.F.R. § 7.40(b) ..................................................................................................................... 6

21 C.F.R. § 165.110 .................................................................................................................... 6

## PRELIMINARY STATEMENT

McCormick's motion to dismiss poses a simple question: can plaintiffs pursue a panoply of legal and equitable remedies based on allegations that they purchased food products that may (or may not) contain unspecified amounts of heavy metals, which are widely-known as ubiquitous in the environment and food supply, when the regulation of heavy metals in food is within the expert regulatory purview of the FDA, and plaintiffs have alleged no actual injury? Whether examined from the perspective of Article III standing, preemption, abstention in favor of the FDA's primary jurisdiction, or plaintiffs' inability to plead deception or an entitlement to equitable remedies, the answer is a resounding "no." Plaintiffs' opposition does nothing to change that result, and plaintiffs' complaint should be dismissed in its entirety.

## ARGUMENT

## I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS

### A. Plaintiffs Lack Article III Standing Because They Allege No Injury in Fact

As explained in McCormick's motion to dismiss, plaintiffs lack standing because they fail to allege any actual injury. Plaintiffs offer five unsupportable and unavailing arguments in response:

*First*, even crediting the complaint's allegations, the *most* plaintiffs allege is buying spice and herb products that *may* (or may not) have contained (unspecified) amounts of heavy metals, *see* Compl. ¶¶ 5, 7, 9, 11, 13, 15, 17, which *may* cause injury (but have not done so here). Stringing together "maybes" does not articulate a cognizable injury, and distinguishes this case from those cited by plaintiffs where the alleged contamination was not, as here, purely hypothetical. *Compare id.* (McCormick products "contain[ed] (or ha[d] a risk of containing)" heavy metals) *with Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 842 (N.D. Cal. 2018) (dog food contained "material and significant levels of arsenic and lead" and Bisphenol A).[1]

*Second*, plaintiffs overstate McCormick's position in arguing it would require plaintiffs to

---

[1] Plaintiffs argue that "the Northern District of California has already determined that plaintiffs who purchase food products suffer an injury requisite for Article III when those foods contain heavy metals," Opp. at 2, based on a single-page, unpublished order denying a motion to dismiss without significant analysis. *Kochar v. Walmart, Inc.*, No. 3:21-cv-02343-JD, ECF No. 51 at 1 (N.D. Cal. Apr. 25, 2022). No such sweeping, district-wide, and definitive rule can be extrapolated from *Kochar*.

conduct individual product testing to plead standing.  Opp. at 2-3.  McCormick makes no such contention.[2]  What plaintiffs *are* required to do, however, is allege something more than the *possibility* of harm from a product that merely *may* have the characteristics they challenge.  Here, plaintiffs case is premised *entirely* on a *Consumer Reports* article that (i) is deeply-flawed, *see* Mot. at 3-4; (ii) in the words of its authors, "cannot be used to draw definitive conclusions about brands," Morgan Decl. Ex. 2 at 11; and (iii) reports (again, based on its flawed methodology) only that the "spot-check[ed]" samples of McCormick spices at issue pose "some concern" (no McCormick products were in the categories of "moderate" or "high" concern).  *Id.*  At most, plaintiffs describe a hypothetical economic injury, which does not suffice to confer Article III standing.  *See* Mot. at 5-7.

*Third*, in attempting to distinguish but a few of McCormick's cited authorities finding a lack of standing on similarly speculative allegations, plaintiffs fail to reckon with the fundamental defect with their "harm" allegations, *i.e.*, that there are none.  For example, just as in *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, *3 (N.D. Cal. Sept. 1, 2010), where the plaintiffs alleged that carcinogens in the cosmetics at issue "may" be harmful to humans but pleaded neither the amounts of substances in the defendants' products that caused harm or created a credible or substantial risk of harm, plaintiffs here have at most pleaded that the McCormick products they purchased *may* contain heavy metals that *may* cause injuries in unspecified amounts.  Such allegations are "too attenuated" and "not sufficiently imminent" to confer standing.  *Id.*

*Finally*, as to plaintiffs' fourth and fifth arguments, plaintiffs' cited authorities and purported distinctions of cases cited by McCormick do not compel any different result.  None of plaintiffs' cited cases involved allegations as attenuated as those here, where plaintiffs complain that the McCormick spice and herb products, consumed in much smaller amounts than baby food or dog food, *may* contain heavy metals in unspecified quantities based solely on an article reporting certain McCormick spices pose "some [but not "moderate" or "high"] concern."[3]

---

[2]  Accordingly, plaintiffs' supplemental citation to the out-of-circuit *Barnes v. Unilever United States Inc.*, No. 1:21-cv-06191, Dkt. No. 58 (N.D. Ill. July 4, 2022), for the proposition that allegations based on third party-testing were sufficient to survive a motion to dismiss, Dkt. No. 41 at 1, is immaterial.

[3]  The plaintiffs in plaintiffs' cited cases could *at least* plausibly allege that the products they purchased were contaminated with material amounts of unsafe contaminants and, in some cases, unfit

## B. Plaintiffs Lack Standing to Seek Injunctive Relief

As demonstrated in McCormick's motion, plaintiffs additionally lack standing to seek injunctive relief because they fail to allege "actual and imminent" and "certainly impending" threatened or future injury. *See* Mot. at 7-9 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967-68 (9th Cir. 2018)). To be sure, *some* cases acknowledge a plaintiff, having learned the true facts about an allegedly deceptively-marketed product, *may* seek injunctive relief based on the threat of future deception—but this case does not fit within the reasoning of those decisions.

Here, there is a fatal flaw in plaintiffs' pleading, which their opposition entirely ignores: although plaintiffs allege they would be willing to purchase McCormick's spices again in the future if they could be certain that they were "safe," *see, e.g.*, Compl. ¶¶ 6, 8, 10, 12, 14, 16, 18, they *also* allege that (i) heavy metals cannot be removed entirely from the food supply, including spices and herbs, *see, e.g.*, Compl. ¶¶26-34; *id.* ¶ 32 (quoting *Consumer Reports* article as noting presence of heavy metals in herbs and spices can be "limit[ed]" (not eliminated)); and (ii) that any amount of heavy metals is, in their view, "unsafe." *E.g.*, *id.* ¶¶ 3, 23.[4] Accordingly, even if McCormick were able to reduce any alleged heavy metal content in their products in the future *or* disclosed alleged heavy metal contents on their labeling, plaintiffs' own allegations confirm they would not buy them.

In *Davidson*, the Court of Appeals explained why "a previously deceived consumer *may* have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase": (i) "*[i]n some cases*, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; and (ii) "[i]n other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future . . . as she may reasonably, but

---

for consumption. *See, e.g.*, *Zeiger*, 304 F. Supp. 3d at 842 (dog food contained "material and significant levels of arsenic and lead"); *Coffelt v. Kroger Co.*, No. ED-CV-161471-JGB (KKX), 2017 WL 10543343, at *2, 5 (C.D. Cal. Jan. 27, 2017) (listeria-contaminated vegetables were "adulterated and not fit for sale or human consumption").

[4] "Courts may . . .disregard allegations in a complaint if they are contradicted by other allegations in a complaint" on a motion to dismiss. *Howe v. Cnty. of Mendocino*, No. 21-cv-00935-RMI, 2021 WL 4061663, at *9 (N.D. Cal. Sept. 7, 2021) (citation omitted).

incorrectly, assume the product was improved." 839 F.3d at 969-70 (emphasis added).

Such plausible allegations of future harm are not present here, where plaintiffs have alleged both a condition precedent to potentially purchasing McCormick's spices again in the future (assurance they are free of heavy metals) *and* that this condition precedent is an impossibility (by alleging knowledge that the food supply, including spices and herbs, cannot be rid of heavy metals). Accordingly, plaintiffs have failed to plead anything more than a "conjectural or hypothetical" threat of future harm, *id.* (internal quotations omitted), and thus have no standing to pursue injunctive relief.

None of plaintiffs' cited authorities finding standing for injunctive relief, Opp. at 8, involved an alleged condition that could not be remedied to the plaintiffs' liking—either by reformulation or modified disclosures—per plaintiffs' own allegations (as here). *See, e.g.*, *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *4 (N.D. Cal. Aug. 6, 2021) (plaintiff would purchase lip care products if they were modified to exclude "non-natural, synthetic, artificial and/or highly processed ingredients"); *In re Bang Energy Drink Mktg. Litig.*, No. 18-CV-05758-JST, 2020 WL 4458916, at *11 (N.D. Cal. Feb. 6, 2020) (plaintiffs would purchase energy drink if modified to contain sufficient quantities of ingredients to provide associated benefits); *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) (plaintiff "would likely purchase the products again . . . if they were reformulated to contain the amount of protein represented on the labels").[5]

Moreover, the plaintiffs in those cases were (to varying degrees) dependent on defendants' disclosures to understand the nature of the product or service they might consume in the future. *E.g.*,

---

[5] *See also Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *6 (N.D. Cal. May 5, 2021) (plaintiff alleged desire to purchase cleaners again if representations that they were plant-based and natural were true); *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) (plaintiffs alleged they would desire to insure future event tickets and airfare purchases if able to determine if allegedly hidden or unlawful fees were added); *Vizcarra v. Unilever United States, Inc.*, No. 4:20-CV-02777-YGR, 2020 WL 4016810, at *7 (N.D. Cal. July 16, 2020) (plaintiff alleged she would purchase ice cream again "if she could be sure that the product was *truly* a 'natural vanilla' ice cream"); *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1006 (N.D. Cal. 2020) (plaintiffs alleged they "would purchase the challenged Clif Products in the future if they were in fact healthy" and "if they could trust that the health and wellness claims were not false or misleading"); *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2017 WL 3021037, at *7 (N.D. Cal. July 17, 2017) (plaintiff did not categorically deny interest in future subscriptions with modifications).

*Moore*, 2021 WL 3524047, at *4 (plaintiff not necessarily able to assess whether listed ingredients in future formulations were "all natural" and was therefore dependent on disclosures). The same cannot be said here, where plaintiffs complain that any heavy metal contamination is unsafe but also plead knowledge of its ubiquity and immutability in the food supply, including in herbs and spices, thus refuting any claim they desire to purchase McCormick's products again, regardless of the labeling.[6]

## II.   PLAINTIFFS' CLAIMS ARE PREEMPTED

In opposing preemption based on the FDA's role to establish a uniform, national policy for food safety, plaintiffs first point to a sister court's unpublished decision in *In re Plum Baby Food Litigation*, No. 21-CV-913-YGR, Dkt. No. 125 at 2 (N.D. Cal. Jan. 12, 2022), contending it should control the outcome here. Opp. at 9-10. In *Plum*, the district court offered a one-sentence rationale for rejecting the defendant's preemption argument: "Plum fails to articulate any specific federal law or regulation with which plaintiffs' state law claims purportedly conflict." No. 21-CV-913, Dkt. No. 125 at 2. Given the brevity of the analysis in *Plum*, it is not clear *why* the court found that the federal statutory and regulatory regime placing heavy metals in the food supply, and disclosures regarding the same, squarely in FDA's purview, *see* Mot. at 1-2, 9-12. did not result in preemption. In any event, *Plum* is not binding on this Court. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (absent binding authority from higher courts, "courts may forge a different path than suggested by prior authorities that have considered the issue").[7]

---

[6]  Plaintiffs cannot meaningfully distinguish *Jackson v. General Mills, Inc.*, No. 18-cv-2634-LAB (BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020), *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021), or *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018). *See* Opp. at 9. Contrary to plaintiffs' suggestion, the *Jackson* court expressly applied the Ninth Circuit's holding in *Davidson* to find the plaintiff could not be deceived in the future because the plaintiff's future purchasing decisions did not require her to evaluate product labels (just as here, plaintiffs concede the ubiquity of heavy metals, regardless of labeling). 2020 WL 5106652, at *5 ("[W]here a plaintiff learns information . . . that enables her to evaluate product claims and make appropriate purchasing decisions going forward, an injunction would serve no meaningful purpose as to that plaintiff."). In *Cimoli*, the court found no risk of future deception where the plaintiff had the relevant knowledge to make informed purchases going forward (as here). 546 F. Supp. 3d at 906. Finally, in *Rahman*, the court distinguished *Davidson* on the basis that, armed with the knowledge alleged in the complaint, the plaintiff could make future purchasing decisions without reliance on further explication on the product labels. 2018 WL 4585024, at *3. The same holds true here.

[7]  Indeed, other defendants continue to raise, and courts across the country continue to evaluate,

-5-

In punting to *Plum*, plaintiffs strategically ignore the federal laws and regulations that direct the FDA to regulate food safety, including with respect to heavy metals in the food supply. *See* Mot. at 1-2, 9-12 (citing, *e.g.*, 21 U.S.C. § 342(a)(1) (excluding from definition of "adulterated" foods substances that are not added if quantity does not render them injurious to health); 21 U.S.C. § 346 (directing promulgation of regulations regarding quantities of deleterious substances in food based on degree substance is required or cannot be avoided and ways consumer may be affected); 21 U.S.C. § 350*l* (giving FDA authority to order recalls of unsafe food); 21 C.F.R. § 165.110 (regulating levels of arsenic, cadmium, and mercury in bottled water)); *see also* Morgan Decl. Exs. 5-6 (recent FDA guidance on arsenic in infant cereals and lead in juice); *id.* Ex. 7 (FDA denial of petition from state Attorneys General to set states' preferred action levels for heavy metals in baby food).

Here, the presence of heavy metals (and other unavoidable substances in food) was specifically contemplated by the FDCA, which empowers the FDA to set action levels and to regulate adulterants to ensure food safety. 21 U.S.C. §§ 342, 346. Moreover, unlike the disclosure relief sought by plaintiffs, the FDA has made clear that it is "unwilling to require a warning statement [on a food label] in the absence of clear evidence of a hazard," and instead applies a risk-based approach in its assessments. *See* Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592-01, 28615 (June 21, 1991). On the other hand, when the presence of a harmful substance in food rises to the level of an unacceptable risk to consumers, the FDA may declare such a food "adulterated" and often coordinates a recall either through a warning or request letter, or through a widespread consumer advisory. *See generally* 21 C.F.R. § 7.40(b) (2000). These actions put any district court proceedings regarding plaintiffs' complaints about heavy metals on a potential collision course with FDA regulations or a deliberate decision by the FDA *not* to act if it deems any risks acceptable.

Additionally, federal preemption is compelled not only when "Congress' command is explicitly stated in the statute's language," but also when "Congress' command is . . . "implicitly contained in its structure and purpose." *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 95 (1983). Plaintiffs attempt to usurp the FDA's role to regulate food safety under the guise of state law. But

FDCA preemption challenges to claims based on alleged heavy metal contamination in food, notwithstanding *Plum*. *See, e.g.*, *In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-00269-MSN-JFA, Dkt. No. 133 at 14-18 (E.D. Va. July 8, 2022) (arguing preemption).

allowing states to constructively impose their own limits for various products, or potentially ban these products altogether (if manufacturers are unable to comply with requirements), would conflict with the FDA's standards and undermine its approach in addressing this issue. Mandating label warnings or disclaimers regarding the presence of heavy metals in spices and herbs would undermine the FDA's objectives. Such warnings would suggest that the products are likely to cause significant adverse health effects, when the opposite may be true (i.e., they may protect against adverse health effects and are part of a healthy diet). In addition, warnings would cause confusion, leading consumers to question if the products form part of a healthy diet or contain more heavy metals than similar unlabeled products. Premature labeling requirements—particularly for substances that are ubiquitous in the environment and food supply—would conflict with FDA's ongoing efforts to provide consumers with effective, science-based risk guidance. Accordingly, the conflict preemption doctrine requires dismissal of the complaint.

## III.    PLAINTIFFS' CLAIMS FALL UNDER THE FDA'S PRIMARY JURISDICTION

Plaintiffs contend the FDA's primary jurisdiction does not warrant abstention for four reasons that can be readily dispatched:

*First*, plaintiffs again argue that this Court should follow the unpublished decision in *Plum*, No. 21-CV-913, Dkt. No. 125 at 2. Opp. at 14. Of course, the mere fact that parties advance similar arguments in different cases does not require this Court to exercise its powerful jurisdiction, without independent assessment, over a complex scientific and regulatory issue of industry-wide concern, currently under consideration by the competent federal agency, based on a nine-line analysis in an unpublished decision. *See, e.g.*, *John Muir Health v. Glob. Excel Mgmt.*, No. C-14-04226 DMR, 2014 WL 6657656, at *6 (N.D. Cal. Nov. 21, 2014) ("[T]he ruling of a parallel court is not binding . . . [J]udges can disagree.").[8]

*Second*, plaintiffs are incorrect when they contend that the Ninth Circuit's requirements for

---

[8] As with preemption, the *Plum* court's cursory analysis has not stopped defendants from pursuing well-reasoned arguments that claims based on alleged heavy metal contamination in food fall within the FDA's primary jurisdiction. *See, e.g.*, *Gerber*, No. 1:21-cv-00269-MSN-JFA, Dkt. No. 133 at 6-14 (E.D. Va. July 8, 2022) (arguing FDA primary jurisdiction); *id.* Dkt. No. 134 (declaration of former FDA official regarding FDA's work on heavy metals in food supply).

invoking primary jurisdiction are not met. Opp. at 14. Plaintiffs do not seem to meaningfully dispute three of the four factors, saving their fire for the fourth factor: whether it presents an issue that "requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech.*, 307 F.3d 775, 781 (9th Cir. 2002); Opp. at 15 (conceding FDA is reviewing amounts of heavy metals in food supply); *id.* at 16 (disputing whether case involves "'technical and policy considerations' or a particularly 'complicated issue.'"). In support, plaintiffs attempt to portray their claim as a simple case based on misleading labeling. *Id.* at 14-16. But this characterization of plaintiffs' allegations disingenuously ignores the underlying substance of their claims, *i.e.*, that McCormick spice and herb products allegedly "pose a serious safety risk to consumers." Compl. ¶ 3. Adjudicating this issue necessitates a determination whether McCormick's products were, in fact, safe for consumers—which in turn requires a determination of what levels, and of which heavy metals, render food products, and specifically spices and herbs, unsafe for consumers. *See, e.g.*, *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-110-JLS-JCGx, 2017 WL 5587276, at *2-3 (C.D. Cal. Oct. 11, 2017) (complaint, "ostensibly about the meaning of the terms 'Pure' or '100% Pure,'" was "really about what constitutes a safe level of glyphosate in honey" and, where misleading labeling claims were premised on ingredient safety claim, court was unable to conclude whether labeling was misleading without guidance from FDA regarding glyphosate's toxicity).

Plaintiffs' flawed attempt to characterize their case as grounded in deceptive labeling permeates and undermines their remaining arguments against FDA primary jurisdiction. For example, they argue that (1) "the FDA activity in progress does not specifically relate to the *packaging* of herbs and spices"; (2) "this case does not involve 'technical and policy considerations' or a particularly 'complicated issue'" because "[i]t *solely* concerns *deceptive packaging* and whether reasonable consumers were misled by Defendant's concealment and misrepresentation of material facts under state law." Opp. at 15-16 (emphasis added). But as explained in McCormick's motion to dismiss, the crux of the dispute in this case—and the premise out of which the alleged liability arises—is whether McCormick products pose a material safety risk to consumers in the first place. Indeed, according to plaintiffs' complaint, absent an alleged safety risk, plaintiffs would take no issue with any representations or omissions on McCormick's packaging. Resolving that threshold issue of alleged

food safety concerns requires the considered judgment of FDA which is better suited to determine safe exposure levels, appropriate testing and manufacturing processes, and labeling requirements than numerous district courts scattered throughout the country. *See, e.g.*, Mot. at 13. Moreover, these issues—which are not mere allegations of mislabeling, but rather of the presence of allegedly unsafe contaminants—do require "expertise and uniformity" which the FDA is uniquely positioned to provide. *Id.* at 14-15. Plaintiffs' claim that the FDA is not (presently) tasked with regulating "*disclosure* of heavy metals on product packaging," *id.* at 15, is beside the point; making the safety determinations the FDA is undertaking is the necessary first step to assessing disclosures. Nor is there any merit to plaintiffs' complaint that the FDA is not addressing the levels of heavy metals in herbs and spices specifically. Sight unseen, plaintiffs cannot credibly deny that the "comprehensive plan" the FDA is "finalizing" with respect to babies and young children may inform the merits of their allegations. Ex. 9 at 4.

*Third*, plaintiffs' reliance on *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013), *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083 (S.D. Cal. 2021), and *Prescott v. Bayer HealthCare LLC*, No. 20-CV-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020), is misplaced. In *Kosta*, the FDA "ha[d] provided informal policy guidance stating the minimum standards for using the term 'natural' with respect to food products, and plaintiffs alleged violations of those regulations. 2013 WL 2147413, at *9. Thus, the *Kosta* court was only being called upon to apply existing, expert-drafted standards, not decide what the standards should be in the first place. In *Souter*, the alleged misrepresentation regarding hand-wipes were so facially non-actionable that the district court dismissed all the plaintiffs' claims on the pleadings and had no reason to *further* determine if FDA expertise was necessary. 542 F. Supp. 3d at 1093-95. Finally, in *Prescott*, the court noted that adjudicating plaintiffs' claims regarding "mineral-based" labels on sunscreen would not require it to determine, for example, "whether chemical or mineral active ingredients are harmful or safe for use," unlike here. 2020 WL 4430958, at *4.

*Fourth*, and finally, plaintiffs offer no compelling distinction of the several instances McCormick cited where courts deferred to an agency's primary jurisdiction in similar cases. Indeed, they attempt to distinguish only a few of them, and in doing so persist in their counterfactual claim

-9-

that this case is *only* about "packaging mandates," and *not* about alleged food safety issues. *See, e.g.,* Opp. at 16:28, 17:11-13 (arguing "the question here is whether a reasonable consumer was misled by the omissions and misrepresentations . . . issue").

## IV.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE DECEPTION

In response to McCormick's argument that plaintiffs cannot allege deception given the ubiquity of heavy metals in the environment and food supply, *see* Mot. at 16-17, plaintiffs nominally dispute this factual premise in one breath, *see* Opp. at 18, yet cite evidence (purportedly in support of their contention) confirming there is no way to completely eradicate these contaminants from food in the next. *Id.* For example, plaintiffs quote this headline from Exhibit 10 to McCormick's motion: "Parents Can Make Five Safer Baby Food Choices for 80 Percent Less Toxic Metal Residue." Opp. at 18. Of course, 80% less toxic metal residue is still *some* toxic metal residue. *See also id.* at 18-19 (quoting *Consumer Reports* article noting that spice and herb producers can "limit"—not eliminate—heavy metals in their products). Plaintiffs' attempt to disavow the factual premise that heavy metals are omnipresent in the environment and food supply is thus self-defeating.

As shown in McCormick's motion, courts have repeatedly held that, because trace contaminants are inevitable, the mere possibility of their presence in a product is not likely to affect materially consumers' purchasing decisions. Mot. at 16-17. Plaintiffs do not—and cannot—distinguish these cases, and their claims should be dismissed accordingly.[9]

## V.    THE AFFIRMATIVE MISREPRESENTATION CLAIMS SHOULD BE DISMISSED

Plaintiffs concede that the only affirmative misrepresentation they have attempted to plead is McCormick's slogan, "The Taste You Trust," *see* Opp. at 20:8-12, and argue only that this textbook example of puffery is instead "a material actionable misstatement." *Id.* at 20:12.

Plaintiffs' cited authorities do not support their claim that allegations regarding heavy metals in a food product can transform classic puffery—here, a vague, innocuous, and decades-old slogan—

---

[9]  Plaintiffs' cited authorities are unavailing. For example, in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017), the court did not reject the defendants' argument that a well-known risk (there, risks related to overconsuming sugar) prevented any plausible allegation of deception as plaintiffs suggest; rather, it found that the crux of the plaintiffs' allegations did not relate to that risk but rather to the misleading nature of marketing claims that cereals were "healthy."

into an actionable misstatement. Rather, the alleged misrepresentations found actionable in those cases were, in fact, more specific than the McCormick tagline at issue. For example, in *Grossman v. Schell & Kampeter, Inc.*, No. 2:18-CV-02344-JAM-AC, 2019 WL 1298997 (E.D. Cal. Mar. 21, 2019), which plaintiffs contend "mirror[s]" the facts here, the packaging statements that the court found went beyond mere puffery included claims that the dog food, although allegedly contaminated with heavy metals, pesticides, acrylamide and/or BPA, supported "optimal cellular health" and was made subject to "strict human-grade standards to ensure purity." *Id.* at *4.[10]

Finally, it is noteworthy that all the statements found actionable in plaintiffs' cited cases, whether "safe" and "pure" in *Zeiger*, 304 F. Supp. 3d at 851 or "biologically appropriate" in *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2022 WL 980832, at *5 (N.D. Ill. Mar. 31, 2022), describe the product at issue and its specific benefits and are therefore more likely (if even only slightly) to induce consumer reliance. In contrast, "The Taste You Trust" describes the consumer's relationship with McCormick's products; the consumer either trusts McCormick's products or does not, and the consumer is amply suited to determine if that statement is a true or false statement of the consumer's views. In any event, it is "extremely unlikely to induce consumer reliance" and a "general, subjective claim about a product" and is therefore well within the bounds of non-actionable puffery. *See, e.g.*, *Newcal Indus., Inc. v. IKON Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).[11]

## VI. PLAINTIFFS CANNOT PURSUE EQUITABLE CLAIMS IN FEDERAL COURT

As this Court has previously determined, the Ninth Circuit's decision in *Sonner v. Premier Nutrition*, 971 F.3d 834 (9th Cir. 2020) precludes plaintiffs' claims seeking the equitable remedy of

---

[10] *See also In re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at *1 (N.D. Cal. Oct. 4, 2019) (finding statement "100% Complete and Balanced Nutrition" on dog food that allegedly contained pentobarbital—a "euthanizing agent for animals" could mislead consumers); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1080 (N.D. Cal. 2014) (statements regarding sharing with affiliates of dating profiles of singles with sexually-transmitted diseases in "100% Confidential and Comfortable Community" online were misleading where they did not disclose potential breadth of disclosure and manner of affiliate usage).

[11] Plaintiffs make several references to statements made on McCormick's website, Opp. at 20:13-24, as "context," but as plaintiffs' own cited authorities make clear, only those statements plaintiffs actually saw and relied can support affirmative misrepresentation claims. *See, e.g.*, *Grossman*, 2019 WL 1298997, at *5. None of the plaintiffs allege that they reviewed or relied on McCormick's website in making their purchasing decisions. *See generally* Compl. ¶¶ 5-18.

restitution where an adequate legal remedy exists. Indeed, in *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020), this Court rejected similar attempts as those made by plaintiffs here to cabin the holding of *Sonner*. For example, plaintiffs cite cases declining to apply *Sonner* at the pleading stage, finding that "*Sonner* does not preclude plaintiffs from pleading equitable remedies in the alternative," *see* Opp. at 22, but as this Court explained, "this is not an election of remedies issue. The question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all." *Macbook Keyboard Litig.*, 2020 WL 6047253, at *2. "[T]hat question is not premature on a motion to dismiss." *Id.*[12]

Similarly, this Court also rejected arguments that legal remedies are inadequate where the crux of the complaint is a product defect (here, the alleged inclusion of an unspecified quantity of heavy metals in herbs and spices): "Plaintiffs do not explain why those consumers could not be 'made whole' by monetary damages. Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect[.]" *MacBook Keyboard Litig.*, 2020 WL 6047253, at *3. Here too, plaintiffs admit they have a legal remedy (damages) and allege no injury other than paying for, or paying too much for, a product; thus, money damages are adequate and their claims for equitable restitution should be dismissed. Mot. at 19 (citing cases).[13]

Nor can plaintiffs plead entitlement to injunctive relief, which they admit requires allegations of a threatened future harm. Opp. at 22-23. Plaintiffs again focus on their speculative allegations that they would like to purchase McCormick's products in the future if they are "safe," while ignoring

---

[12] *Accord Grundstrom v. Wilco Life Ins. Co.*, No. 20-CV-03445-MMC, 2022 WL 2390992, at *2-3 (N.D. Cal. July 1, 2022) (dismissing claims for restitution under *Sonner* absent allegations showing there was no adequate remedy at law); *Williams v. Amazon.com Servs. LLC*, No. 22-CV-01892-VC, 2022 WL 1769124, at *1 (N.D. Cal. June 1, 2022) (same).

[13] Plaintiffs seek leave to amend to allege further facts showing why they lack adequate remedies at law. Opp. at 22. Notably, plaintiffs' arguments in opposition suggest that, if given leave to amend, they would plead only that legal remedies are insufficient because equitable remedies might give them a windfall. *Id.* Of course, the issue at hand is whether monetary damages are sufficient to make plaintiffs whole, not whether equitable remedies could be more appealing. In any event, leave should be denied as futile because plaintiffs' allegations confirm that their only injury is one for "lost money" and monetary damages would provide an adequate remedy for the alleged injury. *See* Mot. at 19 (citing cases); *see also MacBook Keyboard Litig.*, 2020 WL 6047253, at *4.

their contradictory allegations that any amount of heavy metals is unsafe and that heavy metals cannot be eliminated from the food supply, including herbs and spices. These arguments again fail for the same reasons explained above. *See* Section I.B, *supra*; *see also* Mot. at 7-9.

## VII. <u>PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS FAIL</u>

Plaintiffs offer no persuasive argument against dismissal of their breach of implied warranty claims. Their cited authorities *support* dismissal in this case. *See, e.g.*, *Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*, No. 2:20-CV-00690-KJM-DMC, 2022 WL 172315, at *6 (E.D. Cal. Jan. 19, 2022) (dismissing implied warranty claim where plaintiff failed to plead facts that dog food was "unfit for 'even the most basic degree of fitness for ordinary use'") (citations omitted); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (dismissing implied warranty claim based on inclusion of synthetic chemicals in "premium" beverages with "all natural" flavors).[14] Indeed, the only case plaintiffs cite that actually declined to dismiss a claim for implied breach of warranty is out-of-district, applies Oregon law, and involved very different facts. *Pac. Botanicals, LLC v. Sego's Herb Farm, LLC*, No. 1:15-CV-00407-CL, 2016 WL 11187249, at *8 (D. Or. Dec. 8, 2016), *report and recommendation adopted*, No. 1:15-CV-00407-CL, 2017 WL 1536432 (D. Or. Apr. 26, 2017). Far from alleging that McCormick's products "did not possess even the most basic degree of fitness for ordinary use," as required for a breach of implied warranty of merchantability, *Ocampo v. Apple Inc.*, No. 5:20-CV-05857-EJD, 2022 WL 767614, at *5 (N.D. Cal. Mar. 14, 2022), plaintiffs here allege only that McCormick's products "contain (or have a risk of containing)" unspecified quantities of heavy metals and, although they allege that minimizing exposure to heavy metals is important, they do not allege that McCormick's products were unfit for human consumption, nor do they contend that

---

[14] The *Viggiano* court contrasted the alleged inclusion of synthetic chemicals in a beverage with "all natural flavors" in that case with cases sustaining claims where (i) defendant's corks damaged the smell and drinkability of plaintiff's wines, 944 F. Supp. 2d at 896 (citing *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, No. C-01-4203 MMC, 2005 WL 1528703, *1 (N.D. Cal. June 29, 2005)); and (ii) inclusion of a cleaning brush in a soft drink that rendered plaintiff ill and disabled after drinking it. *Id.* (citing *Medeiros v. Coca-Cola Bottling Co. of Turlock*, 57 Cal. App. 2d 707, 711 (1943)). As in *Viggiano*, plaintiffs' allegations of undetermined quantities of heavy metals— ubiquitous in the world's food supply—in McCormick's products do not render them unfit for consumption, unlike the tainted wine in *Chateau des Charmes* or the brush-contaminated soft drink that disabled the plaintiff in *Medeiros*.

they made any of the plaintiffs (or *anyone*) sick. *See, e.g.*, Compl. ¶¶ 5-18; *cf. Ferrari v. Nat. Partners, Inc.*, No. 15-CV-04787-LHK, 2016 WL 4440242, at *2, 7, 11 (N.D. Cal. Aug. 23, 2016) (plaintiff pleaded breach of implied warranty where she alleged specific poisoning symptoms of after consuming contaminated enzyme tablets). Plaintiffs' implied warranty claims should be dismissed.[15]

## VIII.   THE COURT SHOULD DISMISS PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

Plaintiffs attempt to avoid well-settled California law that unjust enrichment is not an independent claim for relief by arguing that the Ninth Circuit's unpublished decision in *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) heralded a legal sea change allowing such claims to proceed. Opp. at 24. To the contrary, courts have repeatedly declined to follow the non-precedential holding of *Bruton* because it ignored the express limitations on the holding in the California Supreme Court's decision in *Hartford Casualty Insurance Co. v. J.R. Marketing, LLC*, 61 Cal.4th 988 (2015) (on which it relied) and because the California courts of appeal have repeatedly declined to apply *Hartford* beyond the specific factual scenario presented there.

For example, in *Abuelhawa v. Santa Clara University*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021), the court held that the plaintiffs' reliance on *Bruton* to support an independent claim for unjust enrichment under California law was "unpersuasive." *First*, the court noted that *Bruton* (concerning labeling on baby food) relied on *Hartford*, which presented a very specific and narrow question regarding an insurer's claim for reimbursement for counsel fees it was obligated to pay in a third party action in light of the terms of a court order "preserving the insurer's post-litigation right to recover" certain amounts. *Id.* at 1071 (noting that "*Hartford* 'raised a narrow question' limited to 'the facts of th[at] case.'") (quoting *Hartford*, 61 Cal.4th at 996-97). The court further noted that "subsequent California Court of Appeal decisions" have likewise "recognized *Hartford*'s narrow scope," finding that its "unusual facts cabined its holding." *Id.* at 1071 (citing *A.J. Fistes Corp. v. GDL Best Contractors, Inc.*, 38 Cal. App. 5th 677, 697 (2019)).[16] *Second*, the court noted that "published post-

---

[15]   Plaintiffs do not dispute that dismissal of their implied warranty claims also requires dismissal of their Beverly-Song claims. *See* Mot. at 20 n.6.

[16]   *Accord Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 WL 5569161, at *1 (N.D. Cal. Sept. 21, 2015) ("The only aspect of [*Hartford*] that could be portrayed as a 'change' of law is narrowly confined to the question of the unjust enrichment of insureds' counsel when counsel's fees

*Hartford* decisions" by the California appellate courts "confirmed that '[u]njust enrichment is not a cause of action.'" *Id.* (quoting and citing *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018), *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020), and *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017)). Accordingly, the *Abuelhawa* court found it "must follow the repeated holdings of California Courts of Appeal" and dismiss the plaintiffs' unjust enrichment claim with prejudice as futile. *Id.* at 1072; *accord ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, No. 17-CV-6788-FPG, 2018 WL 4681799 (W.D.N.Y. Sept. 28, 2018). The court should follow the considered reasoning of *Abuelhawa* and dismiss plaintiffs' claim for unjust enrichment under California law.

Plaintiffs' unjust enrichment claim under Washington law also fails as a matter of law. Plaintiffs do not even attempt to distinguish *Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*, No. C14-10 RAJ, 2014 WL 2154381 (W.D. Wash. May 22, 2014), nor can they. There, as here, the plaintiff alleged that the defendant misrepresented its products and thus induced the plaintiff to purchase them; without more, however, the court held that mere receipt of money is insufficient to plead the necessary element of "an appreciation or knowledge by the defendant of the benefit" it allegedly unfairly received from the plaintiff. *Id.* at *2. Instead, plaintiffs rely on *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271 (W.D. Wash. 2011)—involving allegedly deceptive website practices that resulted in consumers purchasing unwanted services—which is readily distinguishable. There, the plaintiffs alleged that the defendants "knew that some of the purchases made by its customers were unknowing" and therefore were aware of the unjustly obtained benefit so as to state a claim for unjust enrichment under Washington law. As in *Water & Sanitation Health*, Plaintiffs' claim for unjust enrichment under Washington law should also be dismissed.

## IX.  PLAINTIFFS CONCEDE DISMISSAL OF THEIR FAILURE TO WARN CLAIM

Finally, plaintiffs make no effort to defend their claim for negligent failure to warn. Opp. at 25 n.3; *see also* Mot. at 21-22. Accordingly, this claim should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss plaintiffs' complaint in its entirety.

are excessive and not incurred for the benefit of the insured.").

DATED:  August 1, 2022

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  */s/ Shon Morgan*
    Shon Morgan
    *Attorneys for Defendant* McCORMICK &
    COMPANY, INC.