UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KELLY BALISTRERI, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MCCORMICK & COMPANY, INC.,<br><br>　　　　　Defendant. | Case No.  5:22-cv-00349-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Plaintiffs Kelly Balistreri, Tony Michel, Tam Dang, Lance Snead, Frank Ortega, Hollie Pour, and Jason Jordan (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, initiated this suit against Defendant McCormick & Company, Inc., ("McCormick" or "Defendant") seeking damages and injunctive relief for McCormick's alleged continuing misrepresentations and failure to disclose to consumers that certain McCormick herbs and spices ("Products") contained lead, arsenic, and cadmium ("Heavy Metals").  McCormick filed a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim.  Plaintiffs filed an Opposition, and McCormick filed a Reply.  Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons explained below, the Court GRANTS Defendants' motion to dismiss under Rule 12(b)(6) with leave to amend.

## I.　　BACKGROUND

### A.　　Parties

Plaintiffs are seven individuals who purchased McCormick spices in the past four years.  Am. Compl. ("Compl.") ¶¶ 5–18, ECF 28.  Plaintiffs reside in California and Washington.  *Id.*

United States District Court
Northern District of California

1  Plaintiffs bring this action individually and on behalf of all other persons similarly situated

2  pursuant to Federal Rule of Civil Procedure 23.  *Id.* ¶ 77.  Plaintiffs seek class certification for the

3  following proposed class: "All persons within the United States who purchased the Products from

4  the beginning of any applicable limitations period through the date of judgment."  *Id.* ¶.  Plaintiffs

5  also bring this action on behalf of the following state subclasses: "[a]ll persons who purchased the

6  Products in the State of Washington from the beginning of any applicable limitations period

7  through judgment" ("Washington Subclass"); and "[a]ll persons who purchased the Products in

8  the State of California from the beginning of any applicable limitations period through judgment"

9  ("California Subclass").  *Id.* ¶ 78.

10        Defendant McCormick & Company, Inc., is a foreign corporation with its headquarters in

11  Hunt Valley, Maryland.  *Id.* ¶ 19.  McCormick manufactures, markets, and sells herbs and spices,

12  including the Products, throughout California, Washington State, and the United States.  *Id.*

13        **B.**      **Factual Background**

14        Prior to purchasing the Products, Plaintiffs allege that they saw and relied on the packaging

15  of the Products and believed they were purchasing quality and healthy spices that did not contain

16  (or risk containing) unsafe toxic Heavy Metals.  Am. Compl. ¶¶ 5–18.  Specifically, the packaging

17  of the Products stated: "The Taste You Can Trust."  *Id.* ¶ 66.

18        In November 2021, Consumer Reports published an article stating that they found Heavy

19  Metals in several brands' herbs and spices, including McCormick's Culinary Ground Basil,

20  Ground Ginger, Ground Oregano, Paprika, Ground Thyme, and Ground Turmeric (collectively,

21  the "Products").  *Id.* ¶ 2.  The article labeled McCormick's Products as having "Some Concern,"

22  on a scale of "No Concern," "Some Concern," "Moderate Concern," and "High Concern."  Def.'s

23  Mot. Dismiss ("Mot. Dismiss"), Ex. 2 at 11–18, ECF 32-3.  The article also states: "We tested two

24  or three samples from different lots of each product. Our findings are a spot check of the market

25  and cannot be used to draw definitive conclusions about brands."  *Id.* ¶ 2, n.1; Mot. Dismiss, Ex. 2

26  at 11.

27        Had the Products' labels disclosed they contained (or risk containing) Heavy Metals,

28  Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS

1    Plaintiffs allege that they would not have purchased the Products. *Id.* ¶¶ 5–18. Plaintiffs continue

2    to desire to purchase the Products from McCormick, but they are unable to determine if the

3    Products are safe. *Id.* Plaintiffs allege that so long as the Products are marketed as safe, they will

4    be unable to make informed decisions about whether to purchase McCormick's Product. *Id.*

5    Plaintiffs further allege that they "were harmed in the form of monies they paid for the Products

6    which they would not otherwise have paid had they known the truth about the Products." *Id.* ¶ 52.

7        Plaintiffs allege eleven claims in their Complaint: multiple California's Unfair

8    Competition Law ("UCL") violations, California's False Advertising Law ("FAL") violations,

9    California's Consumer Legal Remedies Act ("CLRA") violations, breach of implied warranty of

10   merchantability under the Song-Beverly Act, breach of implied warranty of merchantability under

11   the Uniform Commercial Code ("UCC"), fraud, unjust enrichment, Washington Consumer

12   Protection Act ("WCPA") violations, and negligent failure to warn. *Id.* ¶¶ 89–188. Plaintiffs seek

13   class certification, declaratory relief, injunctive relief, restitution, disgorgement, compensatory

14   damages, and punitive damages. *Id.* ¶¶ 96, 104, 114, a–j.

15   **II.      LEGAL STANDARD**

16       **A.      Rule 12(b)(1)**

17       A district court must dismiss an action if it lacks jurisdiction over the subject matter of the

18   suit. Fed. Rules Civ. Pro. 12(b)(1). Once a defendant moves to dismiss for lack of subject matter

19   jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. *Chandler v. State*

20   *Farm Fut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

21       **B.      Rule 12(b)(6)**

22       A complaint must contain "a short and plain statement of the claim showing that the

23   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a

24   complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). When

25   deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept

26   as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). While

27   a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS
                                            3

"sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must construe the alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.").  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Claims sounding in fraud must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003).  Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Typically, Rule 9(b) requires the party alleging fraud to plead "the who, what, when, where, and how" of the misconduct.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

III.    DISCUSSION

A.    Judicial Notice

"In evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice." *MLW Media LLC v. World Wrestling Ent., Inc.*, No. 22-CV-00179-, 2023 WL 4053802, at *2 (N.D. Cal. June 15, 2023); *see also Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  A court may take Judicial Notice of a fact "not subject to reasonable dispute" if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

United States District Court
Northern District of California

1    Fed. Rule Evid. 201(b).

2        McCormick requests that the Court take Judicial Notice of its Motion to Dismiss Exhibits

3    2–12.  Def.'s Req. for Judicial Notice, ECF No. 33.  Plaintiffs only oppose the Court taking

4    Judicial Notice of Exhibit 10, a Healthy Babies Report article discussing Heavy Metals in baby

5    food.  Opp'n 18.  Plaintiffs argue that this document is not properly subject to Judicial Notice

6    because Plaintiffs do not rely on it, and it contains disputed facts.  *Id.*

7        The Court rules as follows:

8        Exhibits 2, 3, Consumer Report materials:  Plaintiffs' Complaint alleges the content in

9    these documents; thus, they are incorporated by reference.  *See Busey v. P.W. Supermarkets, Inc.*,

10   368 F. Supp. 2d 1045, 1049 (N.D. Cal. 2005) ("[T]he court may consider a document not attached

11   to the complaint if the complaint specifically refers to it and its authenticity is not questioned.").

12       Exhibits 1, 4–9, 11, 12, Federal Drug Administration ("FDA") and Environmental

13   Protection Administration ("EPA") publications:  The Court takes Judicial Notice of these

14   documents, as "[c]ourts routinely take judicial notice of similar FDA guidance documents, many

15   of which also appear on the FDA's public website."  *Wilson v. Frito-Lay N. Am., Inc.*, 260 F.

16   Supp. 3d 1202, 1207 (N.D. Cal. 2017) (citing *Gustavson v. Wrigley Sales Co.*, 961 F.Supp.2d

17   1100, 1126, n. 1 (N.D. Cal. 2013) (taking Judicial Notice of an FDA guidance document about

18   food labeling, an FDA response letter, and an amicus brief)).  However, the Court does not take

19   Judicial Notice of the facts McCormick draws from Exhibits 1, 4–9, 11 and 12, as they are subject

20   to reasonable dispute by Plaintiffs' allegations in their Complaint.  *See Lee v. City of Los Angeles*,

21   250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record

22   without converting a motion to dismiss into a motion for summary judgment. But a court may not

23   take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks

24   omitted) (citing *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)).  McCormick

25   relies on these documents to question the Consumer Report's testing methodology, suggest that

26   Heavy Metals are impossible to remove from the food supply, suggest that the process of limiting

27   Heavy Metals is so complicated that the FDA is the only appropriate agency to do so, and suggest

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS
                                            5

United States District Court
Northern District of California

1    that the FDA may investigate Heavy Metals in herbs and spices further in the future.  *See* Mot.

2    Dismiss 3, 10–12, 14, 16.  These documents do not directly support McCormick's assertions, and

3    Plaintiffs contest these facts both in their Complaint and in their Opposition.  *See* Opp'n 11.

4    Therefore, the Court will take Judicial Notice of the existence of these documents, but not the facts

5    McCormick asserts from them.  *See Gagetta v. Walmart, Inc*., No. 3:22-CV-03757-WHO, 2022

6    WL 17812924, at *3 (N.D. Cal. Dec. 19, 2022) (taking Judicial Notice of the existence of similar

7    FDA documents without taking Judicial Notice of the contested facts within the documents).

8        <u>Exhibit 10, Healthy Babies Report</u>:  The Court takes Judicial Notice of this document, as it

9    is a matter of public record, and its authenticity is not subject to reasonable dispute.  However, for

10    reasons discussed above, the Court does not take Judicial Notice of the facts contained in Exhibit

11    10.  McCormick uses Exhibit 10 to argue that Heavy Metals are naturally occurring, and therefore

12    impossible to remove from the food supply.  *See* Mot. Dismiss 16.  Plaintiffs contest this fact,

13    Opp'n 18, and this fact is not a fact generally known in the public.

14        **B.**    **Standing**

15            **1.**    **Art. III Injury in Fact**

16        "The plaintiff has the burden of establishing the three elements of Article III standing: (1)

17    he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent;

18    (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be

19    redressed by a favorable court decision."  *Salmon Spawning & Recovery All. v. Gutierrez*, 545

20    F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

21    (1992)).  Relevant here, plaintiffs have established injury in fact when "class members paid more

22    for [a product] than they otherwise would have paid, or bought it when they otherwise would not

23    have done so."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir.2012); *see also*

24    *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013).  Courts must assume the merits of a

25    plaintiff's claim when considering Article III standing.  *Zeiger v. WellPet LLC*, 304 F. Supp. 3d

26    837, 843 (N.D. Cal. 2018).

27        McCormick argues that Plaintiffs have failed to allege an injury in fact because: (1) they

28    Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS

1    did not allege physical injury resulting from the Products, (2) their economic injury is hypothetical

2    because they did not plead that the Products they purchased actually contained Heavy Metals, and

3    (3) Plaintiffs received the benefit of their bargain.  Mot. Dismiss 5.

4         First, the Court rejects McCormick's contention that Plaintiffs must allege physical injury.

5    It is well-established that a plaintiff paying more for a product than she otherwise would have paid

6    is a sufficient economic injury for purposes of Article III standing.  *Mazza*, 666 F.3d at 595;

7    *Hinojos*, 718 F.3d at 1104; *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)

8    ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent.

9    This is a quintessential injury-in-fact.").  Plaintiffs here allege that they spent money on the

10   Products that they would not have spent had they known that the Products contained (or risked

11   containing) Heavy Metals.  Compl. ¶ 93.

12        Second, the Court rejects McCormick's argument that Plaintiffs' economic harm is

13   hypothetical.  McCormick argues that, because Plaintiffs alleged that the Products contained (*or*

14   *risked containing*) Heavy Metals, Plaintiffs did not allege that the Products *actually* contained

15   Heavy Metals, let alone unsafe levels of Heavy Metals.  Mot. Dismiss 5.

16        McCormick relies on *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597

17   CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2020).  *Id.*  There, the plaintiffs alleged that the

18   defendants failed to disclose that their products contained ingredients that are *probable*

19   carcinogens and other ingredients that have not affirmatively been proven safe.  *Herrington*, 2010

20   WL 3448531, at *1. The plaintiffs claimed that, had they known the products contained these

21   ingredients, they would not have purchased the products.  *Id.*  However, the plaintiffs notably did

22   not claim the products were, in fact, unsafe.  *Id.,* at *13.  The court found that the plaintiffs' harm

23   was hypothetical because they did not allege that the products at issue in fact contained

24   carcinogens or unsafe materials.  *Id.*, at *2–4.

25        The Court finds *Herrington* distinguishable.  Here, Plaintiffs allege that the Products they

26   purchased in fact contained (or risked containing) Heavy Metals, which Plaintiffs allege have been

27   proven unsafe at any level.  Compl. ¶¶ 28–34.  Unlike the plaintiffs in *Herrington*, Plaintiffs here

United States District Court
Northern District of California

did not claim the Products had ingredients that *may* be Heavy Metals, or other ingredients which have not affirmatively been proven to be safe. *See id.* Rather, Plaintiffs alleged that Heavy Metals have been found in the Products, any level of Heavy Metals is unsafe, and they would not have purchased the Products had they known they contained (or risked containing) Heavy Metals. *See id.* Assuming the merits of Plaintiffs' claim in this Article III standing analysis, *Zeiger,* 304 F. Supp. at 843, the Court finds Plaintiffs have plead more than a hypothetical harm.

Third, the Court rejects McCormick's argument that Plaintiffs failed to allege that they did not receive the benefit of the bargain. McCormick argues that the Consumer Report at best reveals potential trace amounts of Heavy Metals in the Products, and courts have found that trace amounts of substances do not negate the value of the purchase. Mot. Dismiss 6. But it is not currently an established fact that the Consumer Report reveals only *trace* amounts of Heavy Metals. And further, McCormick cites to distinguishable case law where the plaintiffs claimed injuries from products that contained substances regulated by the FDA. *Id.* In those cases, the courts found that, because the substance levels fell below the applicable FDA limits, the levels were so trace that the plaintiffs received the benefit of their bargain. *Id.* Here, the FDA has not regulated Heavy Metals in herbs and spices, so Plaintiffs have not alleged the presence Heavy Metals at a level below that permitted by the FDA.

Therefore, assuming the merits of Plaintiffs' claim in this Article III standing analysis, *Zeiger,* 304 F. Supp. at 843, the Court finds Plaintiffs have sufficiently plead an injury-in-fact for purposes of Article III standing.

### 2.      Injunctive Relief

"[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). In such cases "[w]here standing is premised on the threat of a repeated injury, a plaintiff must show a 'sufficient likelihood that he will again be

wronged in a similar way.'" *Id.* at 967 (9th Cir. 2018) (quoting *Summers*, 555 U.S. at 493). Notably, Courts "must be careful not to employ too narrow or technical an approach" to determine whether an injury is similar. *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 125 S. Ct. 1141, 160 L.Ed.2d 949 (2005). "Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.*

McCormick argues that Plaintiffs have failed to allege an actual and imminent threatened or future injury sufficient for standing to seek injunctive relief because Plaintiffs are now aware that Heavy Metals cannot be removed from the food supply, making their assertion that they may purchase the Products in the future if they could be certain they are safe as too vague and uncertain to establish imminent harm. Mot. Dismiss 8. McCormick's argument fails for two reasons.

First, the Court does not find Plaintiffs have conceded that Heavy Metals cannot be removed from the food supply. McCormick concludes that Plaintiffs are now aware that Heavy Metals cannot be removed from the food supply based on the following quotes from Plaintiffs' Complaint: "[I]t is possible for herb and spice companies to *limit* heavy metals in their products," Compl. at ¶ 32 (emphasis added), and "Defendant informed Consumer Reports that . . . its goal is for levels of [heavy metals] to be *as close to zero as possible*," *id.* ¶ 33 (emphasis added). *See* Mot. Dismiss 8. But these quotes, taken in the light most favorable to Plaintiffs, do not show Plaintiffs have conceded to McCormick's assertion that it is impossible to remove Heavy Metals from the food supply.

Second, even if Plaintiffs did concede that it is impossible to remove the Heavy Metals, they seek to enjoin McCormick from allegedly misrepresenting and omitting the presence of Heavy Metals from the Products' marketing, labeling, and packaging. The Court does not read Plaintiffs' Complaint as seeking to accomplish the allegedly impossible and enjoin McCormick from having Heavy Metals in their Products. Specifically, Plaintiffs allege: "[A]s long as Defendant continues to market its Products as safe, [Plaintiffs] will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the

1    different prices between Defendant's Products and competitor's Products. [Plaintiffs are] further

2    likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to

3    ensure that the Products marketed, labeled, packaged and sold as quality and healthy spices are, in

4    fact, safe and healthy spices." Compl. ¶¶ 8, 10, 12, 14, 16, 18.  Through changes in McCormick's

5    marketing, labeling, and packaging, Plaintiffs claim they will be able to make up their own mind

6    as to whether the Products are "safe," even if they do contain trace amounts of Heavy Metals.  In

7    this way, Plaintiffs' allegations for injunctive relief are supported by numerous cases in his

8    district.  *See, e.g., Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454,

9    at *11 (N.D. Cal. May 10, 2022) ("Because I can fairly interpret the complaint as alleging that

10   Brown would purchase the products again in the future if they were not misleadingly labeled,

11   Brown has sufficiently alleged standing to seek injunctive relief.'); *Elgindy v. AGA Serv. Co.*, No.

12   20-CV-06304-JST, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) ("Plaintiff [] alleges that

13   he 'will purchase event tickets and airfare in the future and will be presented with the option to

14   insure those purchases through Defendants' and that he 'desires to insure his event ticket

15   purchases but, absent the injunctive relief sought, will not be able to determine whether he will be

16   charged a hidden fee or an unlawful mandatory agent's fee in addition to the insurance premium' .

17   . . . These allegations are sufficient to confer standing to seek injunctive relief.").

18        Therefore, the Court finds Plaintiffs have plead sufficient standing for injunctive relief.

19        **C.    Preemption**

20        The Supremacy Clause grants Congress the power to preempt state law.  U.S. Const. art.

21   VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  Federal preemption

22   occurs when (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually

23   conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is

24   reasonable to conclude that Congress left no room for state regulation in the field.  *Chae v. SLM*

25   *Corp.*, 593 F.3d 936, 941 (9th Cir.2010).  When determining the existence and scope of

26   preemption, courts are guided by two major principles.  First, the purpose of Congress "is the

27   ultimate touchstone" in every preemption case; second, in areas of traditional state regulation, the

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS
     10

United States District Court
Northern District of California

1    court assumes that a federal law does not supplant state law unless Congress has made such an

2    intention clear and manifest.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  Where there is a

3    "plausible alternative reading," courts "accept the reading that disfavors pre-emption."  *Bates v.*

4    *Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

5            Congress enacted the Food Drug and Cosmetics Act ("FDCA") as a comprehensive federal

6    scheme of food regulation to ensure food safety and proper labeling.  21 U.S.C. § 341 et seq.  The

7    FDA is charged with developing regulations based on the laws set forth in the FDCA.  Congress

8    amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA").

9    The FDCA, as amended by the NLEA, expressly preempts state laws to the extent they differ from

10   federal law, providing that "no State . . . may directly or indirectly establish . . . any requirement

11   for the labeling of food . . . that is not identical to" the FDCA's requirements. 21 U.S.C. § 343-

12   1(a)(3). However, Section 6(c)(2) of the NLEA states that this preemption section "shall not be

13   construed to apply to any requirement respecting a statement on the labeling of food that provides

14   a warning concerning the safety of the food or a component of the food."  Pub. L. 101-535, section

15   6, 104 Stat. 2343 (1990); *see Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015)

16   ("Section 6(c)(2) saves from express preemption state laws such as Proposition 65 requiring food

17   safety warnings."); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal.

18   2009) ("NLEA—including the savings clause (no preemption unless the law is expressly

19   preempted)—shall not be construed to affect preemption of food safety laws.").  State consumer

20   protection laws are generally preempted if they seek to impose requirements that contravene the

21   requirements set forth in the FDCA or other relevant federal laws.  *See Wyeth*, 555 U.S. at 656; *see*

22   *also Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10–4387, C 10–4937, 2011 WL 2111796

23   (N.D. Cal. May 26, 2011).  But a defendant's preemption arguments must overcome a

24   presumption against preemption in this context because food labeling has been an area historically

25   governed by state law.  *See Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894).  Courts in this

26   district have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling

27   claims and related claims are impliedly preempted by the FDA, even when state law imposes

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS

1    identical requirements as the FDA.  *See, e.g., Vassigh v. Bai Brands*, LLC, 2015 WL 4238886, at

2    *4–5 (N.D. Cal. July 13, 2015); *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2014 WL

3    1028881, at *11 (N.D. Cal. Mar. 14, 2014); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573–

4    74 (N.D. Cal. 2013); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929,

5    at *5 (N.D. Cal. Feb. 25, 2013).

6            Here, McCormick argues that Plaintiffs' claims are subject to conflict preemption.  First,

7    McCormick argues that the FDA has specifically chosen to not regulate Heavy Metal levels or

8    labeling for herbs and spices, as evidenced by their decisions to regulate Heavy Metals in other

9    products.  Mot. Dismiss 11.  McCormick asserts that the FDA's decision to not regulate this field

10   impliedly preempts any state law attempt to regulate the field.  *Id.*  Second, McCormick argues

11   that the FDA actually approves of some Heavy Metals in products, as evidenced by their

12   regulations requiring other products to limit Heavy Metals rather than requiring total elimination.

13   *Id.* at 10.  Thus, any state law regulating Heavy Metal levels or labeling would conflict with the

14   FDA's approval of Heavy Metals in other products.  *Id.*

15           The Court is not convinced by McCormick's arguments.  First, McCormick's argument

16   that the FDA's failure to impose requirements equates to a ban on states enforcing their own

17   consumer protection laws is unpersuasive.  McCormick has posed an argument with other

18   plausible alternative readings—perhaps the FDA did not act because it chose to leave the issue to

19   the states' consumer protection laws; perhaps the FDA did not act because this specific issue has

20   not yet been raised; perhaps the FDA did not act because it is prioritizing other investigations.  In

21   other words, Congress's failure to regulate Heavy Metals levels and labeling in herbs and spices

22   does not equate to a clear and manifest intention to preempt state law in this field.  Second, for

23   those same reasons, the FDA's Heavy Metals limitations in other products does not equate to a

24   clear and manifest intention to allow some Heavy Metals in all foods, thereby preempting state

25   laws from touching the issue.  But again, the Court does not read Plaintiffs' Complaint as

26   demanding that McCormick all Heavy Metals from its Products.

27           The analysis here is made simple by the fact that the FDA has not imposed any

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   requirements regulating Heavy Metals labeling on herbs and spices.  Therefore, there is no law the

2   state could possibly contravene, and in the absence of a showing of Congress's clear and manifest

3   intent to prohibit states from imposing consumer protection laws on Heavy Metal labeling in herbs

4   and spices, the Court finds Plaintiffs' claims are not preempted.

5       **D.       Primary Jurisdiction**

6           "The primary jurisdiction doctrine allows courts to stay proceedings or dismiss a complaint

7   without prejudice pending the resolution of an issue within the special competence of an

8   administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  The

9   doctrine is a "prudential" one that "permits courts to determine 'that an otherwise cognizable

10  claim implicates technical and policy questions that should be addressed in the first instance by the

11  agency with regulatory authority over the relevant industry rather than by the judicial branch.'"

12  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark*, 523 F.3d at

13  1114).  The doctrine applies in limited circumstances.  *Clark*, 523 F.3d at 1114.  "Primary

14  jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution

15  of an issue of first impression, or of a particularly complicated issue that Congress has committed

16  to a regulatory agency."  *Brown v. MCI WorldCom Network Services, Inc.*, 277 F.3d 1166, 1172

17  (9th Cir. 2002). "[E]fficiency is the deciding factor in whether to invoke primary jurisdiction."

18  *Astiana*, 783 F.3d at 761 (internal quotation marks omitted) (quoting *Rhoades v. Avon Prods., Inc.*,

19  504 F.3d 1151, 1165 (9th Cir.2007)).

20          Here, McCormick argues that this lawsuit should not proceed because the FDA is currently

21  investigating whether to implement regulations regarding the presence of Heavy Metals and other

22  contaminants in the food supply.  Mot. Dismiss 12.  McCormick cites to an FDA budget request,

23  which includes a request to address toxic elements in food productions affecting maternal and

24  infant health.  *Id.*  McCormick also argues that the FDA's expertise is needed here because

25  Plaintiffs' claims raise food regulatory issues, including the safety of spices and herbs, permitted

26  action levels of Heavy Metals, and proper labeling.  *Id.*  Further, because there is no guidance on

27  what constitutes "safe" levels of Heavy Metals, McCormick argues that this is a case of first

United States District Court
Northern District of California

1    impression that must be left to the discretion of the FDA to avoid conflicting standards across

2    jurisdictions.  *Id.*

3            The Court is not persuaded by McCormick's arguments.  First, McCormick has failed to

4    show the FDA is engaged in rulemaking regarding Heavy Metals and their labeling in herbs and

5    spices that would justifying staying this case pending its resolution.  "[A]bsent evidence that the

6    FDA is actively engaged in *rulemaking* that could impact" Plaintiffs' claims, "there are no

7    efficiencies to be gained by dismissing or staying this case under the primary jurisdiction

8    doctrine."  *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 860 (N.D. Cal. 2022)

9    (emphasis in original).  The fact that the FDA has sought funding to investigate toxic elements in

10   foods for babies and young children does not mean the FDA is currently investigating proper

11   levels and labeling of Heavy Metals in herbs and spices.

12           Second, based on the information available at this stage, McCormick has failed to show the

13   Court that the issues in this case are novel or especially complex.  The Ninth Circuit has made

14   clear that only those claims raising issues of first impression or particular complexity are

15   appropriately dismissed or stayed based on primary jurisdiction.  *See Brown*, 277 F.3d at 1172.

16   Plaintiffs' claims do not appear to raise highly technical issues uniquely within the FDA's

17   expertise.  As with other food misbranding cases within this district, Plaintiffs' case is "less about

18   science than it is about whether a label is misleading."  *Jones v. ConAgra Foods, Inc.*, 912

19   F.Supp.2d 889, 898 (N.D.Cal. 2012); *see also Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d

20   1111, 1124 (N.D.Cal.2010) (stating that "plaintiffs advance a relatively straightforward claim:

21   they assert that defendant has violated FDA regulations and marketed a product that could mislead

22   a reasonable consumer . . . . [T]his is a question courts are well-equipped to handle."); *see also*

23   *Cytosport*, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012) ("FDA's expertise . . . is not

24   needed to determine whether the labels are misleading.").

25           It is true that Plaintiffs' claims rest on the assertion that the Heavy Metals found in

26   McCormick's products are "unsafe," and the FDA's guidance on this issue may be helpful to this

27   question.  However, the primary jurisdiction doctrine is not "intended to secure expert advice for

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown*, 277 F.3d at 1172. The FDA's guidance is not necessary here for a fact finder to weigh other evidence submitted by Plaintiffs and decide what is safe and unsafe to a reasonable consumer.

Accordingly, the claims are not barred by the doctrine of primary jurisdiction.

### E.      Failure to State a Claim

Because the Court has found standing, we now turn to McCormick's arguments that Plaintiffs have failed to state a plausible claim to relief.

### 1.      California Unfair Competition Laws ("UCL")

California's UCL prohibits unfair competition, defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that McCormick violated the UCL's prohibition against (1) unlawful acts and practices, (2) unfair business practices, and (3) fraudulent business practices. Claims brought under the UCL's fraudulent prong or otherwise grounded in fraud are subject to the heightened pleading standard of Rule 9(b). *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiffs' claims are all grounded in fraud, thus they are subject to the heightened pleading standards of Rule 9(b). *Davidson*, 889 F.3d at 964.

### a.      Prohibition Against Unlawful Acts and Practices

If a business practice violates any law, it may be redressed under the UCL section 17200 prohibition against unlawful acts and practices. *See People v. E.W.A.P. Inc.*, 165 Cal. Rptr. 73, 75 (Cal. Ct. App. 1980) (stating that "the purpose of the amendment was to 'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law'") (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 112–13, (Cal. 1972)); *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (Cal. 1992).

Plaintiffs allege that McCormick violated the UCL's prohibition against unlawful acts and practices by violating (1) the CLRA and (2) the Song-Beverly Act. Compl. ¶ 100. The Court will analyze each in turn.

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS
15

United States District Court
Northern District of California

1

**(1)      California Consumers Legal Remedies Act ("CLRA")**

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or

practices . . . undertaken by any person in a transaction intended to result or that results in the sale

or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The CLRA specifically

lists twenty-four activities defined to be "unfair methods of competition and unfair or deceptive

acts or practices."  *See id.* § 1770.  Plaintiffs allege McCormick's conduct constituted three

prohibited activities: (1) "[r]epresenting that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or qualities which they do not have," *id.* § 1770(a)(5);

(2) "[r]epresenting that goods or services are of a particular standard, quality, or grade," *id.* §

1770(a)(7); and (3) "[a]dvertising goods or services with intent not to sell them as advertised," *id.*

§ 1770(a)(9).  *See* Compl. ¶ 125.

To be actionable under the CLRA, the alleged conduct must be "likely to mislead a

reasonable consumer."  *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 46 (Cal. Ct.

App. 2006) (quoting *Nagel v. Twin Labs., Inc.*, 134 Cal. Rptr. 2d 420, 431 (Cal. Ct. App. 2003));

*see also Comm. On Children's Television, Inc.*, 35 Cal. 3d at 214; *Davis v. HSBC Bank Nevada

N.A.*, 691 F. 3d 1152, 1162 (9th Cir. 2012); *Clemens v. DaimlerChrysler Corp.*, 534 F. 3d 1017,

1025 (9th Cir. 2008); *Williams v. Gerber Products Co.*, 552 F. 3d 934, 939–40 (9th Cir. 2008);

*Freeman v. Time, Inc.*, 68 F. 3d 285, 289–90 (9th Cir. 1995).  Generally, this "reasonable person"

analysis is a question of fact unsuitable for a motion to dismiss.  *Gerber*, 552 F. 3d at 938.

However, there are instances where the court "can conclude as a matter of law that members of the

public are not likely to be deceived by the product packaging."  *Werbel v. Pepsico, Inc.*, No. C 09–

04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (citing  *Sugawara v. Pepsico, Inc.*,

No. 2:08–CV–01335–MCE–JFM, 2009 WL 1439115, at *3–4 (E.D.Cal. May 21, 2009) (finding

that the packaging for Cap'n Crunch cereal and its use [of] the term "Crunch Berries" was not

misleading)); *see also, e.g., Videtto v. Kellogg USA*, No. 2:08–cv–01324–MCE–DAD, 2009 WL

1439086, at *2 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims based on

allegations that consumers were misled into believing that "Froot Loops" cereal contained "real,

nutritious fruit").

Here, Plaintiffs allege that McCormick's misrepresentations and omissions in the Products' labeling constituted activities prohibited under CLRA.  *See* Compl. ¶ 125.  But McCormick argues that, at its foundation, Plaintiffs have failed to identify an actionable misrepresentation or omission likely to mislead a reasonable consumer.  Mot. Dismiss 17.  The Court agrees.

The only affirmative misrepresentation Plaintiffs allege they relied upon in purchasing the Products is the statement "The Taste You Trust," which McCormick argues is nothing more than unactionable "puffery."  *Id.*  "Puffery" is defined as "[g]eneralized, vague, and unspecified assertions . . .  upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also, e.g., In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) ("Vague or highly subjective claims about product superiority amount to non-actionable puffery; only misdescriptions of specific or absolute characteristics of a product are actionable . . . .  Thus, generalized and vague statements of product superiority such as 'superb, uncompromising quality' . . . are non-actionable puffery.") (internal quotation marks omitted); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) ("[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by *specific* rather than general assertions.") (emphasis added) (quoting *Cook, Perkins & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).

Plaintiffs rebut that "The Taste You Trust" is not puffery because, in the context of their legal theory, the statement is a representation of the product's health, and a reasonable consumer "would not 'trust' a product that contains (or risks containing) toxic Heavy Metals, a fact nowhere disclosed on the label."  Opp'n 20.  Plaintiffs cite to other cases involving affirmative misrepresentations related to foods tainted by Heavy Metals, where courts have found statements such as "nutritious," "safe," "100% Complete and Balanced Nutrition," "undoubtably safe," and

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

"pure" to be actionable affirmative misrepresentations rather than mere puffery. *Id.* 21. Plaintiffs further argue that "The Taste You Trust" is deceiving when put in context by its website, which provides more statements about the Products' safety and quality and its testing procedures for containments. Opp'n 20; Compl. ¶¶ 53–65.

The Court finds that "The Taste You Trust" is non-actionable puffery. The statement is a generalized and vague assertion of product superiority—there is no misdescription of a specific characteristic of the Products here. The cases Plaintiffs cite are distinguishable. The statements "nutritious," "safe," "100% Complete and Balanced Nutrition," "undoubtably safe," and "pure" are statements specific to the products' characteristic, specifically the products' health and safety. Here, "The Taste You Trust" is not specific to the product's health and safety. This statement does not make any connection to ingredients in the Products, or even what the Products might be. If anything, it may be a statement describing the product's "Taste," not the product's health and safety. "The Taste You Trust" is an even more generalized and vague statement than those other courts have found as a matter of law to not be deceiving—the terms "Crunch Berries," *Sugawara*, 2009 WL 1439115, at *3–4, and "Froot Loops," Videtto, 2009 WL 1439086, at *2, at least contain references to the ingredients in those products; "The Taste You Trust" has no nod to the contents of the Products whatsoever. While Plaintiffs did highlight statements on McCormick's website that potentially speak to the Products' health and safety, Plaintiffs did not allege that they saw or relied on any statements from McCormick's website prior to purchasing the Products. Instead, they specifically allege that they "read and relied on Defendant's *front-label* misrepresentations and omissions." Compl. ¶¶ 75, 156 (emphasis added); *see also id.* ¶¶ 5, 7, 9, 11, 13, 15, 47 (alleging Plaintiffs relied on the Products' packaging when deciding to Purchase the Products). Plaintiffs' theory that McCormick's omissions would deceive a reasonable consumer given the misrepresentation in "The Taste You Trust" also fails at this stage because Plaintiffs did not present facts to support this theory in the Complaint.

Therefore, the Court finds that Plaintiffs have failed to identify an actionable misrepresentation or omission on which to base their CLRA claims. This conclusion also impacts

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS
18

1    several of Plaintiffs' claims below.  *See infra* Parts III.E.1.b., III.E.2., and III.E.5.

2                    **(2)      Song-Beverly Act, Breach of Implied Warranty of
               Merchantability**

3                    Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in this

4    state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the

5    goods are merchantable."  Cal. Civ. Code § 1792.  To satisfy the Song-Beverly Act, "products

6    must (1) pass without objection in the trade under the contract description; (2) be fit for the

7    ordinary purposes for which those goods are used; (3) be adequately contained, packaged, and

8    labeled; and (4) conform to the promises or affirmation of fact made on the container or label."

9    *Gagetta*, 2022 WL 17812924, at * 9 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n. 2 (9th

10   Cir. 2009)).  This is a low standard for products to meet, where a product "need not be perfect in

11   every detail so long as it 'provides for a minimum level of quality.'"  *McGee v. Mercedes-Benz*

12   *USA, LLC*, 612 F. Supp. 3d 1051, 1061 (S.D. Cal. 2020) (quoting *Tae Hee Lee v. Toyota Motor*

13   *Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014)).

14                   Plaintiffs allege that McCormick breached the Song-Beverly Act's implied warranty of

15   merchantability "because the Products were unsafe and contained (or risked containing) toxic

16   Heavy Metals. Therefore, the Products would not pass without objection in the trade or industry

17   and were not fit for the ordinary purpose for which they are used, which is consumption by

18   consumers."  Compl. ¶ 136.

19                   McCormick argues that Plaintiffs have failed to allege that the Products they purchased

20   contained Heavy Metals in amounts that render them unsafe for human consumption.  Mot.

21   Dismiss 20.  Although Plaintiffs allege that minimizing exposure to Heavy Metals is important,

22   McCormick contends they do not allege that McCormick's Products were unfit for human

23   consumption.  Reply 13.  Plaintiffs rebut that they have adequately alleged that the Products, by

24   nature of containing (or risking containing) toxic Heavy Metals, have been rendered unsafe for its

25   purpose of human consumption because any level of Heavy Metals is unsafe for human

26   consumption.  Opp'n 23, 24.

27                   The Court finds Plaintiffs have failed to plead facts to plausibly show the Products

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    contained a level of Heavy Metals rendering the products unfit for human consumption.  The

2    study on which Plaintiffs base their claims ranks the levels of Heavy Metals in various products as

3    "No Concern," "Some Concern," "Moderate Concern," and "High Concern," with McCormick's

4    products ranked as "Some Concern."  Mot. Dismiss, Ex. 2 at 11–18.  A reasonable reader of this

5    study would conclude that McCormick's products contain Heavy Metals at levels that are of

6    "some concern," not that the products are unfit for human consumption—especially when

7    compared to the "high concern" products.[1]  The Court further finds Plaintiffs' assertion that any

8    product containing Heavy Metals is unsafe for human consumption to be a conclusory statement

9    unsupported by facts alleged in the Complaint.  Merchantability is a very low standard, and

10   Plaintiffs have failed to show how the Products failed to meet the minimum level of quality for

11   herbs and spices.

12        Plaintiffs also allege that McCormick violated the UCC's implied warranty of

13   merchantability.  The UCC implied warranty of merchantability provision contains the same

14   "substantive elements" as the Song-Berly Act.  *Gagetta*, 2022 WL 17812924, at *9 (citing

15   *Birdsong*, 590 F.3d at 958 n.2).  For all the same reasons discussed above, the Court finds

16   Plaintiffs have failed to plead a plausible claim for breach of implied warranty of merchantability

17   under the UCC.

18        Because Plaintiffs have failed to allege plausible violations of the CLRA and Song-

19   Berly Act, they have failed to allege a plausible violation of the UCL's unlawful prong.

20                   **b.        Prohibition Against Unfair Business Practices**

21        California courts have come to define "unfair" business practices under UCL section

22   72000 as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or

23   spirit of one of those laws because its effects are comparable to or the same as a violation of the

24   law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los*

---

[1] The study also notably contains a disclaimer stating that the "findings are a spot check of the market and cannot be used to draw definitive conclusions about brands," Mot. Dismiss, Ex. 2 at 11, putting to question the study's conclusions about McCormick in their entirety.

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS
20

1    *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999).[2]   "[A] practice may be deemed unfair

2    even if not specifically proscribed by some other law."  *Id.* at 560–61.  The "unfair" standard is

3    intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud.  *See*

4    *Bank of the W. v. Superior Ct.*, 10 Cal. Rptr. 2d 545, 546–47 (Cal. 1992).  Claims under this prong

5    are also subject to the same reasonable consumer standard discussed in the Court's CLRA

6    analysis, whereby Plaintiffs must plead facts to show that reasonable members of the public are

7    likely to be deceived.  *Williams*, 552 F.3d at 938 (9th Cir. 2008).

8          Here, Plaintiffs allege that McCormick's "misrepresentations and failing to disclose that

9    the Products contain (or risk containing) toxic Heavy Metals in the Products" is "immoral,

10   unethical, oppressive, unscrupulous, and/or substantially injurious to consumers" in violation

11   California's policies against fraud and deception. Compl. ¶¶ 108–09.

12         At its foundation, this claim rests on Plaintiffs' allegations that McCormick made an

13   affirmative misrepresentation and omission by labeling its Products "The Taste You Trust."  For

14   all the reasons discussed above, the Court finds that Plaintiffs have failed to plead facts showing

15   an actionable misrepresentation or omission that would lead a reasonable consumer to believe the

16   Products do not contain Heavy Metals.  *See supra* Part III.E.1.a.  Thus, the Court finds Plaintiffs

17   have failed to plead facts to plausibly state a claim for violation of the unfair business practice

18   prong.

19                     **c.     Prohibition Against Fraudulent Business Practices**

20         A business practices is "fraudulent" under the UCL if "members of the public are likely to

21   be deceived."  *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211

22   _____

23   [2] While the California Supreme Court in *Cel-Tech* declined to apply this test to a consumer case,
     several California appellate courts have applied this standard in consumer cases.  *See, e.g., In re*

24   *Firearm Cases*, 24 Cal. Rptr. 3d 659, 673 (2005); *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d
     389 (Cal. Ct. App. 2002) ("Cel-Tech, however, may signal a narrower interpretation of the

25   prohibition of unfair acts or practices in all unfair competition actions and provides reason for
     caution in relying on the broad language in earlier decisions that the court found to be 'too

26   amorphous.'"); *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439 (Cal. Ct. App. 2000) ("[A]ny claims
     of unfairness under the UCL should be defined in connection with a legislatively declared policy .

27   . . ."); *Bernardo v. Planned Parenthood Fed'n of Am.*, 9 Cal. Rptr. 3d 197, 223–24 (Cal. Ct. App.
     2004).

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS

                                            21

United States District Court
Northern District of California

1   (Cal. 1983) ("To state a cause of action under these statutes for injunctive relief, it is necessary

2   only to show that 'members of the public are likely to be deceived.'") (quoting *Chern v. Bank of*

3   *Am.*, 15 Cal. 3d 866, 876 (Cal. 1976)).  "[U]nlike common law fraud, a violation can be shown

4   even if no one was actually deceived, relied upon the fraudulent practice, or sustained any

5   damages." *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1045 (C.D. Cal. 2022) (internal

6   quotation marks omitted) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 85 Cal.

7   Rptr. 2d 301, 317 (Cal Ct. App. 1999)).  Omissions can be actionable as fraud under the UCL so

8   long as the omitted fact involved a safety concern.  *Wilson v. Hewlett-Packard Co.*, 668 F. 3d

9   1136, 1143 (9th Cir. 2012).  Claims under this prong are also subject to the same reasonable

10  consumer standard, whereby Plaintiffs must plead facts to show that members of the public are

11  likely to be deceived. *Williams*, 552 F.3d at 938.

12          Here, Plaintiffs allege that McCormick's "misrepresentations regarding, and failing to

13  disclose, that the Products contain (or risk containing) toxic Heavy Metals" constitutes conduct

14  that is likely to deceive members of the public.  Compl. ¶ 92.  Again, the Court has already found

15  that "The Taste You Can Trust" constitutes mere non-actionable puffery which a reasonable

16  consumer is unlikely to find deceiving, and Plaintiffs have failed to plead facts to show an

17  omission that would lead a reasonable consumer to believe the Products do not contain Heavy

18  Metals.  *See supra* Part III.E.1.a.  The analysis here does not differ.  Therefore, the Court finds

19  Plaintiffs have failed to plead facts to plausibly state a claim for violation of the UCL fraudulent

20  business practice prong.

21          For these same reasons, the Court finds Plaintiffs failed to state a claim of common law

22  fraud, which requires a plaintiff to allege even stricter requirements: (1) misrepresentation, (2)

23  knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages.  *Philipson &*

24  *Simon v. Gulsvig*, 64 Cal. Rptr. 3d 504, 516 (Cal. Ct. App. 2007), *as modified on denial of reh'g*

25  (Aug. 29, 2007).

26                                              * * *

27          Therefore, the Court finds Plaintiffs have failed to plead facts to state a plausible claim of

28  Case No.: 5:22-cv-00349-EJD
    ORDER GRANTING MOTION TO DISMISS
                                              22

United States District Court
Northern District of California

1   relief for UCL violations, CLRA violations, fraud, and breach of implied warranty or

2   merchantability under the Song-Beverly Act and the UCC.

3              **2.      California False Advertising Law ("FAL")**

4        The FAL prohibits "untrue or misleading" statements made in connection with the sale of

5   goods.  Cal. Bus. & Prof. Code § 17500.  The FAL's ban on deceptive advertising is narrower than

6   the UCL's prohibition against fraudulent business acts discussed above.  A defendant violates the

7   FAL only if she *knows* the advertising is false or misleading or *should have known* in the exercise

8   of reasonable care.  *People v. Forest E. Olson, Inc.*, 186 Cal. Rptr. 804, 806–07 (Cal. Ct. App.

9   1982).  This analysis also rests on the "reasonable person" standard applied above.  *Colgan v.*

10  *Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2006), *as modified on denial of*

11  *reh'g* (Jan. 31, 2006).

12       To state a claim of relief under the FAL, in addition to establishing the requisite intent,

13  Plaintiffs must again allege that McCormick advertised an affirmative misrepresentation that

14  would lead a reasonable person to believe the Products did not contain Heavy Metals.  *Williams*,

15  552 F.3d at 938.

16       Plaintiffs allege that McCormick's labels stating "The Taste You Trust" "constituted

17  advertising and [] misrepresented and omitted the presence (or risk) of toxic Heavy Metals."

18  Compl. ¶ 117.  For all the reasons discussed above in its analyses of the CRLA and UCL, the

19  Court does not find "The Taste You Trust" to be an affirmative misrepresentation about the levels

20  of Heavy Metals in the Products that a reasonable consumer would find untrue or misleading.  *See*

21  *supra* Part III.E.1.a.  Therefore, the Court finds that Plaintiffs have failed to plead facts to state a

22  plausible claim of relief for violations of the FAL.

23              **3.      Unjust Enrichment**

24       Plaintiffs claim McCormick has acquired unjust enrichment in violation of California and

25  Washington States's laws.  The Court will address each in turn.

26              **a.      California**

27       In California, there is not a standalone cause of action for unjust enrichment, but a court

28  Case No.: 5:22-cv-00349-EJD
    ORDER GRANTING MOTION TO DISMISS
                                    23

United States District Court
Northern District of California

may construe a cause of action for unjust enrichment as a "quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2014)).

Plaintiffs allege that McCormick retained revenues from Plaintiffs' purchases, which "under these circumstances is unjust and inequitable because Defendant made misrepresentations and omitted that the Products contained (or risked containing) toxic heavy metals." Compl. ¶ 34.

The only argument McCormick offers here is contending that unjust enrichment is not a valid separate claim in California. However, throughout its Motion to Dismiss, McCormick has advanced arguments as to why "The Taste You Trust" is not an actionable misrepresentation or omission, and the Court has agreed. The analysis here does not differ. The Court has found that "The Taste You Can Trust" constitutes mere non-actionable puffery which a reasonable consumer is unlikely to find deceiving, and Plaintiffs have failed to plead facts to show an omission that would lead a reasonable consumer to believe the Products do not contain Heavy Metals.

Thus, the Court finds Plaintiffs have failed to plead a plausible claim of unjust enrichment based on the misrepresentation and omission in the phrase "The Taste You Trust."

### b.   Washington

To plead a claim for unjust enrichment under Washington State law, a plaintiff must establish: "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wash. 2d 477, 484 (Wash. 2008) (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash. App. 151, 159, *amended sub nom. Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.*, 814 P.2d 699 (Wash. Ct. App. 1991)).

Plaintiffs plead the same facts to establish unjust enrichment under California and Washington laws—that is, McCormick retained revenues from Plaintiffs' purchases, which "under these circumstances is unjust and inequitable because Defendant made misrepresentations and omitted that the Products contained (or risked containing) toxic heavy metals." Compl. ¶ 34.

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS

24

United States District Court
Northern District of California

1    McCormick argues that Plaintiffs have failed to plead facts to establish McCormick's

2    knowledge of the benefit conferred, citing to Washington case law that finds the mere receiving of

3    payment does not demonstrate appreciation or knowledge.  Mot. Dismiss 21 (citing *Water &*

4    *Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*, No. C14-10 RAJ, 2014 WL 2154381, at \*2

5    (W.D. Wash. May 22, 2014)).  McCormick also argues that Plaintiffs have failed to allege that

6    facts to show it is inequitable for McCormick to retain the payment.  *Id.*

7        Defendants are correct that Plaintiffs have not plead facts to establish the requisite

8    knowledge.  Opp'n 25 (quoting conclusory statements from its Complaint that recite the elements

9    of the law without pointing to facts in the Complaint to address McCormick's arguments).  But

10   further, again relevant here, Plaintiffs have failed to plead an actionable omission or

11   misrepresentation that would render McCormick's retention of their money inequitable.

12       Therefore, the Court similarly finds Plaintiffs have failed to plead a plausible claim of

13   unjust enrichment under Washington State law based on the misrepresentation and omission in the

14   phrase "The Taste You Trust."

15                      **4.    Negligent Failure to Warn**

16       In California, the "manufacturer has a duty to use reasonable care to give warning of the

17   dangerous condition of the product or of facts which make it likely to be dangerous to those whom

18   he should expect to use the product or be endangered by its probable use, if the manufacturer has

19   reason to believe that they will not realize its dangerous condition."  *Artiglio v. General Electric*

20   *Co.,* 71 Cal. Rptr. 2d 817, 819 (Cal. Ct. App. 1998); *Putensen v. Clay Adams, Inc.,* 91 Cal. Rptr.

21   319 (Cal. Ct. App. 1970).  In other words, "a plaintiff [must] prove that a manufacturer or

22   distributor did not warn of a particular risk for reasons which fell below the acceptable standard of

23   care, i.e., what a reasonably prudent manufacturer would have known and warned about."  *Carlin*

24   *v. Superior Ct.*, 920 P.2d 1347, 1351 (Cal. 1996) (quoting *Anderson v. Owens-Corning Fiberglas*

25   *Corp.*, 810 P.2d 549, 558 (Cal. 1991) and *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1157–58

26   (E.D. Cal. 2010)).

27       Plaintiffs allege that McCormick, as a manufacturer, "had a duty to warn Plaintiffs and the

28   Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS
25

1    Class members of all dangers associated with the intended use of the Products," or at least a duty

2    "to warn consumers that the use of the Products was unreasonably dangerous."  Compl. ¶¶ 183–

3    84.  Plaintiffs allege that McCormick breached that duty by "failing to provide warnings to

4    consumers and users of the Products . . . regarding the true nature of the Products and their risks

5    and potential dangers" and "concealing the risks of and failing to warn consumers that the

6    Products contain Heavy Metals known to cause adverse health effects in humans."  *Id.* ¶¶ 185–86.

7    Further, Plaintiffs allege that McCormick "knew, or through the exercise of reasonable care,

8    should have known of the problems discussed and resulting dangers associated with consuming

9    the Products, and knew that Plaintiffs and Class members could not reasonably be aware of those

10   risks."  *Id.* ¶ 187.

11        McCormick argues that Plaintiffs have failed to state a plausible claim to relief because

12   they have failed to plead facts to show that McCormick deviated from industry standard in terms

13   of warning of the risks of Heavy Metals in spices and herbs.  Mot. Dismiss 21–22.  Plaintiffs did

14   not contest McCormick's arguments regarding the negligent failure to warn claim in their

15   Opposition.  *See generally* Opp'n.

16        The Court agrees with McCormick's assessment.  Plaintiffs' Complaint wholly failed to

17   allege facts to show the applicable standard of care and how McCormick's conduct fell below that

18   standard of care, thereby failing to state a plausible claim for negligent failure to warn.

19                    **5.    Washington Consumer Protection Act ("WCPA")**

20        The WCPA prohibits any "unfair or deceptive acts or practices in the conduct of any trade

21   or commerce."  Wash. Rev. Code § 19.86.020.  To recover under the WCPA, a plaintiff "must

22   demonstrate (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that

23   impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a

24   causal link between the unfair or deceptive act and the injury suffered."  *Dewitt Const. Inc. v.*

25   *Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1138 (9th Cir. 2002), *as amended on denial of reh'g*

26   *and reh'g en banc* (Dec. 4, 2002).  The first requirement, an unfair or deceptive act, is analyzed

27   under a reasonable consumer test similar to that of the UCL, CLRA, and FAL.  *Mellon v. Reg'l Tr.*

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS
                                        26

*United States District Court*
*Northern District of California*

*Servs. Corp.*, 182 Wash. App. 476, 489 (Wash. Ct. App. 2014) ("A defendant's act or practice is deceptive if it has a capacity to deceive a substantial portion of the public . . . . But a defendant's act or practice is not deceptive unless it involves a representation, omission or practice that is likely to mislead a reasonable consumer.") (internal quotation marks omitted) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (Wash. 1986) and *Panag v. Farmers Ins. Co.*, 166 Wash. 2d 27, 50 (Wash. 2009)); *see also Fisher v. World–Wide Trophy Outfitters, Ltd.*, 15 Wash. App. 742, 748 (Wash. Ct. App. 1976).

Plaintiffs allege that McCormick "engaged in unfair or deceptive acts or practices by marketing and selling the Products using misrepresentations and without disclosing that they contain (or risk containing) Heavy Metals." Compl. ¶ 173.

Again, this claim is dismissed for Plaintiffs' failure to plausibly allege that McCormick engaged in unfair or deceptive acts or practices through their omitting or misrepresenting the presence of Heavy Metals in the Products.

### F.    Equitable Relief

Plaintiffs asserting equitable claims in federal court must abide by "traditional principles governing equitable remedies in federal courts," including the requirement that they first establish a lack of adequate remedy at law before securing equitable relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citing *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996)) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (ellipsis in original)).

McCormick argues that Plaintiffs cannot seek equitable relief in federal court because they have alleged monetary relief is sufficient to address their alleged injuries. This argument is rendered moot by the Court's finding that Plaintiffs have failed to allege any plausible claim of relief at this stage that would warrant equitable relief.

* * *

The Court finds that Plaintiffs have alleged sufficient standing, and Plaintiffs' claims are not preempted or subject to primary jurisdiction. However, the Court grants McCormick's motion

Case No.: 5:22-cv-00349-EJD
ORDER GRANTING MOTION TO DISMISS

27

1    to dismiss under Rule 12(b)(6) for failure to state a claim upon relief can be granted.  The Court

2    grants Plaintiffs leave to amend their Complaint to allege facts with more specificity and cure the

3    other deficiencies identified in this Order.  *Lopez*, 203 F.3d at 1127 ("[A] district court should

4    grant leave to amend even if no request to amend the pleading was made, unless it determines that

5    the pleading could not possibly be cured by the allegation of other facts.").

6    **IV.      CONCLUSION**

7          Based on the foregoing, the Court GRANTS McCormick's motion to dismiss as to Counts

8    1–11 with LEAVE TO AMEND.  Plaintiffs are ordered to file an amended complaint by October

9    5, 2023.

10         **IT IS SO ORDERED.**

11   Dated: September 13, 2023

12

13

14                                               EDWARD J. DAVILA
                                                 United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 5:22-cv-00349-EJD
     ORDER GRANTING MOTION TO DISMISS
                                          28

*United States District Court*
*Northern District of California*